UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Terrance Dixon, a/k/a "TA", <br><br> Plaintiff, <br><br> v. <br><br> Joseph Antonio Cartagena p/k/a "Fat Joe," <br> Pete "Pistol Pete" Torres, <br> Richard "Rich Player" Jospitre, <br> Erica Juliana Moreira, <br> Sneaker Addict Touring LLC, <br> Slate, Inc., <br> Roc Nation, LLC, <br> John Does 1–10, Jane Does 1–10, and <br> ABC Corporations 1–10, <br><br> Defendants. | Case Number: 25-5144 <br><br> **Memorandum Of Law In Opposition To Defendant Roc Nation, LLC's Motion To Dismiss** |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ROC NATION, LLC'S MOTION TO DISMISS**

By:
Tyrone Blackburn, Esq.

**PRELIMINARY STATEMENT**

Plaintiff Terrance Dixon a/k/a TA respectfully submits this memorandum of law in opposition to Defendant Roc Nation, LLC's Motion to Dismiss. Roc Nation's motion rests on mischaracterizations of the operative Complaint, misapplications of Rule 8 and federal pleading standards, and factually unsupported claims that it played no role in the unlawful scheme at issue. Contrary to Roc Nation's assertions, the Complaint clearly alleges that it knowingly facilitated, benefited from, and concealed a labor trafficking and wage theft scheme, in violation of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

The allegations in the Complaint are neither vague nor speculative. Roc Nation is specifically alleged to have coordinated tour finances, directed contractual relationships that deprived Plaintiff of compensation, and participated in the financial structuring of payments to disguise Plaintiff's employment status, thereby concealing and perpetuating a coercive labor scheme. Plaintiff has pleaded his claims in accordance with Rules 8 and 12(b)(6), and the Court should deny the motion in its entirety.

**ARGUMENT**

**I.    THE COMPLAINT COMPLIES WITH RULE 8**

Roc Nation argues that the Complaint violates Fed. R. Civ. P. 8 because it is allegedly prolix, disorganized, and vague. This argument lacks merit. Rule 8 does not impose arbitrary length restrictions, nor does it require plaintiffs to omit factual detail in cases involving complex legal and factual allegations such as human trafficking, RICO enterprises, and financial fraud. Rather, it requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

The Second Circuit has repeatedly cautioned that dismissal under Rule 8 is appropriate only in extreme cases where the Complaint is so confused, ambiguous, or otherwise unintelligible

2

that its true substance, if any, is well disguised. *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); see also *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). This is not such a case. Plaintiff's Complaint is logically structured, clearly labeled, and meticulously tailored to organize allegations by Defendant and legal theory. As courts have recognized, when pleading civil RICO, although plaintiffs do not need detailed factual allegations, they are nonetheless obligated to provide more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice. *Twombly,* 127 S.Ct. at 1964. *Naugler v. Air Line Pilots Ass'n, Int'l*, 2008 U.S. Dist. LEXIS 25173, *41.

Here, the allegations against Roc Nation are specifically laid out in well-identified sections: TVPRA, and RICO predicate acts, supported by factual detail including the identities of corporate entities (e.g., Slate Inc., BDO), the roles played by tour accountants, and the means by which payments to Plaintiff were misrepresented or concealed. Roc Nation's financial, managerial, and operational ties to the scheme are not pleaded generally—they are supported by particularized facts.

Additionally, the inclusion of facts concerning the broader enterprise (including other defendants) does not render the Complaint impermissibly vague. Federal courts routinely allow detailed complaints that provide context for joint liability under enterprise theories. *See Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (per curiam) (Rule 8 is satisfied so long as the allegations give disclose sufficient information to permit the Defendant to have a fair understanding of what the Plaintiff is complaining about and to know whether there is a legal basis for recovery. *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). *Harnage v. Lightner*, 916 F.3d 138, 141.

    A. <u>The Complaint Provides Actual Notice</u>

Roc Nation's assertion that the Complaint fails to provide actual notice is belied by the face of the pleading. The Federal Rules do not require a plaintiff to present trial-ready proof or attach exhibits at the pleading stage. Instead, Rule 8 merely demands a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The Complaint more than satisfies this standard. It clearly identifies who the Defendant is (Roc Nation), what wrongful acts it engaged in (financial facilitation of labor trafficking and participation in a racketeering enterprise), when the acts occurred (spanning over a decade of tour-related exploitation), and how Plaintiff was injured (wage theft, misclassification, fraud, and coercive labor).

