# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Terrance Dixon, a/k/a "TA", | |
| *Plaintiff*, | |
| v. | No. 25 Civ. 5144 (JLR) |
| Joseph Antonio Cartagena p/k/a "Fat Joe," Peter "Pistol Pete" Torres, Richard "Rich Player" Jospitre, Erica Juliana Moreira, Sneaker Addict Touring LLC, Slate, Inc., Roc Nation, LLC, John Does 1–10, and Jane Does 1–10, and ABC Corporations 1–10, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROC NATION, LLC'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..........................................................................................................................3

      A.     Related Procedural History ..................................................................................3

      B.     Plaintiff's Allegations ........................................................................................4

LEGAL STANDARD...................................................................................................................8

ARGUMENT ...............................................................................................................................9

I.      PLAINTIFF'S COMPLAINT FAILS TO STATE A SHORT AND PLAIN STATEMENT OF THE CLAIM OR PROVIDE ADEQUATE NOTICE TO ROC NATION ......................................................................................................................9

      A.     The Complaint is neither "short and plain" nor "simple, concise, and direct".................................................................................................................9

      B.     The Complaint fails to provide adequate notice ....................................................11

II.     PLAINTIFF'S TVPRA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION AGAINST ROC NATION ...........................................13

      A.     There is no plausible allegation that Roc Nation had knowledge of the purported TVPRA violations .................................................................................14

      B.     Plaintiff fails to allege facts that plausibly suggest that Roc Nation participated in a trafficking venture.......................................................................16

      C.     Plaintiff pleads no facts demonstrating that Roc Nation received any benefit from the purported trafficking venture ......................................................17

III.    PLAINTIFF'S RICO CLAIM IS UNTIMELY AND INSUFFICIENTLY PLED ...........18

      A.     The RICO claim is time-barred............................................................................18

      B.     The RICO claim fails to assert a cause of action against Roc Nation ..................20

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ....................................................................21

*In re Amaranth Nat. Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008)..................................................................25

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)..............................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................8, 9

*Atateks Foreign Trade Ltd. v. Dente*,
    798 F. Supp. 2d 506 (S.D.N.Y. 2011)..................................................................25

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ..............................................................................12

*Azzarmi v. Neubauer*,
    2023 WL 6255678 (S.D.N.Y. Sept. 26, 2023)......................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................8, 9

*Black v. Ganieva*,
    619 F. Supp. 3d 309 (S.D.N.Y. 2022)..................................................................23

*Blakely v. Wells*,
    209 F. App'x 18 (2d Cir. 2006) ............................................................................10

*Buyers & Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*,
    575 F. Supp. 2d 499 (S.D.N.Y. 2008)..................................................................22

*Cartagena v. Dixon*,
    25-cv-03552 (S.D.N.Y. May 1, 2025) .................................................................3, 7

*Chen v. Cai*,
    2022 WL 917575 (S.D.N.Y. Mar. 28, 2022) ........................................................14

*Cho v. Chu*,
    2022 WL 4463823 (S.D.N.Y. Sep. 26, 2022).......................................................14

*Citibank, N.A. v. Friedman*,
    747 F. Supp. 3d 427 (E.D.N.Y. 2024) ..................................................................20

*Cruz v. FXDirectDealer, LLC*,
 720 F.3d 115 (2d Cir. 2013) .................................................................................... 23

*Demian v. Calmenson*,
 156 A.D.3d 422 (1st Dep't 2017) ........................................................................... 19

*Democratic Nat'l Comm. v. Russian Fed'n*,
 392 F. Supp. 3d 410 (S.D.N.Y. 2019) .................................................................... 24

*Doe v. Trump Corp.*,
 385 F. Supp. 3d 265 (S.D.N.Y. 2019) ............................................................... 24, 25

*Dubai Islamic Bank v. Citibank N.A.*,
 256 F. Supp. 2d 158 (S.D.N.Y 2003) ..................................................................... 24

*Elias v. Rolling Stone LLC*,
 872 F.3d 97 (2d Cir. 2017) ..................................................................................... 15

*Elsevier Inc. v. W.H.P.R., Inc.*,
 692 F. Supp. 2d 297 (S.D.N.Y. 2010) .................................................................... 24

*Espire Ads LLC v. TAPP Influencers Corp.*,
 655 F. Supp. 3d 223 (S.D.N.Y. 2023) .................................................................... 20

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
 385 F.3d 159 (2d Cir. 2004) ................................................................................... 23

*G-I Holdings, Inc. v. Baron Budd*,
 238 F. Supp. 2d 521 (S.D.N.Y. 2002) .................................................................... 21

*Geiss v. Weinstein Co. Holdings LLC*,
 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ........................................................ 16, 17, 18

*Goldfine v. Sichenzia*,
 118 F. Supp. 2d 392 (S.D.N.Y. 2000) .................................................................... 24

*Hecht v. Com. Clearing House, Inc.*,
 897 F.2d 21 (2d Cir. 1990) ..................................................................................... 24

*Iavorski v. U.S. INS*,
 232 F.3d 124 (2d Cir. 2000) ................................................................................... 20

*Koch v. Christie's Int'l*,
 699 F.3d 141 (2d Cir. 2012) ................................................................................... 19

*Komatsu v. City of New York*,
 2021 WL 3038498 (S.D.N.Y. July 16, 2021) ......................................................... 12

*Lepore v. NL Brand Holdings LLC*,
  2017 WL 4712633 (S.D.N.Y. Sept. 28, 2017) ..................................................13

*Levin v. Sarah Lawrence Coll.*,
  747 F. Supp. 3d 645 (S.D.N.Y. 2024) ..........................................................18

*Lundy v. Cath. Health Sys. of Long Island*,
  711 F.3d 106 (2d Cir. 2013) ........................................................................20

*Maung Ng We v. Merrill Lynch & Co.*,
  2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000) .................................................17

*Mueller v. Deutsche Bank Aktiengesellschaft*,
  2025 WL 1019201 (S.D.N.Y. Apr. 4, 2025) .................................................14, 15, 16

*Nesbeth v. N.Y.C. Mgmt. LLC*,
  2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) .................................................11, 13

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018) ..........................................................16

*Owens v. Connecticut*,
  2025 WL 878863 (D. Conn. Mar. 21, 2025) ...................................................11

*Phhhoto Inc. v. Meta Platforms, Inc.*,
  123 F.4th 592 (2d Cir. 2024) ......................................................................25

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
  507 F.3d 117 (2d Cir. 2007) ....................................................................9, 17

*Pulver Roofing Co. v. SBLM Architects, P.C.*,
  65 A.D.3d 826 (4th Dep't 2009) ..................................................................25

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .................................................................................23