The allegations are not vague generalities. They include detailed references to:

- Roc Nation's use of third-party accountants (BDO) and affiliated entities (e.g., Sneaker Addict Touring LLC) to route illicit payments;
- Specific financial benefits Roc Nation received from the Plaintiff's labor, musical contributions, and uncredited performances;
- Concrete mechanisms of exploitation, including false tax filings, burner phone communications, and performance contracts signed under duress.

This is precisely the type of factual scaffolding courts expect under *Iqbal* and *Twombly*. Courts routinely uphold complaints where the allegations give defendants enough factual context to answer and prepare their defense. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ([T]he Complaint should not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim.); *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (Rule 8 requires only a plain statement of claims with fair notice).

If Roc Nation finds any particular paragraph ambiguous, the proper remedy is a motion for a more definite statement under Rule 12(e)—not dismissal. The detailed Complaint, as filed, easily gives Roc Nation actual notice of the claims and the factual theory behind them.

Simply put, Rule 8 does not require the Plaintiff to strip the Complaint of context, narrative coherence, or cross-referenced facts simply to accommodate Roc Nation's preference for a streamlined pleading. The Complaint more than satisfies Rule 8's liberal notice-pleading standard.

II. **THE TVPRA CLAIM IS PROPERLY PLED**

Roc Nation's motion seeks dismissal of the TVPRA claim under 18 U.S.C. § 1595 by arguing that Plaintiff fails to allege: (1) participation in a venture, (2) knowing benefit, and (3) actual or constructive knowledge of the trafficking conduct. Each of these arguments is contradicted by the well-pleaded factual allegations in the Complaint and by controlling case law.

    A. <u>Roc Nation Had Actual or Constructive Knowledge of the Venture's Exploitative Nature</u>

Roc Nation's assertion that Plaintiff failed to allege knowledge under the TVPRA is contradicted by the well-pleaded allegations in the Complaint. Under 18 U.S.C. § 1595, a civil defendant need not have participated directly in trafficking to be liable. Instead, it is sufficient that the Defendant (1) knowingly benefited from participation in a venture, and (2) knew or should have known that the venture engaged in trafficking-related conduct.

Courts applying § 1595 have emphasized that knowledge may be actual or constructive and may be inferred from circumstantial evidence. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020) (Constructive knowledge may be found where a defendant turns a blind eye to trafficking indicators in its operations.); *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725–26 (11th Cir. 2021) (knowledge adequately alleged where Defendant had reason to know of trafficking and financially benefitted from it).

The Complaint specifically alleges that Roc Nation:

- Exercised managerial control over Plaintiff's labor, travel, contracts, and compensation;
- Routed illicit or misclassified payments through affiliated LLCs to mask the nature and amount of compensation;

5

- Directed or ratified conduct by co-conspirators who engaged in coercive labor practices, and used burner phones, unauthorized tax forms, and non-disclosure agreements to conceal wrongdoing;
- Continued to benefit financially from Plaintiff's coerced labor despite having access to documentation and firsthand knowledge of how his earnings were structured and diverted.

These allegations support both actual knowledge (by virtue of Roc Nation's role in orchestrating the financial structure) and constructive knowledge (because of red flags and willful blindness to the exploitative conditions). Roc Nation is not alleged to be a passive investor or arms-length vendor—it is alleged to be a central beneficiary of the coerced labor scheme, integrated into both the operational and financial layers of the venture.

Moreover, courts have held that a defendant cannot evade liability by distancing itself from the day-to-day conduct of co-venturers while reaping the financial benefits of their labor. *See Gilbert v. U.S. Olympic & Paralympic Comm.*, 423 F. Supp. 3d 1112, 1125–27 (D. Colo. 2019) (entity liable where it maintained control over policies and profited from trafficking even if it did not perpetrate abuse directly).

Taken together, these facts make clear that Roc Nation had, at minimum, constructive knowledge that Plaintiff's labor was secured through force, fraud, or coercion—a sufficient basis to support civil liability under § 1595.