*Rodriguez v. Trs. of Columbia Univ.*,
  2006 WL 2521323 (S.D.N.Y. Aug. 30, 2006) .................................................13

*Rosa v. Goord*,
  29 F. App'x 735 (2d Cir. 2002) ...................................................................10

*Rotella v. Wood*,
  528 U.S. 549 (2000) .................................................................................19

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988) .................................................................8, 9, 10

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs.*,
    2013 WL 12368698 (E.D.N.Y. Feb. 19, 2013)...................................................................24

*Schlick v. Penn-Dixie Cement Corporation*,
    507 F.2d 374 (2d Cir. 1974).............................................................................................21

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) .............................................................................14

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008).............................................................................................19

*Starr v. Sony BMG Music Ent.*,
    592 F.3d 314 (2d Cir. 2010)...............................................................................................9

*Thomas v. Apple*,
    2024 WL 4954013 (S.D.N.Y. Dec. 2, 2024) ...................................................................13

*Wade Park Land Holdings, LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022)..............................................................................23

## Rules / Statutes

18 U.S.C. § 1595(a) .................................................................................................13, 14, 16

18 U.S.C. § 1962(c) ...........................................................................................................20, 24

CPLR § 213(8) ........................................................................................................................19

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 8

Fed. R. Civ. P. 8 ................................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ................................................................................................................25

Defendant Roc Nation, LLC ("Roc Nation") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Terrance Dixon's Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Through his sprawling 775-paragraph complaint, Plaintiff seeks to repackage a wage dispute against musician, entertainer, and entrepreneur Joseph Cartagena into a yearslong, salacious saga of sex trafficking and forced labor. The gravamen of Plaintiff's grievance appears to be that Mr. Cartagena did not pay Plaintiff enough for Plaintiff's contributions to Mr. Cartagena's stage shows and a handful of records. But not content to litigate those routine claims, Plaintiff injects hundreds of paragraphs of incoherent yet scandalous accusations that Mr. Cartagena and a depraved entourage coerced Plaintiff into having sex with fans after performances, threatened to kill Plaintiff, trafficked underage girls, and engaged in all manner of other racketeering conduct, all in apparent service of an improper attempt to extract a settlement from Mr. Cartagena.

Roc Nation, however, has nothing to do with any of this. Nothing. Roc Nation's alleged role in this case—according to Plaintiff himself—is that it became Mr. Cartagena's artist management company in 2017, and in that capacity, earned a commission on revenue Mr. Cartagena generated. That is the sum total of what Plaintiff alleges Roc Nation did here. Nowhere does Plaintiff allege anything that plausibly suggests that anyone from Roc Nation knew about, assisted, suspected, or otherwise was complicit in any alleged misconduct by Mr. Cartagena or anyone else. Yet, according to Plaintiff, the fact that Roc Nation had a business relationship with Mr. Cartagena somehow makes Roc Nation part of a RICO enterprise, a participant in sex trafficking, and an aider-and-abettor of Mr. Cartagena's alleged conduct. That is nonsensical.

Sadly, this lawsuit is all too consistent with counsel's reputation for filing meritless, kitchen-sink complaints bloated with demonstrably false, inflammatory allegations, baseless claims, and irrelevant defendants in the hope of creating bad press to leverage outsized settlements. Indeed, Plaintiff's counsel has been repeatedly admonished by this Court for his abuse of the judicial process, gamesmanship, and unethical tactics. The inclusion of Roc Nation as a defendant in this matter seems to be more of the same.

Aside from the fact that Plaintiff is unable to allege even a single fact that plausibly suggests Roc Nation engaged in wrongdoing, his claims suffer from multiple fatal legal deficiencies.

***First***, the complaint falls short of Rule 8(a)'s requirements that it be "short and plain" and simple and concise. It is anything but. Roc Nation has to parse nearly 800 paragraphs of contradictory, confusing, and opaque allegations to ascertain what claims are and are not asserted against it. This is not adequate notice.

***Second***, Plaintiff's conclusory allegations that Roc Nation knew of or participated in a forced labor venture not only strain credulity, but fail to identify facts illustrating *actual* or *constructive* knowledge of the venture or receipt of a benefit for *facilitating* a known TVPRA-violating venture.

***Third***, Plaintiff's absurd RICO claim does not withstand scrutiny: it is time-barred and insufficiently pled. The central conduct underlying his allegations against Roc Nation is that Plaintiff was not adequately compensated because, beginning in 2017, Roc Nation purportedly facilitated a payroll fraud. But simple logic dictates that Plaintiff knew, in real time, that he was not receiving what he claims he was due. The four-year statute of limitations for a civil RICO claim thus required him to file claims against Roc Nation no later than 2021. They are barred now.

Even assuming the claim were timely, by its own terms, the Complaint necessarily excludes Roc Nation from the alleged "association-in-fact" enterprise. It also fails to allege with any degree of plausibility that Roc Nation committed any predicate acts whatsoever.

Nothing in Plaintiff's rambling, vitriolic Complaint suggests that he can plead viable claims against Roc Nation. Whatever transpired between Plaintiff and Mr. Cartagena simply has nothing to do with Roc Nation. The Court should dismiss this case against Roc Nation with prejudice immediately.

## **BACKGROUND**[1]

### A.   **Related Procedural History**

On May 1, 2025, Mr. Cartagena filed suit against Plaintiff and his counsel, Tyrone Blackburn, for defamation and intentional infliction of emotional distress. *See Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 1, 2025), ECF No. 1 (Compl.). Roc Nation is not a party to that action.

In his suit, Mr. Cartagena asserted that Mr. Dixon worked with him from 2006 until approximately 2019 as "a hype man—a supporting performer who increases audience engagement with interjections and chants." *Id.* ¶ 1. Mr. Dixon was paid handsomely for this role and now, many years later, believes he has been financially aggrieved. *Id.* ¶¶ 1-2. Rather than raise his grievances directly with Mr. Cartagena, the lawsuit contends that Mr. Dixon took to social media to accuse Mr. Cartagena of pedophilia, statutory rape, and sexual assault. *Id.* ¶ 4. Following his flurry of social media activity, Mr. Dixon hired Tyrone Blackburn—his counsel in this action—to send a written demand on March 23, 2025 to Mr. Cartagena demanding compensation for unpaid

---

[1]   As it must do on a Rule 12(b)(6) motion, Roc Nation accepts all nonconclusory allegations in the Complaint as true for purposes of this motion but reserves its right to contest the validity of these allegations in the future and, indeed, denies them in their entirety.

wages associated with his alleged ghostwriting and uncredited vocal performances on some of Mr. Cartagena's songs. *Id.* ¶ 8. Less than a month later, Mr. Dixon sent Mr. Cartagena another demand letter threatening to file suit and attaching a copy of a complaint with allegations similar to those in the complaint he filed in this action. *Id.* ¶ 9. During the course of these communications, there was no mention of claims against any other entity associated with Mr. Cartagena. *Id.* ¶¶ 9-11. This apparently changed in late April 2025. Between April 25, 2025, and April 29, 2025, Mr. Dixon's counsel expanded the scope of the lawsuit he intended to file to encompass additional individuals and entities and additional claims, including RICO. *Id.* ¶¶ 62-69. Mr. Cartagena filed his complaint shortly thereafter.