B. <u>Roc Nation Participated in the Venture</u>

Under 18 U.S.C. § 1591(e)(4), participation in a venture includes knowingly assisting, supporting, or facilitating a venture that engages in the unlawful procurement of labor or services. Courts have interpreted this standard broadly, particularly in the civil context under § 1595. *See Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 918 (N.D. Cal. 2021) (holding that § 1595 permits recovery against those who knowingly facilitate trafficking even without direct perpetration). To

6

state a claim under a § 1595(a) beneficiary theory, a plaintiff must allege facts from which it can reasonably inferred that a defendant (1) knowingly benefitted financially or by receiving anything of value (2) from participation in a venture that Defendant knew or should have known has engaged in sex trafficking. 18 U.S.C. § 1595(a). *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020). A plaintiff may satisfy these elements in one of two ways. She may show that the Defendant's own acts, omissions, and state of mind establish each element. Alternatively, she may impute to the Defendant the acts, omissions, and state of mind of an agent of the Defendant. The former is referred to as direct liability, while the latter is referred to as indirect liability. *See, e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 935 (D. Ore. 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020). *J.L. v. Best W. Intl., Inc.,* 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

The Complaint alleges that Roc Nation played an integral financial and managerial role in the enterprise through which Plaintiff was coerced into unpaid labor. Roc Nation coordinated business operations for Defendant Cartagena, oversaw accounting through BDO, and structured payments through shell entities such as Slate Inc. These are not passive or incidental acts; they constitute active facilitation of the trafficking scheme. The coordination of finances, tax filings, and contractual misclassification—coupled with Roc Nation's awareness of Plaintiff's prolonged, unpaid contributions—amply support the claim that Roc Nation participated in the venture.

Furthermore, in *Gilbert v. U.S. Olympic & Paralympic Comm.*, a corporate entity that engaged in the financial control of athlete programs was found liable under § 1595. 423 F. Supp. 3d 1112, 1125–27 (D. Colo. 2019). Similarly, Roc Nation's orchestration of payment streams and contracts places it squarely within the meaning of a venture participant under § 1591(e)(4).

C. <u>Roc Nation Knowingly Benefited from the Venture</u>

The Complaint also satisfies the requirement that Roc Nation knowingly benefited, financially or by receiving anything of value, from the trafficking venture. 18 U.S.C. § 1595(a). Plaintiff has also alleged sufficient facts to demonstrate Defendant's conduct constituted participation in a venture under § 1595(a). *G.M. v. Choice Hotels Intl., Inc.,* 725 F. Supp. 3d 766, 777 (S.D. Ohio 2024), motion to certify appeal denied, No. 2:22-CV-3788, 2024 WL 1347722 (S.D. Ohio Mar. 29, 2024), amended on reconsideration sub nom… *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that the relevant venture under Section 1595 need not be specifically a sex trafficking venture and *778 can be a commercial venture like running or expanding a business.). *G.M. v. Choice Hotels Intl., Inc.*, 725 F. Supp. 3d 766, 777–78 (S.D. Ohio 2024), motion to certify appeal denied, No. 2:22-CV-3788, 2024 WL 1347722 (S.D. Ohio Mar. 29, 2024), amended on reconsideration sub nom. In *re Hotel TVPRA Litig.*, No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024).

Here, a Direct economic benefit is alleged: Roc Nation profited from the Plaintiff's unpaid labor through tour revenues, publishing shares, managerial fees, and reputational leverage gained by promoting content created by the Plaintiff without compensation.

Courts do not require proof that the Defendant's entire business model depends on the trafficking—only that it received a benefit linked to the venture. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (holding that a hotel chain knowingly benefited even from indirect financial gains). Roc Nation's gains were far more direct: it processed and concealed Plaintiff's labor contributions and revenue-generating role while intentionally misrepresenting his employment classification to avoid wage obligations.

Notably, even indirect financial gain suffices to show a knowing benefit. In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723–26 (11th Cir. 2021) the Eleventh Circuit held that a defendant

8

knowingly benefitted under § 1595 so long as they received money or something of value derived from a trafficking venture—even without directly orchestrating the trafficking—so long as there was sufficient benefit and knowledge. *Id*.

    D.  <u>Roc Nation Knew or Should Have Known of the Venture</u>

The knew or should have known element under § 1595 is met where a defendant had actual or constructive knowledge of the trafficking or labor coercion. Constructive knowledge is presumed where a defendant maintains oversight and profits from exploitation. In *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 188–89 (E.D. Pa. 2020), the Court emphasized that a financial facilitator cannot shield itself from liability merely by hiding behind corporate formalities when it continues to profit from coerced labor.

Here, the Complaint alleges that Roc Nation was not only informed of Plaintiff's work but also managed, recorded, and financially accounted for it. Roc Nation coordinated contract structuring and issued false or misleading tax and payroll documentation intended to misclassify the Plaintiff and avoid triggering wage laws.