### B.   Plaintiff's Allegations

On June 19, 2025, Mr. Dixon initiated this lawsuit, asserting seven causes of action against seven named defendants for purported trafficking, forced labor, racketeering, and state law claims in connection with conduct he asserts transpired over a 16-year period. (*See* Dkt. No. 1 ("Compl.").) Among his myriad claims, Plaintiff appears to assert only two against Roc Nation: a violation of the Trafficking Victims Protection Reauthorization Act (the "TVPRA") (Count I) and RICO (Count VII).

In 2017, Roc Nation began managing Mr. Cartagena and agreed to do what any manager does—control "his music catalog, publishing rights, and intellectual property" in exchange for a 10% management fee. (*E.g.*, Compl. ¶¶ 62, 102.) But Plaintiff contends that when Roc Nation stepped into this role, it began to exercise what would amount to total control, not just over the promotion of his music and management of his tours, events, and media interviews, but the minute details of the amount and manner in which Mr. Cartagena paid his staff, how payroll would be dispensed and reported to the IRS, and what would be reported on individual paystubs. And Plaintiff asserts that by virtue of managing Mr. Cartagena's musical career, Roc Nation effectively

4

had full knowledge and control every single aspect of Mr. Cartagena's life, including his non-music business ventures, his personal finances, the interpersonal dynamics of the people on tour with him, and even, apparently, his sexual activity.

Plaintiff's relationship with Mr. Cartagena, however, predated Roc Nation's, by about a decade. Plaintiff alleges that he began working for Mr. Cartagena in 2005 and did so in several capacities until 2020, including as a hype-man and as an on-stage performer, songwriter, background vocalist, creative contributor, tour security, and logistical liaison. (*Id.* ¶ 48.) In connection with this work, Plaintiff and Mr. Cartagena negotiated "compensation for his creative efforts," including "15% ownership interest in every track to which he contributed," "15% of gross earnings derived from those songs," and "royalty and publishing payments." (*Id.* ¶ 89.) According to Plaintiff, however, these promises were not fulfilled. (*Id.* ¶ 91.) Plaintiff contends that he was "denied credit, compensation, and royalties" for his creative and structural contributions. (*Id.* ¶ 49.) And he claims that all of this resulted from Mr. Cartagena and others' "submi[ssion of] falsified and backdated split sheets omitting Plaintiff's authorship" to "divert royalty income and construct a paper trail that falsely attributed full publishing ownership" to Mr. Cartagena. (*Id.* ¶ 94.)

As to Roc Nation, Plaintiff simply alleges that it "knew or should have known" about these purported unlawful activities and that it "ratified and concealed" them. (*Id.* ¶¶ 101-02.) How Roc Nation "knew," why it "should have known," and what it did to "rafit[y] and conceal[]" them is left unsaid. Plaintiff also alleges Roc Nation "knowingly participated in the exploitative arrangement" because it "appointed a director to whom Plaintiff reported." (*Id.* ¶ 103.) Who that "director" is, what that person's role was, what she or he actually did, and how Roc Nation fit into any of it is likewise unexplained.

In exchange for his services, Plaintiff asserts that he was contractually entitled to "approximately $3,000 per show" (*id.* ¶ 107) and "$100 per day" in per diem payments (*id.* ¶ 112), but was "typically" paid "only $250 per show" in cash (*id.* ¶ 110) and never received his per diem compensation (*id.* ¶ 113.)  Plaintiff contends that BDO, an accounting company purportedly operating at the direction and under the supervision of Roc Nation (and other Defendants), "fabricate[d] wage statements and inflate[d] W-2s…to make it appear…Plaintiff was paid appropriately." (*Id.* ¶ 109.)  Plaintiff asserts that Roc Nation unlawfully profited from this structure. (*Id.* ¶ 118.)

Over the 15 years Plaintiff worked for Mr. Cartagena, he contends that Mr. Cartagena created an "environment of psychological manipulation [and] intimidation," through persistent threats. (*Id.* ¶¶ 121-131.)  He also claims that Mr. Cartagena subjected Plaintiff to "repeated and severe sexual coercion, manipulation, and humiliation" (*id.* ¶ 132) by coercing him into "engaging in sexual acts with women" that Mr. Cartagena brought "to hotel rooms and private gatherings following performances and studio events" (*id.* ¶ 133.)

Plaintiff concedes that no one from Roc Nation (who only entered the picture in 2017) attended any of the events or witnessed these purported forced sexual encounters. (*Id.* ¶¶ 132-45, 154-70.)  Nevertheless, Plaintiff alleges that Roc Nation should have known that this alleged abuse was ongoing because it took place in the shadow of unidentified "branded events" that "involved" unidentified "staff under Roc Nation's supervision" and because unidentified individuals in unspecified "touring circles" discussed them. (*Id.* ¶ 162.)

As a byproduct of its management of Mr. Cartagena, Plaintiff asserts that Roc Nation "had ample opportunity to detect" the alleged abuse but instead "enabled and benefited" from it by receiving a management fee (*id.* ¶¶ 144, 163), and in so doing purportedly "substantially

participated in the trafficking venture" (*id.* ¶ 362).  Although Plaintiff does not detail the nature of the relationship between Roc Nation and BDO, if any, he asserts that "Roc Nation acted through its appointed accounting agent, BDO, which handled payroll structuring, W-2 issuance, and tax classification" and that, at Roc Nation's purported instruction or direction, "BDO knowingly created falsified W-2 paystubs for Plaintiff while simultaneously misclassifying him as a 1099 contractor for IRS filings."  (*Id.* ¶¶ 363, 365(3).)  Plaintiff further contends that Roc Nation participated in an illegal venture by facilitating a retaliatory legal action—the defamation action initiated by Mr. Cartagena in May 2025.  (*Id.* ¶ 364.)  Roc Nation is not a party to that suit.  *See Cartagena v. Dixon*, No. 25-cv-03552, (S.D.N.Y. May 1, 2025), ECF No. 1 (Compl.).