This level of oversight supports the inference that Roc Nation knew—or, at a minimum, should have known—that Plaintiff was being systematically deprived of compensation and subjected to coercive conditions. *See Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1139 (D. Colo. 2019) (finding knowledge where Defendant had oversight, reporting obligations, or financial involvement in the underlying abuse). A defendant cannot escape liability merely by delegating operations to third parties or hiding behind corporate formalities when it profits from the exploitation.

Courts have further held that the "should have known" prong can be met through circumstantial evidence of willful blindness or conscious avoidance. *See*, e.g., *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937–38 (D. Or. 2020). The Plaintiff's detailed

account of Roc Nation's involvement in tour finances, payroll records, and shell-company structuring easily surpasses that threshold.

Taken together, Plaintiff's TVPRA claim satisfies all three elements necessary to withstand a motion to dismiss. Roc Nation's motion rests on an overly narrow interpretation of the statute and a mischaracterization of the allegations in the Complaint. The claim is adequately pled and should proceed to discovery.

### III.  PLAINTIFF'S RICO CLAIM IS LEGALLY SUFFICIENT
#### A. The RICO Claim is Timely

A civil RICO claim accrues when the Plaintiff discovers or should have discovered the injury, not the scheme itself. *See Rotella v. Wood*, 528 U.S. 549, 553–55 (2000). Here, Plaintiff alleges that Defendants, including Roc Nation, actively concealed the nature of his employment status and diverted payments through shell entities, thereby obscuring the enterprise's unlawful conduct. Plaintiff reasonably relied on promises of formal contracts, record deals, and royalty participation that were never honored.

Moreover, Plaintiff did not uncover the financial structure and managerial control exercised by Roc Nation—specifically its role in tour accounting, tax misclassification, and revenue re-routing—until 2024 and again in 2025 when he spoke with a former Roc Nation employee who Plaintiff reported to, as well as to a former Roc Nation accountant who both confirmed that Roc Nation knew in real time that Plaintiff was entitled to $30,000 performance pay for a Roc Nation organized Fat Joe tour, they knew that Plaintiff did not have this knowledge of the $30,000.00 per show entitlement, and they knew Defendant Cartagena paid Plaintiff $1000.00 per show for that tour and pocketed the remaining $29,000. This is just one of several discoveries the Plaintiff learned about Roc Nation's involvement in his wage theft. Plaintiff also learned from the former Roc Nation accountant and manager that Plaintiff was entitled to daily per

10

diem for all of the shows he performed with Defendant Cartagena, and Plaintiff was entitled to $3,000 to $5,000 per show as opposed to the $250.00 to $1,000 per show Defendant Cartagena paid him. Defendant Cartagena pocketed all of Plaintiff's per diem, as well as the difference in the performance pay Plaintiff was entitled to. The Plaintiff was informed by the former manager that the Defendant, Cartagena, used the money to pay down his tax debt stemming from his 2013 tax fraud conviction. This satisfies equitable tolling and delayed discovery principles. See *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148–49 (2d Cir. 2012); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60–61 (2d Cir. 1998).

Under Second Circuit precedent, the statute of limitations for RICO does not begin until a plaintiff has inquiry notice of the injury. Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552, 120 S.Ct. 1075, 1079, 145 L.Ed.2d 1047 (2000). The clock begins to run when the Plaintiff has inquiry notice of his injury, namely when he discovers or reasonably should have discovered the RICO injury. *Bankers Trust Co. v.* Rhoades, 859 F.2d 1096, 1102 (2d Cir . 1988). Under the law of the Second Circuit, the RICO statute of limitations ... runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were storm warnings that should have prompted an inquiry. *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.* 328 Fed.Appx. 695, 697 (2d Cir.2009). *Koch v. Christie's Intl. PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011), aff'd, 699 F.3d 141 (2d Cir. 2012). Here, Plaintiff alleges active concealment by Roc Nation of its role in misclassifying him and diverting revenues, facts consistent with delayed discovery and equitable tolling.

    B.  <u>Roc Nation Participated in the Operation or Management of the Enterprise</u>

Plaintiff's RICO claim under § 1962(c) requires that Roc Nation (1) conducted or participated in the conduct (2) of an enterprise's affairs (3) through a pattern (4) of racketeering activity. See *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Roc Nation's role far exceeds

11

the operation or management threshold. It provided financial oversight, coordinated tax filings, facilitated the fraudulent misclassification of the Plaintiff's labor, and managed revenue flows tied to the Plaintiff's performances and songwriting.