To substantiate his TVPRA and RICO claims, Plaintiff leverages his three basic allegations about Roc Nation—(1) it was Mr. Cartagena's manager, (2) it received a 10% management fee for its services, and (3) it had some relationship with BDO—for all that he can.  With respect to his TVPRA claim, Plaintiff alleges that Roc Nation's "role in directing payroll misclassification and fraudulent reporting" necessarily demonstrated its knowledge of and participation in a broader forced labor venture that violates the TVPRA.  (*Id.* ¶ 366.)  And where it concerns RICO, Plaintiff frames Roc Nation as a "strategic facilitator and aider of racketeering activity" because, as Mr. Cartagena's manager, it was purportedly "aware or willfully blind" to Mr. Cartagena's "criminal conduct" yet continued to manage him.  (*Id.* ¶ 496.)  Roc Nation's alleged "racketeering-related conduct" includes being Mr. Cartagena's manager; "[i]nitiating or supporting retaliatory litigation against Plaintiff and his attorney"; continuing to be Mr. Cartagena's manager; and "[f]ailing to disclose material information about known enforcers and threats" and "suppressing evidence of coercive enterprise tactics."  (*Id.* ¶¶ 497, 499.)  Plaintiff alleges Roc Nation committed three predicate RICO acts based on (1) BDO "generat[ing] false W-2 paystubs and earnings statements

for Plaintiff" and misclassifying Plaintiff "as a 1099 independent contractor on IRS and state filings" (*id.* ¶¶ 739, 748, 754); and (2) "conceal[ing], rout[ing], and sanitiz[ing] criminal proceeds" through "Enterprise[-]maintained" accounts that Roc Nation had "access to and oversight over" (*id.* ¶¶ 744-745, 749).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8 governs the pleading standards for a complaint in federal court. This Rule requires plaintiffs to provide "a short and plain statement" of their claim showing entitlement to relief and submit a complaint that is "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Second Circuit has held that concision is required "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). And a pleading that does not comply with Rule 8's mandates in this regard unfairly forces defendants and the court "to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Dismissal of a complaint for failure to comply with Rule 8 is appropriate where the complaint, as here, is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.*

Rule 12(b)(6) dismissal is proper where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted). In assessing a claim's plausibility, a court need not credit "mere conclusory statements,"

"[t]hreadbare recitals of the elements of a cause of action," or give "effect to legal conclusions couched as factual allegations." *Id.*; *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). If the allegations have not "nudged [plaintiff's] claims across the line from conceivable to plausible," then the pleading is deficient. *Twombly*, 550 U.S. at 570; *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010).

## ARGUMENT

I. **PLAINTIFF'S COMPLAINT FAILS TO STATE A SHORT AND PLAIN STATEMENT OF THE CLAIM OR PROVIDE ADEQUATE NOTICE TO ROC NATION**

A. **The Complaint is neither "short and plain" nor "simple, concise, and direct"**

Plaintiff's blunderbuss 175-page complaint does not comply with Rule 8's requirement that pleadings contain "a short and plain statement" and be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Courts dismiss such complaints because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it," as "they are forced to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F.2d at 42.

Plaintiff's Complaint is hopelessly inadequate under this standard. To assess the adequacy of his claims, both the Court and Roc Nation must wade through a morass of "confused, ambiguous, vague, or otherwise unintelligible" allegations. *Id.* It relies broadly on conjecture, supposition, and conclusory allegations—especially as it concerns Roc Nation. Distilled to its core, Plaintiff's basis to accuse Roc Nation of racketeering, forced labor, and a persistent pattern of sex trafficking is that Roc Nation provided artist management services to Mr. Cartagena and collected a fee for this work. (*See e.g.* Compl. ¶¶ 62, 101, 144, 162, 362, 495-97 (asserting Roc Nation's management of Cartagena necessarily placed it in a position to be aware of purportedly unlawful activity); *id.* ¶¶ 62(1), 102, 362, 365(1) (all alleging Roc Nation was paid 10% management fee).) But nearly every reference to Roc Nation in the Complaint is shrouded in

conclusion untethered to any facts demonstrating what any individual associated with Roc Nation *did*, *said*, *saw*, or *knew*.

Rule 8(a) exists to protect defendants like Roc Nation from rambling complaints like the one in this case. *See Salahuddin*, 861 F.2d at 43 (dismissing complaint spanning "15 single-spaced pages"); *Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) (affirming dismissal of complaint spanning "57 pages and contain[ing] 597 numbered paragraphs" because it was "was far from short or plain"). *Salahuddin* is instructive. There, a *pro se* plaintiff filed a single spaced, 15-page complaint that asserted claims against 20 defendants and described their employment status, their official roles, and identified their roles in the alleged deprivation of rights. *Salahuddin*, 861 F.3d 43. The Court found the complaint violated Rule 8 because it was overly long and unnecessarily detailed—at least in respect of irrelevant allegations. *Id.* Plaintiff's Complaint here falls far short of that. Plaintiff, unlike Salahuddin, is represented by counsel, who filed a complaint that is—at minimum—five times longer than Salahuddin's. Despite its length, there is a dearth of factual detail concerning what Roc Nation actually did.

Moreover, far from being "plain" and "concise," it is confusing, contradictory, "prolix[,] and not susceptible of a responsive pleading." *Rosa v. Goord*, 29 F. App'x 735, 735 (2d Cir. 2002). For example, it is difficult to discern which claims are pled against Roc Nation. Though only two specifically mention Roc Nation (Count I—TVPRA; Count VII—RICO), elsewhere Plaintiff makes vague references to Roc Nation having knowledge of purported acts of fraudulent misrepresentation and concealment, two of his other causes of action. (*See* Compl. ¶¶ 89-92, 101.) Still elsewhere, Plaintiff suggests he is also bringing "related state law claims"—including intentional infliction of emotional distress, assault, battery, conspiracy, unauthorized practice of law, and fraudulent financial reporting—and hints at a First Amendment claim, though it does not

actually appear he has pled any of these causes of action. (*Id.* ¶¶ 31, 43.) And in his RICO claim, Plaintiff asserts that Roc Nation engaged in three predicate acts, but cites a multitude of statutes purportedly violated, without further exposition or clarification. This is precisely the sort of pleading strategy that Courts deem eligible for dismissal. *Owens v. Connecticut*, 2025 WL 878863, *2 (D. Conn. Mar. 21, 2025) (dismissing complaint that "sometimes identified [claims] without any further explanation," preventing defendants from "appropriately respond[ing] to [the] allegations"); *Azzarmi v. Neubauer*, 2023 WL 6255678, *3 (S.D.N.Y. Sept. 26, 2023) (affirming dismissal where complaint "simply fail[ed] to provide fair notice to Defendants due to its convoluted structure, organization, syntax, and content" (cleaned up)).