This is not a case of passive association or a mere business relationship. Roc Nation played a central role in the design and concealment of the illicit labor and financial structure. Courts have found RICO liability under § 1962(c) where defendants exercised their authority in the administration of enterprise functions. *See United States v. Applins*, 637 F.3d 59, 74 (2d Cir. 2011). Roc Nation's conduct fits squarely within this framework.

C. The Complaint Alleges a Pattern of Racketeering Activity

A valid RICO claim requires at least two related predicate acts demonstrating continuity. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (related acts posing threat of continued criminal activity satisfy pattern requirement). The Complaint sets forth multiple RICO predicate acts involving Roc Nation, including:

- Wire Fraud: False 1099 tax filings, email communications to Plaintiff regarding phantom contracts, and electronic routing of payments intended to misclassify income;
- Mail Fraud: Transmittal of false tax documents, misleading royalty statements, and shell-entity payment records;
- Forced Labor: Participation in the coercive labor structure through which Plaintiff was compelled to work under threats of economic ruin and with no compensation, in violation of 18 U.S.C. § 1589;
- Tax Fraud: Conspiring to underreport Plaintiff's earnings to tax authorities, while Roc Nation simultaneously retained a cut of tour revenues;
- Obstruction of Justice and Witness Intimidation: Coordination with other Defendants to suppress Plaintiff's complaints, deny his authorship, and erase his contributions from streaming and licensing platforms.

The alleged acts constitute racketeering activity under 18 U.S.C. § 1961(1), and they demonstrate continuity and relatedness sufficient to establish a pattern. *See H.J. Inc. v.*

12

*Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The enterprise was ongoing for over a decade and involved repetitive conduct designed to exploit and silence Plaintiff while enriching Defendant-affiliated entities.

    D.  <u>Plaintiff Suffered RICO Injury Proximately Caused by Roc Nation</u>

The Complaint alleges concrete financial injury, reputational damage, and lost career opportunities—all proximately caused by the predicate acts of Roc Nation. These include: (1) deprivation of fair market compensation for vocal, writing, and performance contributions; (2) concealment of royalty and tour payments; (3) reputational destruction due to credit stripping; and (4) structural exclusion from industry opportunities through blackballing and intimidation.

These are not speculative harms—they are the direct and foreseeable result of Roc Nation's intentional misconduct. RICO requires some direct relation between the injury asserted and the injurious conduct alleged. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 453. Plaintiff's injuries are neither derivative nor incidental. The enterprise specifically targeted him, relied on his labor, and used Roc Nation's infrastructure to siphon economic value without compensation.

The Supreme Court requires a direct causal nexus between the RICO violation and the alleged injury. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 458–59 (2006) (Plaintiff lacked standing where injury from tax fraud was caused by downstream price competition). By contrast, Plaintiff here alleges that Roc Nation's misclassification, revenue diversion, wire/mail fraud, and operational control directly deprived him of earned income, establishing proximate cause.

Taken together, these allegations support a valid claim under § 1962(c). The claim is timely, well-pleaded, and supported by concrete factual detail. Roc Nation's motion to dismiss should be denied.

    IV.    **MOTION TO STRIKE IMPROPER MATERIAL UNDER RULE 12(f)**

In addition to moving for dismissal, Roc Nation improperly weaponizes its memorandum of law as a platform for ad hominem attacks, extraneous commentary, and inflammatory references to unrelated litigation. These arguments—styled as context or background—serve no legal purpose other than to prejudice the Court against Plaintiff and his counsel. Such conduct is improper and warrants judicial intervention under the Fed. R. Civ. P. 12.

Under Federal Rule of Civil Procedure 12(f), a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. To prevail on such a motion, the movant must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant. *eShares, Inc. v. Talton*, No. 22 Civ. 10987 (JGLC), 2024 WL 1348829, at *10 (S.D.N.Y. Mar. 29, 2024). *Gregory Wayne Designs, LLC v. Lowry*, No. 24 CIV. 2109 (PAE), 2024 WL 3518584, at *7 (S.D.N.Y. July 24, 2024). The Second Circuit has long held that material should be stricken where it bears no possible relation to the controversy and is unduly prejudicial. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). This includes gratuitous assertions about other lawsuits, counsel's motives, or irrelevant personal conduct. *See also G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (striking opprobrious statements that serve no purpose except to inflame the reader).

Here, Roc Nation's memorandum improperly includes:
- Characterizations of this lawsuit include publicity stunt, retaliatory, and abusive.
- References to Plaintiff's other ongoing litigation with Defendant Cartagena (see, e.g., *Dixon v. Cartagena*);
- Statements attacking Plaintiff's counsel's ethics, motives, and intentions;
- Assertions that this case is part of a pattern of meritless filings without any evidentiary support.