### B.    The Complaint fails to provide adequate notice

Plaintiff's Complaint also engages in impermissible group pleading. It is well established that "plaintiffs cannot simply lump defendants together for pleading purposes" because this "fails to give each defendant fair notice of the claims against it." *Nesbeth v. N.Y.C. Mgmt. LLC*, 2019 WL 110953, *3 (S.D.N.Y. Jan. 4, 2019). As Plaintiff routinely employs this haphazard approach to pleading, his Complaint deprives Roc Nation of "fair notice of a claim and the grounds upon which it rests," leaving Roc Nation unable to "identify the nature of the case [and] respond to the complaint." *Id.*

The Complaint routinely lumps Defendants together. In doing so, Plaintiff apparently seeks to create the illusion that ***all seven*** Defendants collectively coordinated to engage in unlawful schemes designed to enrich themselves to Plaintiff's detriment. (*See e.g.*, Compl. ¶ 17 ("Defendants engaged in deliberate tax fraud schemes by submitting intentionally inflated and fraudulent income reports"); *id.* ¶ 80 (alleging conditions "deliberately crafted and maintained by Defendants to extract labor"); *id.* ¶ 83 ("Defendants intentionally withheld credit, royalties, backend profits, and publishing interests"); *id.* ¶ 109 ("Defendants instructed Plaintiff's accountant

11

to fabricate wage statements and inflate W-2s submitted to the IRS").) This is inappropriate. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (complaint alleging violations by "defendants" dismissed for failure to "differentiate"). And Plaintiff's allegations are self-contradictory. For example, though he asserts that Roc Nation "directed" BDO to falsify documents, his basis for that assertion is that "[u]pon information and belief, *Defendants* instructed Plaintiff's accountant to fabricate wage statements and inflate W-2s." (Compl. ¶ 109 (emphasis added).) Similarly, he asserts that "Defendants intentionally withheld credit, royalites, backend profits, and publishing interests," but later confirms that Cartagena paid him. (*Compare id.* ¶ 83, *with id.* ¶ 349(1).) Dismissal is the appropriate remedy. *Nesbeth*, 2019 WL 110953, *3 (dismissing complaint where allegations and claims were "ambiguous and disguised" and failed to clarify "what conduct the…defendants allegedly engaged in, and which of the plaintiff's claims apply to them"); *Komatsu v. City of New York*, 2021 WL 3038498, *5 (S.D.N.Y. July 16, 2021) (finding significant prejudice to defendant "who must sift through hundreds of pages and hours of video footage to fully ascertain the nature of the charges against them").

More prominently, Plaintiff improperly groups allegations against Mr. Cartagena and Roc Nation on the basis of their commercial relationship. Plaintiff alleges that Roc Nation has, since 2017, "exercised operational control over Cartagena's catalog, managed the flow of royalties, and received a 10% cut of all business revenue generated by Defendant and his companies." (*Id.* ¶¶ 62, 102.) But he fails to allege *any* facts that identify what "operational control" Roc Nation had or how it purportedly "managed the flow" of Mr. Cartagena's royalties. In any event, any shared business interests between "separate legal entities" or "corporate affiliation" does not excuse Plaintiff from "the requirement of pleading in a manner that provides fair notice to each defendant

of the claims against it." *Nesbeth*, 2019 WL 110953, *3; *Lepore v. NL Brand Holdings LLC*, 2017 WL 4712633, *7 (S.D.N.Y. Sept. 28, 2017).

Roc Nation is mentioned in 42 of the Complaint's 775 paragraphs. It should not have to sift through 734 additional, ambiguous paragraphs that it is not mentioned in to attempt to decipher which allegations it must answer. *Rodriguez v. Trs. of Columbia Univ.*, 2006 WL 2521323, *3 (S.D.N.Y. Aug. 30, 2006) (defendant cannot adequately respond to allegations where it is "forced to select [by estimation] the relevant material from a mass of verbiage"); *Thomas v. Apple*, 2024 WL 4954013, *4 (S.D.N.Y. Dec. 2, 2024) (dismissing complaint where plaintiff sued "numerous disparate defendants, including social media companies and well-known musical artists" and alleged "facts regarding some of the defendants, [but] no facts explaining how many of the[m]…were involved in violating his rights."). The Court should dismiss Roc Nation from this case with prejudice.

## II.    PLAINTIFF'S TVPRA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION AGAINST ROC NATION

Plaintiff seeks damages under the TVPRA for alleged forced labor and sex trafficking by coercion. Though he acknowledges that Roc Nation did not *actually* participate in any such conduct (Compl. ¶¶ 346-59, 360), he contends that Roc Nation can be held liable as a venture participant pursuant to 18 U.S.C. § 1595(a). (*Id.* ¶ 360-62.) Not so. Plaintiff alleges nothing that makes it remotely plausible that Roc Nation knew or should have known about the existence of purported violations of the TVPRA or knowingly benefitted from a venture engaged in such activities.

Section 1595(a) of the TVPRA permits a victim of sex trafficking or forced labor to assert claims against both the perpetrators of those acts and any person or entity who "knowingly benefits…financially or by receiving anything of value from participation in a venture which that

person knew or should have known has engaged" in a violation of trafficking and forced labor laws.  18 U.S.C. § 1595(a).  To state such a claim, a plaintiff must allege:  "(1) that the defendant knowingly benefited or received anything of value (2) from participation in a venture, (3) which the beneficiary knew or should have known has engaged in an act in violation of [the TVPRA]." *Cho v. Chu*, 2022 WL 4463823, *3 (S.D.N.Y. Sep. 26, 2022) (cleaned up); *Chen v. Cai*, 2022 WL 917575, *4 (S.D.N.Y. Mar. 28, 2022).  Plaintiff's Complaint falls woefully short of pleading any of these elements as to Roc Nation.

### A.    There is no plausible allegation that Roc Nation had knowledge of the purported TVPRA violations

As elsewhere, Plaintiff's theory of Roc Nation's liability under the TVPRA is that it provided artist management services to Mr. Cartagena.  That does not suffice.  Adequately asserting knowledge of purported TVPRA violations requires allegations of ***actual*** or ***constructive*** knowledge "that the venture in which they participated violated the TVPRA." *Mueller v. Deutsche Bank Aktiengesellschaft*, 2025 WL 1019201, *5 (S.D.N.Y. Apr. 4, 2025); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("abstract awareness" of underlying TVPRA violations not enough).  Plaintiff fails to do so.  Each of Plaintiff's allegations that Roc Nation purportedly had knowledge of a forced labor venture is bare and conclusory, and, even if credited, would show, at most, the type of "general awareness" of a purported trafficking violation that courts deem insufficient.