14

These references are wholly irrelevant to the legal sufficiency of the RICO and TVPRA claims. They are designed to evoke bias and distract from the specific factual allegations pleaded against Roc Nation. They further risk tainting the judicial process by turning a Rule 12 motion into a character assassination campaign—an outcome that Rule 12(f) was intended to prevent.

Moreover, these improper materials do not merely appear in footnotes or rhetorical flourishes—they are central to Roc Nation's argument that the Complaint should be dismissed with prejudice. That strategy underscores the need for the Court to formally excise them from the record to preserve fairness and focus on the legal issues properly before it.

Accordingly, Plaintiff respectfully requests that the Court strike all portions of Roc Nation's memorandum that:

1. Refer to the Plaintiff's other pending legal matters.
2. Describe this lawsuit in derogatory or defamatory terms.
3. Make accusations against Plaintiff's counsel unrelated to the underlying claims.

This targeted relief is narrowly tailored, appropriate under Rule 12(f), and necessary to preserve the integrity of these proceedings.

V.    **PLAINTIFF REQUEST LEAVE TO AMEND**

Roc Nation's demand that this Court dismiss Plaintiff's claims with prejudice is both procedurally premature and substantively unwarranted. Federal courts strongly favor adjudication on the merits over dismissal based on technical or curable pleading issues. Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] ... when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also*

15

*MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (*quoting Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Bus. Casual Holdings LLC v. YouTube, LLC*, No. 22-CV-3007, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) ("Proposed amendments are futile if they would fail to cure prior deficiencies or state a claim." *325 (quoting IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015))); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'" (*quoting Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW*, 783 F.3d at 389. "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and should be denied." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (*quoting Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). *Haczynska v. Mt. Sinai Health System, Inc.*, 738 F. Supp. 3d 300, 324–25 (E.D.N.Y. 2024).

The Second Circuit has repeatedly held that dismissal with prejudice is a drastic remedy reserved for cases where repleading would be futile or where there is a clear showing of bad faith,

undue delay, or repeated failure to cure deficiencies. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (without the benefit of a ruling, many a plaintiff will not see the necessity of amendment). No such circumstances exist here. The Plaintiff has not amended the Complaint once. Nor has the Court issued any prior ruling identifying deficiencies or inviting corrective pleading.

Even if the Court were to identify deficiencies in the existing Complaint, leave to amend would be appropriate. Courts routinely allow amendments to civil RICO and TVPRA claims where additional specificity, refinement of the predicate act, or clarification of the enterprise structure may be warranted. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (summary order) (affirming leave to amend RICO claims for additional predicate-act detail); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020) (allowing amendment in civil TVPRA suit involving multiple defendants and financial facilitators).

Dismissal with prejudice would be particularly inappropriate here given that Roc Nation's motion is based on disputed inferences and extrinsic factual assumptions, not on an irrefutable showing that Plaintiff has no viable claim. This is not a case where the claims are facially barred or factually incoherent. On the contrary, Plaintiff has pled a detailed and plausible theory of liability supported by statutory authority, case law, and specific factual allegations.

In short, even if the Court finds any aspect of the Complaint deficient, Plaintiff respectfully requests that such dismissal be without prejudice and with leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant Roc Nation's motion to dismiss should be denied in its entirety. Plaintiff has plausibly alleged claims under the Trafficking Victims Protection Reauthorization Act and the Racketeer Influenced and Corrupt Organizations Act, supported by

17

specific factual allegations detailing Roc Nation's participation in, benefit from, and knowledge of an unlawful scheme of labor exploitation and financial coercion. The Complaint more than satisfies the pleading standards outlined in Rules 8 and 12(b)(6), and any purported ambiguities raised by Roc Nation are best addressed through discovery, not dismissal.

To the extent the Court deems any part of the Complaint insufficiently pled, Plaintiff respectfully requests leave to amend according to Rule 15(a)(2). In addition, Plaintiff moves under Rule 12(f) to strike the inappropriate and prejudicial material included in Roc Nation's memorandum that goes beyond the four corners of the Complaint.

Accordingly, the Court should:

1. Deny Defendant Roc Nation, LLC's Motion to Dismiss in full;
2. Grant Plaintiff's motion to strike the improper matter under Rule 12(f); and
3. Grant such other and further relief as the Court deems just and proper.

Dated: July 7, 2025
Brooklyn, New York

*/s/Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com