***First***, Plaintiff asserts that Roc Nation's "knowing participation" is evidenced by its purported refusal to "rectify the known exploitation—followed by retaliatory legal action." (Compl. ¶ 364.)  But how Roc Nation supposedly knew of this deplorable alleged conduct is a mystery.  Plaintiff merely reiterates that Roc Nation managed Mr. Cartagena's "touring, catalog, and business infrastructure" and purportedly "supervis[ed]" the alleged falsification of W-2

14

paystubs by BDO, an independent entity.  (Compl. ¶¶ 362-63.)  He does not assert **how** Roc Nation's management of Mr. Cartagena's music business gave it insight into how much Plaintiff should have been paid, what he was paid, or any venture to deprive him of adequate compensation. Nor does he describe how the nature of Roc Nation's relationship with BDO would give rise to Roc Nation's supervision of their work, whether Roc Nation reviewed the W-2s Plaintiff purports were falsified, or even received them.  (*See id.* ¶¶ 105-112, 118-119, 315, 363-66.)  In short, his self-serving assertions that Roc Nation had knowledge that it was participating in a forced labor venture, which is "merely consistent with a defendant's liability…, 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (citation omitted).

**Second**, Plaintiff's assertion that Roc Nation "[w]illfully refused to investigate internal complaints and financial discrepancies…thus ratifying the forced labor system" (Compl. ¶ 365(6)) does not advance his venture participation claim.  Plaintiff does not allege that any "internal complaints" were made, let alone **what** the complaints were about, **when** they were made, or **to whom** (at Roc Nation) they were made.  Nor does he assert that Roc Nation had knowledge of any financial discrepancies, or how anyone at Roc Nation would have known of any such discrepancies.  More to the point, the TVPRA "does not require a company providing generally available services to investigate its customers to ensure they are not indirectly connected to trafficking." *Mueller*, 2025 WL 1019201, *7.  Plaintiff does not allege that Roc Nation had a duty to monitor or otherwise supervise Cartagena in relation to any purported trafficking venture.

**Finally**, Plaintiff contends that Roc Nation "[d]irected and ratified a fraudulent misclassification scheme" by "misclassifying him as a 1099 contractor for IRS filings."  (Compl. ¶¶ 365(3), 363.)  This too fails.  "[T]he TVPRA requires the beneficiary to know its client is

15

engaged in trafficking, not just in any illegal activity." *Mueller*, 2025 WL 1019201, *7 (finding complaint failed to allege knowledge prong for beneficiary claim under TVPRA where alleged illegal activity was VAT fraud scheme). Here, Plaintiff fails to connect the dots on how any alleged misclassification establishes Roc Nation knew it or Mr. Cartagena was somehow engaged in trafficking. Even assuming this conclusory allegation could be accepted as fact (it can't), at most it would suggest general awareness of illegal activity, not the required knowledge of participation in a forced labor venture.

### B. Plaintiff fails to allege facts that plausibly suggest that Roc Nation participated in a trafficking venture

The Complaint equally fails to allege that Roc Nation actually *participated* in any trafficking venture. To surpass this threshold, Plaintiff was required to plead a "causal relationship between affirmative conduct furthering the…venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (citing 18 U.S.C. §§ 1591(a)(2), 1595(a)). This requires defendant's active engagement in the venture, not merely passive facilitation. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (TVPRA liability "cannot be established by association alone").

There is no basis, in the Complaint or otherwise, to suggest Roc Nation participated in any alleged venture. Plaintiff's allegations regarding alleged coerced sex acts and pay negotiations are made only against other defendants, not Roc Nation. (*See* Compl. ¶¶ 346-359.) Plaintiff merely claims BDO, "knowingly created falsified W-2 paystubs for Plaintiff while simultaneously misclassifying him as a 1099 contractor for IRS filings," and that "[t]hese acts [were] carried out under Roc Nation's supervision" and "financial authority." (*Id.* ¶¶ 363-364, 739(1).) These conclusory allegations—against an accounting company with more than 100,000 employees that

16

Roc Nation supposedly contracted—fail to establish *active* participation by Roc Nation.  *See Maung Ng We v. Merrill Lynch & Co.*, 2000 WL 1159835, *5 (S.D.N.Y. Aug. 15, 2000) (dismissing complaint that contained no facts indicating that the purported agent was acting on behalf of principal).

### C.    Plaintiff pleads no facts demonstrating that Roc Nation received any benefit from the purported trafficking venture

Plaintiff's theory by which Roc Nation benefited from the alleged trafficking venture—the 10% commission it earned on Mr. Cartagena's music revenue—is insufficient to support a TVPRA claim against Roc Nation.    To demonstrate that a venture participant "knowingly benefit[ed]…from participation" in a trafficking venture, Plaintiff must prove that the benefit arose from "participation in a…[]trafficking venture, not participation in other activities engaged in by the…traffickers that do not further the []trafficking aspect of their venture."    *Geiss*, 383 F. Supp. 3d at 169 (cleaned up).  Plaintiff fails to even allege this, let alone specify facts that make the allegation plausible.

Plaintiff contends that Roc Nation "[r]eceived at least 10% of all income earned by [Mr.] Cartagena, including revenue derived from performances, songwriting, and commercial releases that relied on Plaintiff's coerced and unpaid labor."  (Compl. ¶ 365(1).)  From this conclusory allegation alone, Plaintiff seeks an inference that Roc Nation received this remuneration in exchange for—or as a benefit of—participation in an illegal forced labor venture.  That is not proper pleading.  *See Oldcastle Ne., Inc.*, 507 F.3d at 121 (legal conclusions "couched as factual allegations" not accepted as true; a complaint must "allege facts that are not *merely consistent* with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion" (emphasis added)).   Nor is it remotely logical.  It is more plausible that the 10% of

17

Mr. Cartagena's profits that Roc Nation received was a management fee, in exchange for the management services it provides.

*Geiss* is instructive. There, the court recognized that the defendant "undoubtedly benefited from H. Weinstein's continued employment at [defendant]" because Weinstein's "movies and influence generated revenue, and some of that revenue flowed to [defendant]." *Geiss*, 383 F. Supp. 3d at 169. The Court, however, dismissed the TVPRA claim because there was no allegation "Weinstein provided any of those benefits to [defendant] ***because of*** [defendant's] facilitation of" the misconduct. *Id.* (emphasis added). The same link is missing here too. There are no factual allegations connecting any monetary payment Roc Nation received to alleged facilitation of the forced labor venture Plaintiff contends existed. "Because the Complaint does not give rise to the plausible inference" Roc Nation "benefitted financially or by receiving anything of value, the TVPRA claim…must be dismissed." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679-80 (S.D.N.Y. 2024).

## III.    PLAINTIFF'S RICO CLAIM IS UNTIMELY AND INSUFFICIENTLY PLED

### A.    The RICO claim is time-barred

Plaintiff cannot assert a claim for RICO (Count VII) against Roc Nation because his claim is time-barred. Plaintiff alleges Roc Nation engaged in racketeering because Plaintiff was not paid what he believes he was due. Plaintiff thus has been on notice of his alleged RICO injury since he received his first short paycheck. Plaintiff concedes that Roc Nation began managing Mr. Cartagena in 2017 and that he stopped working for Mr. Cartagena in 2020. His claim thus expired in 2021.[2]

---

[2] The Complaint only asserts violations of the TVPRA and RICO against Roc Nation. To the extent Plaintiff attempted to assert other causes of action against Roc Nation, those too are untimely. Plaintiff's equitable claims for unjust enrichment (Count II), quantum meruit (Count

Civil RICO claims are governed by a four-year statute of limitations that begin to run when a plaintiff is on actual or inquiry notice of his claim. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). Such notice exists when there are "storm warnings" that would suggest to a reasonable person that "something is seriously wrong." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008); *Koch v. Christie's Int'l*, 699 F.3d 141, 154–57 (2d Cir. 2012) (applying same principle to claims under New York law). Under this standard, Plaintiff's RICO claim against Roc Nation expired years ago.

Plaintiff's RICO claim is based on allegations that Roc Nation engaged in various predicate acts of fraud because BDO (not Roc Nation) "generated false W-2 paystubs and earnings statements for Plaintiff" and "misclassified" him as an independent contractor "on IRS and state filings" to deprive him of the benefits to which he was entitled. (Compl. ¶¶ 739, 748, 754.) As Plaintiff puts it, he was contractually entitled to $3,000 per show but typically received only $250. (*Id.* ¶¶ 107, 110.) Simple logic dictates that anyone receiving false paystubs or earnings statements, or failing to receive the pay and benefits to which his true paystubs and status entitled him, would be on notice that something was wrong the minute he received those paystubs. Any RICO claim against Roc Nation thus accrued in 2017 when it began managing Mr. Cartagena's music interests and expired four years later in 2021.

Plaintiff's allusion to equitable tolling is unavailing. Plaintiff alleges that his fraud-based claims (*Id.* ¶¶ 70-77) are timely because he "brought this action within two years of uncovering

---

III), and constructive trust (Count V) are all subject to a six year statute of limitations that "accrued…when [the services were performed and] any alleged benefit could have been conferred by plaintiff." *Demian v. Calmenson*, 156 A.D.3d 422, 423 (1st Dep't 2017). And Fraudulent concealment (Count IV) and misrepresentation (Count VI) are time barred after the later of six years following the plaintiff's loss or two years after the plaintiff discovered or "could with reasonable diligence have discovered" the actual alleged fraud. CPLR 213(8). Had he intended to bring these claims against Roc Nation, he should have before 2023.

the full scope of the misconduct, rendering his fraud-based claims timely under CPLR § 213(8) and consistent with the equitable tolling doctrine." (*Id.* ¶ 75.) These conclusory allegations of fraudulent concealment are insufficient. The equitable tolling doctrine is circumscribed and only applies "where a [party] has been prevented in some extraordinary way from exercising his rights." *Iavorski v. U.S. INS*, 232 F.3d 124, 129 (2d Cir. 2000) (citation omitted); *see also Citibank, N.A. v. Friedman*, 747 F. Supp. 3d 427, 437 (E.D.N.Y. 2024) (doctrine applies in "rare and exceptional cases where extraordinary circumstances prevented a party from timely performing a required act, and the party acted with reasonable diligence throughout the period to be tolled" (citation omitted)). Plaintiff has not pled any extraordinary circumstances that prevented him from ascertaining defects in his compensation. And he has not identified any reasonable diligence undertaken since his RICO claim accrued in 2017 that would warrant tolling. Nor could he. Basic diligence—including monitoring payments he received to determine if there were shortfalls—would have uncovered any discrepancies. Plaintiff failed to exercise this diligence, foreclosing him from application of equitable tolling.

The Court should dismiss Plaintiff's RICO claim as untimely.

**B.      The RICO claim fails to assert a cause of action against Roc Nation**

Plaintiff's RICO claim is not only time-barred but inadequately pled. "A civil RICO claim pursuant to 18 USC § 1962(c) requires…plaintiff[] to show (1) a substantive RICO violation under 18 USC § 1962, (2) injury to the plaintiff's business or property, and (3) such injury was by reason of the substantive RICO violation." *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 254 (S.D.N.Y. 2023). The first element requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" that "consist[s] of two or more predicate acts of racketeering." *Lundy v. Cath. Health Sys. of Long Island*, 711 F.3d 106, 119 (2d Cir. 2013).

20

At the threshold, Plaintiff's attempt to manufacture an elaborate RICO claim based "upon information and belief" should be rejected. Plaintiff attempts to prop up its claim against Roc Nation by creating the impression that it is a "strategic facilitator and aider of racketeering activity." (Compl. ¶¶ 495-499.) His theory is that, by agreeing to manage Mr. Cartagena in 2017 in exchange for some of his proceeds, Roc Nation somehow agreed to act as the legitimate face of a sophisticated RICO enterprise. That is silly. Stripped of the conspiratorial rhetoric, however, Plaintiff's Complaint confirms that Roc Nation and Mr. Cartagena shared a routine manager-artist relationship: Roc Nation agreed to manage his music business—catalog of records, shows, appearances, tours—and Mr. Cartagena paid a 10% management fee. And any conduct Plaintiff alleges caused him injury is specifically alleged to have been done by *other* Defendants, not Roc Nation. *Schlick v. Penn-Dixie Cement Corporation,* 507 F.2d 374, 379 (2d Cir. 1974) (allegations of fraud based upon information and belief are insufficient unless "accompanied by a statement of facts upon which the belief is founded").

### 1.    *Plaintiff does not adequately allege that Roc Nation committed at least two predicate acts*

Critical to any RICO claim is a showing that "each defendant engaged in two or more predicate acts." *G-I Holdings, Inc. v. Baron Budd*, 238 F. Supp. 2d 521, 537 (S.D.N.Y. 2002); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 537 (S.D.N.Y. 2014). Though the Complaint alleges Roc Nation participated in (1) wire fraud, mail fraud, tax evasion, and forced labor (Compl. ¶ 739); (2) money laundering (*id.* ¶ 744); and (3) payroll fraud (*id.* ¶ 753), none suffices. Each of these predicate acts is based on conjecture and conclusory allegations that Roc Nation supervised or directed the falsification of records by the accounting giant BDO. (*See* Compl. ¶ 739 (Predicate Act 22 ("BDO, acting under Roc Nation's financial authority, generated false W-2 paystubs and earning statements" and "misclassified")); *id.* ¶¶ 748-49 (Predicate Act 23

(BDO "created and submitted dual sets of documents" and "routed enterprise revenue" through Enterprise-managed accounts)); *id.* ¶ 754 (Predicate Act 24 ("Roc Nation[] direct[ed]" BDO to falsify W-2 paystubs")).)

Collectively, they fall far short of establishing Roc Nation's knowing participation or specific intent to defraud Plaintiff. *See, e.g.*, *Buyers & Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*, 575 F. Supp. 2d 499, 508 (S.D.N.Y. 2008) (mail and wire fraud require a "scheme to defraud," and knowing or intentional participation in the scheme with specific intent to defraud). Regarding Predicate Acts 22 and 24, Plaintiff has pled no facts to support its contention that Roc Nation was aware of or involved in, let alone "directed," acts BDO allegedly took under its "financial authority." In vaguely alleging that "Roc Nation's involvement was not tangential" (*id.* ¶ 742), Plaintiff inadvertently demonstrates that Roc Nation's involvement, if any, could only have been tangential. Nor do his assertions that Roc Nation "provided structural legitimacy, financial cover, and corporate backing" for others' alleged racketeering do not alter the conclusion. This is just corporate-lingo pabulum—not factual support indicating an actual "scheme." (*Id.*) Predicate Act 23 is no different. Plaintiff alleges that because Roc Nation began managing Mr. Cartagena in 2017, it "had access to and oversight over" (*id.* ¶ 747) the financial accounts BDO allegedly used to perpetrate a laundering scheme (*id.* ¶ 745). What that means or why it is significant is entirely opaque. Nothing in the Complaint suggests it is even remotely plausible that Nation had any insight into Mr. Cartagena's finances at all, let alone that it had the capacity or authority to make decisions concerning the distribution of his profits, the compensations of his independent contractors, or the creation or submission of any tax records to the IRS or pay documents to any individual working for Mr. Cartagena.

### 2. *Plaintiff fails to plead a RICO enterprise*

Plaintiff's attempt to transform what appears to be, at most, a lost wages claim against Mr. Cartagena into a full-blown RICO enterprise targeting him is incredible on its face. Plaintiff claims the existence of an association-in-fact enterprise, but pleads nothing to suggest Roc Nation shared any corrupt intent or engaged in any fraud. The Complaint thus does not plausibly allege that Roc Nation "share[d] a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes," as is necessary to plead an association-in-fact enterprise. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (citation omitted).

Even if Plaintiff could establish other Defendants sought to defraud him, the only inference the allegations support is that Roc Nation intended to profit through its ordinary business operations. That is a "separate purpose or objective" that does not suffice for RICO liability. *See Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022) (rejecting RICO claim for absence of joint corrupt intent all defendants shared), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013). Courts regularly reject claims that do not "plausibly support" the inference defendants "were collectively trying to make money by fraud, as opposed to the obvious alternative explanation, that they were simply trying to make money." *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 374 (S.D.N.Y. 2022).

### 3. *Plaintiff's allegations are inconsistent with the notion that Roc Nation participated in the operation or management of a RICO enterprise*

The Complaint not only fails to allege that Roc Nation "participated in the operation or management of the enterprise itself," *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993), it actually shows the opposite. As discussed above, Plaintiff offers only conclusory allegations that Roc Nation directed the conduct of that purported enterprise. At most, Roc Nation "provided services" in the form of talent management "that were helpful to the enterprise" but are insufficient to

establish RICO liability. *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010). But "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise." *Id*. A plaintiff must plausibly allege that the defendant had discretion in carrying out its role. *See, e.g.*, *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs.*, 2013 WL 12368698, *7 (E.D.N.Y. Feb. 19, 2013) (dismissing RICO claim where defendants' "acts may have helped the scheme along" but defendant did not "le[a]d the scheme, exercise[] any form of discretionary authority, or recommend[] any particular course of conduct"); *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 403 (S.D.N.Y. 2000) (fact that defendant "may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c)"). The operation or management test is "extremely rigorous," *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019), and "very difficult" to satisfy, *Dubai Islamic Bank v. Citibank N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y 2003). Plaintiff falls short.

### 4.   *Plaintiff does not allege a RICO injury caused by Roc Nation*

Finally, to sustain a claim for civil RICO, Plaintiff must show that the alleged "RICO pattern or acts" proximately caused his injuries. *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) ("but for" causation alone is insufficient). The fundamental inquiry "is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). Plaintiff's allegations that injury to his business and property, in the form of economic losses, reputational harm, physical and psychological harm, and out of pocket expenditures, "are traceable to Defendant's prolonged pattern of criminal exploitation" (Compl. ¶ 764) are insufficient. *See Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 279 (S.D.N.Y. 2019) (no proximate causation where complaint "does not allege…direct relation between Defendants' conduct and Plaintiffs' losses"). Plaintiff's RICO claims against Roc Nation

are exactly what the proximate causation standard intended to weed out.  *Doe*, 385 F. Supp. 3d at

277 ("[P]roximate causation is meant to prevent...intricate, uncertain inquiries from overrunning

RICO litigation.").[3]

## **CONCLUSION**

For the foregoing reasons, Roc Nation respectfully requests that this Court grant its motion

in its entirety and dismiss Roc Nation from this case.

<table>
<tr><td>Dated: New York, New York<br>      June 23, 2025</td><td>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP</td></tr>
</table>

By:  */s/  Alex Spiro*

Alex Spiro
Joanna E. Menillo
alexspiro@quinnemanuel.com
joannamenillo@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

*Attorneys for Defendant Roc Nation*

---

[3]  To the extent the Complaint could be plausibly read as asserting state law claims against Roc Nation, they too are inadequately pled.  Plaintiff asserts no "direct relationship" between himself and Roc Nation, a defect fatal to an unjust enrichment claim (Count II).  *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 547 (S.D.N.Y. 2008).  This also renders his constructive trust claim (Count V) infirm against Roc Nation.  *Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506, 507 (S.D.N.Y. 2011).  Plaintiff specifically alleges that the services he performed were at Mr. Cartagena's request and accepted by him, not Roc Nation, belying any quantum meruit claim (Count III).  (Compl. ¶¶ 408-410.)  *see Pulver Roofing Co. v. SBLM Architects, P.C.*, 65 A.D.3d 826, 827, 884 (4th Dep't 2009).  And the fraudulent concealment and misrepresentation claims (Counts IV & VI) do not come even close to meeting the particularity requirement of Rule 9(b) as Plaintiff does not even allege a single statement or omission made by Roc Nation—let alone the who, what, when, where, and how of any supposed fraud.  Fed. R. Civ. P. 9(b); *Phhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 603 (2d Cir. 2024).

## **CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(C) of Hon. Jennifer L. Rochon Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 7,908 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(C) of Judge Rochon's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 23rd day of June, 2025 in New York, New York.


*/s/ Alex Spiro*
Alex Spiro