UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Terrance Dixon, a/k/a "TA,"

                *Plaintiff*,

      v.

Joseph Antonio Cartagena p/k/a "Fat Joe,"
Peter "Pistol Pete" Torres,
Richard "Rich Player" Jospitre,
Erica Juliana Moreira,
Sneaker Addict Touring LLC,
Slate, Inc.,
Roc Nation, LLC,
John Does 1–10, and Jane Does 1–10, and
ABC Corporations 1–10,

                *Defendants*.

No. 1:25-cv-05144 (JLR)

---

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT ROC NATION, LLC'S
MOTION TO DISMISS THE COMPLAINT AND
<u>OPPOSITION TO PLAINTIFF'S RULE 12(f) MOTION TO STRIKE</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    THE COMPLAINT VIOLATES RULE 8 .......................................................................2

II.    PLAINTIFF FAILS TO STATE A TVPRA CLAIM ........................................................4

    A.    The Complaint provides no basis to infer that Roc Nation was aware of the alleged trafficking. ..................................................................................................4

    B.    The Complaint provides no basis to infer that Roc Nation participated in a trafficking venture ....................................................................................................5

    C.    The Complaint provides no basis to infer that Roc Nation benefited from a TVPRA venture. ......................................................................................................6

III.    PLAINTIFF'S RICO CLAIM IS TIME-BARRED AND INSUFFICIENTLY PLED ................................................................................................................................7

    A.    Plaintiff's RICO claim is untimely. ..........................................................................7

    B.    Plaintiff fails to state a RICO claim. ........................................................................8

        1.    Plaintiff fails to plead actionable predicate acts. .........................................8

        2.    Plaintiff fails to plead a RICO enterprise.....................................................9

        3.    Plaintiff fails to plead causation...............................................................10

IV.    THE COURT SHOULD NOT GRANT LEAVE TO AMEND .......................................11

V.    PLAINTIFF'S CROSS-MOTION TO STRIKE IS IMPROPER AND UNPERSUASIVE ............................................................................................................11

CONCLUSION .............................................................................................................................12

CERTIFICATE OF WORD COUNT COMPLIANCE ..................................................................1

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*A.B. v. Marriott Int'l, Inc.*,
   455 F. Supp. 3d 171 (E.D. Pa. 2020) ....................................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 4

*Black v. Ganieva*,
   619 F. Supp. 3d 309 (S.D.N.Y. 2022) ...................................................................................... 9

*Broidy v. Glob. Risk Advisors LLC*,
   2023 WL 5447267 (S.D.N.Y. Aug. 24, 2023) ....................................................................... 11

*Capers v. Kirby Forensic Psychiatric Ctr.*,
   2016 WL 817452 (S.D.N.Y. Feb. 25, 2016) ......................................................................... 11

*Cooper v. Templeton*,
   629 F. Supp. 3d 223 (S.D.N.Y. 2022) ...................................................................................... 3

*Corradino v. Liquidnet Holdings Inc.*,
   2021 WL 2853362 (S.D.N.Y. July 8, 2021) ............................................................................ 6

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ................................................................................................... 7

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   747 F.3d 145 (2d Cir. 2014) ..................................................................................................... 3

*Elsevier Inc. v. W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) ...................................................................................... 3

*Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   2004 WL 626180 (S.D.N.Y. Mar. 30, 2004) ......................................................................... 11

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...................................................................................... 6

*Harbus v. Manhattan Inst. for Pol'y Rsch., Inc.*,
   2020 WL 1990866 (S.D.N.Y. Apr. 27, 2020) .......................................................................... 9

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ................................................................................................................... 10

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992) ...................................................................................4

*Levin v. Sarah Lawrence Coll.*,
  747 F. Supp. 3d 645 (S.D.N.Y. 2024)..........................................................................6

*Levy v. Aaron Faber, Inc.*,
  148 F.R.D. 114 (S.D.N.Y. 1993) .................................................................................7

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018)..........................................................................6

*Related Cos., L.P. v. Ruthling*,
  2019 WL 10947100 (S.D.N.Y. July 23, 2019) ............................................................2

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).....................................................................................................9

*S.J. v. Choice Hotels Int'l Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) .....................................................................4, 5

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*,
  2013 WL 12368698 (E.D.N.Y. Feb. 19, 2013)............................................................3

*United States v. Applins*,
  637 F.3d 59 (2d Cir. 2011)........................................................................................10

*In re Wade Park Holdings, LLC*,
  2024 WL 3024648 (2d Cir. June 17, 2024) ...............................................................10

*Wade Park Land Holdings, LLC v. Kalikow*,
  589 F. Supp. 3d 335, 374 (S.D.N.Y. 2022)................................................................10

*Wen v. N.Y.C. Reg'l Ctr., LLC*,
  695 F. Supp. 3d 517 (S.D.N.Y. 2023)........................................................................11

## Other Authorities

Fed. R. Civ. P. 7(a) ............................................................................................................11

Fed. R. Civ. P. 8..................................................................................................................2

Fed. R. Civ. P. 12(f).....................................................................................................1, 11

iii

**PRELIMINARY STATEMENT**

Plaintiff's disorganized, internally inconsistent, conclusory opposition echoes his Complaint and ultimately demonstrates why dismissal with prejudice is appropriate. Across its 18 pages, the opposition does not cite a *single* paragraph from the Complaint or explain how *any* of its allegations support a plausible inference of Roc Nation's involvement in any unlawful conduct, let alone a TVPRA venture or RICO enterprise. Notwithstanding Plaintiff's lengthy bullet lists of purported allegations, even a cursory review of the allegations *in the Complaint* shows that Roc Nation's alleged "central" role in the conduct consisted of (1) managing Mr. Cartagena, (2) receiving a 10% management fee, and (3) having some relationship with BDO. But these allegations reflect an ordinary-course business relationship and simply do not support an inference of human trafficking and racketeering. Nor does Plaintiff provide a reasoned argument why they do support such an inference. The most he can do is pound his fists with *ipse dixit* assertions and lengthy discussion of allegations against *other* defendants, and a few vague references to unidentified Roc Nation sources. Nothing in the Complaint or in Plaintiff's opposition gives *any* reason—much less a plausible basis—to believe that Roc Nation was complicit in any of the appalling accusations Plaintiff has made in this case, none of which Roc Nation believes to be true. The Court should dismiss the Complaint against Roc Nation with prejudice.

Plaintiff also moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike portions of Roc Nation's motion to dismiss. Rule 12(f), however, does not authorize striking anything from Roc Nation's motion. Rule 12 relates to pleadings. A motion is not a pleading. So even if Plaintiff's argument had merit—it doesn't—he would not be entitled to have it struck. In any event, the Court can decide for itself whether the parallels between this case and Plaintiff's counsel's history of similar improper conduct are illuminating.

1

## ARGUMENT

**I.     THE COMPLAINT VIOLATES RULE 8**

Plaintiff's Complaint is neither a "short" nor "plain statement" of his claims. It is confusing, prolix, and unwieldy. Plaintiff's attempt to simplify his Complaint to a list of bullet points (Opp. 4) only shows further why it violates Rule 8.

*First*, he asserts that the Complaint contains "detailed references to" Roc Nation's purported use of BDO and "affiliated entities" (for example, Sneaker Addict Touring LLC) to "route illicit payments." (*Id.*) But other than claiming that Roc Nation "direct[ed]" BDO (whatever that means), the Complaint contains no detail to support this conclusion. (*See* Compl. ¶¶ 363-64, 739(1), 754.) And he has not pled *any* affiliation between Roc Nation and Sneaker Addict (or any other company for that matter), let alone that Roc Nation *used* Sneaker Addict to do anything. Plaintiff even concedes that (1) *Mr. Cartagena* founded Sneaker Addict, (2) *Defendant Moreira* "created a web of shell companies," including Sneaker Addict, to launder money, and (3) BDO purportedly "routed Plaintiff's performance-based compensation through…Sneaker Addict." (*Id.* ¶¶ 60, 361(2)(b), 755.) Even crediting Plaintiff's allegations—absurd as they are—this has nothing do with Roc Nation.

*Second*, Plaintiff argues that his Complaint identifies "[s]pecific financial benefits Roc Nation received" from the purported unlawful activity. (Opp. 4.) Not so. The Complaint merely asserts that Roc Nation received a 10% management fee. It provides no factual basis suggesting that Roc Nation knew, suspected, or had any reason to believe that the funds derived from a human-trafficking or racketeering scheme. (Mot. 9, 17.) Even if Mr. Cartagena and other defendants improperly generated the funds it paid to Roc Nation (which Roc Nation does not believe happened), Roc Nation's innocent receipt of those funds is so attenuated from the underlying alleged trafficking and racketeering that it provides no cognizable support for an inference of

2

wrongdoing. *Related Cos., L.P. v. Ruthling*, 2019 WL 10947100, *5 (S.D.N.Y. July 23, 2019) ("mere receipt," even knowingly, of fraudulently obtained assets is insufficient "to constitute participation in the operation or management of an alleged RICO enterprise").

*Third*, Plaintiff claims he alleged "[c]oncrete mechanisms of exploitation, including false tax filings, burner phone communications, and performance contracts signed under duress." (Opp. 4.) But none of that has anything to do with Roc Nation. (*See, e.g.*, Compl. ¶¶ 288-92, 332-35 (alleging Mr. Cartagena used a burner phone).) And as to BDO, the Complaint is internally contradictory. On the one hand, it alleges that Mr. Cartagena directed BDO to fabricate W-2s (*id.* ¶ 618), while on the other hand, it alleges Roc Nation did in an attempt to imply that BDO was an agent or other instrumentality of Roc Nation (*id.* ¶¶ 365, 754). Courts need not credit the latter general allegation about Roc Nation given that it is "contradicted by more specific allegations" elsewhere in Plaintiff's Complaint. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014); *see also Cooper v. Templeton*, 629 F. Supp. 3d 223, 229 (S.D.N.Y. 2022) (courts need not "accept as truth conflicting pleadings"), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977 (2d Cir. June 8, 2023). In any event, Plaintiff's assertion that Roc Nation "directed" BDO is so vague that it provides no meaningful insight into what Roc Nation supposedly *did* to participate in, facilitate, or otherwise engage conduct that could render it liable for human trafficking and racketeering. There is no plausible inference to be drawn from such a nebulous allegation. *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 2013 WL 12368698, *7 (E.D.N.Y. Feb. 19, 2013) (dismissing RICO claim where defendants' "acts may have helped the scheme along" but they did not "lead the scheme, exercise[] any form of discretionary authority, or recommend[] any particular course of conduct"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) ("[I]t is not enough to allege that a

defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise.").

Plaintiff's allegations are not the "factual scaffolding" *Iqbal* and *Twombly* require but the "naked assertion[s]" they prohibit. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "more definite statement" (Opp. 4) would not fix that. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (such statement appropriate where complaint suffers from "formal defect[s]," not when claims are "supported by little or no factual allegations"). Nor does the authority Plaintiff cites—which mostly consists of cases involving *pro se* plaintiffs—suggest otherwise. The Court should dismiss Roc Nation from this case with prejudice.

## II.   PLAINTIFF FAILS TO STATE A TVPRA CLAIM

### A.   <u>The Complaint provides no basis to infer that Roc Nation was aware of the alleged trafficking.</u>

Liability under the TVPRA requires factual allegations that support a reasonable inference a defendant knew or should have known of the alleged trafficking venture. *See S.J. v. Choice Hotels Int'l Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). The Complaint provides no such factual allegations, and Plaintiff's bullet-pointed list cannot fill that fatal gap.

Plaintiff asserts, without explanation, that Roc Nation (1) "[e]xercised managerial control over Plaintiff's labor, travel, contracts, and compensation"; (2) "[r]outed illicit or misclassified payments…to mask the nature and amount of compensation"; (3) "[d]irected or ratified conduct" of others; and (4) "benefit[ed] financially from Plaintiff's coerced labor despite having access to documentation and firsthand knowledge of how his earnings were structured and diverted." (Opp. 5-6.)[1] But he contends that Mr. Cartagena (not Roc Nation) was responsible for his labor, travel,

---

[1] He also argues that Roc Nation "coordinated contract structuring" (Opp. 9), but that allegation appears nowhere in the Complaint.

4

contracts, and compensation. (*See, e.g.*, Compl. ¶¶ 89-91, 94, 349(1)-(2).) And he alleges that BDO (not Roc Nation) falsified tax records and misclassified payments—at Mr. Cartagena's instruction. (*Id.* ¶ 618 (alleging Cartagena directed accountant to fabricate W-2s).) Plaintiff fails to tie any of these allegations to Roc Nation or assert facts suggesting that Roc Nation knew what these parties supposedly were doing.

Neither the Complaint nor Plaintiff's opposition provide any basis to suggest that Roc Nation was aware that Mr. Cartagena was doing anything other than performing shows on a music tour. That is fatal to the TVPRA claim against Roc Nation. *S.J.*, 473 F. Supp. 3d at 154 ("abstract awareness" of underlying TVPRA violations insufficient).

### B. The Complaint provides no basis to infer that Roc Nation participated in a trafficking venture.

Plaintiff concedes he must allege "facts from which [participation in a trafficking venture] can [be] reasonably inferred" (Opp. 7), but he makes no real effort to do so. Instead, he repeats a familiar litany of vague and conclusory allegations that Roc Nation "coordinated business operations" for Mr. Cartagena, "oversaw accounting," and "structured payments through shell entities," "coupled with…awareness of Plaintiff's prolonged, unpaid contributions." (*Id.*) But whatever it means to "coordinate business operations," it would seem to suggest that Roc Nation facilitated Mr. Cartagena's *business*—that is, performing music. The accounting allegation is even more bizarre. Roc Nation's alleged accounting chicanery consisted of *hiring an accountant*. What this conduct has to do with human trafficking is anyone's guess. And although Plaintiff seeks to inject the shady concepts of "shell" companies and payment "structur[ing]," at bottom the allegation is that Roc Nation paid Mr. Cartagena's contractually owed funds to companies that Mr. Cartagena identified—not that Roc Nation helped create a shadowy payment structure. To the contrary, as discussed *supra* Section I, the Complaint alleges that parties *other than* Roc Nation

5

created the structure of "shell entities." And the Complaint fails to assert any facts demonstrating that Roc Nation *knew* that Plaintiff purportedly suffered "prolonged, unpaid contributions."

What remains is that Roc Nation managed Mr. Cartagena's music business, but that is not enough. A complaint must allege a "causal relationship between affirmative conduct furthering the…venture and receipt of a benefit, with…constructive knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). That relationship "cannot be established by association alone." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). That is exactly what Plaintiff seeks to do here.

### C. The Complaint provides no basis to infer that Roc Nation benefited from a TVPRA venture.

Plaintiff's attempt to conflate Roc Nation's receipt of a routine management fee with benefiting from a TVPRA venture (Opp. 8) is unavailing. Courts require knowledge of a causal relationship between (1) the benefit allegedly received; and (2) conduct furthering the trafficking venture. *See Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679 (S.D.N.Y. 2024) (dismissing TVPRA claim absent allegations that payments "bore any relationship to the alleged…trafficking venture"); *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, *4 (S.D.N.Y. July 8, 2021) (requiring "causal relationship between affirmative conduct furthering the…venture and receipt of a benefit, with...constructive knowledge of that causal relationship"). Plaintiff's claim that Roc Nation benefited by receiving a share of the revenue from Mr. Cartagena's tours, publishing shares, managerial fees, and "reputational leverage" from "promoting content created by…Plaintiff without compensation" (Opp. 8) neither meets that test nor demonstrates that Roc Nation received any compensation "*because of* [its] facilitation" of any trafficking conduct. *Geiss*, 383 F. Supp. 3d at 169 (emphasis added).

Plaintiff's citations are of no use to him. (Opp. 7-8.) For example, *A.B. v. Marriott International, Inc.* found constructive knowledge based on specific allegations not present here, including a "voluminous and obvious constant stream of male visitors" to plaintiff's rooms, which were "littered" with sex paraphernalia that "would have been noticed by staff," and "constant and loud" attacks on plaintiff by her trafficker. 455 F. Supp. 3d 171, 188-90 (E.D. Pa. 2020). If anything, the contrast between that case and this one shows why Plaintiff's Complaint falls short. Moreover, Plaintiff misrepresents *Doe #1 v. Red Roof Inns, Inc.* when he says "knowledge [was] adequately alleged where Defendant had reason to know of trafficking and financially benefitted from it." (Opp. 5.) On the contrary, the *Red Roof* court affirmed dismissal of the TVPRA claim because the allegations of purported willful blindness were insufficient. 21 F.4th 714, 727 (11th Cir. 2021).

### III.   PLAINTIFF'S RICO CLAIM IS TIME-BARRED AND INSUFFICIENTLY PLED

#### A.   <u>Plaintiff's RICO claim is untimely.</u>

Plaintiff's argument (Opp. 10-11) that he was not on inquiry notice of his injury until 2024 defies common sense. Plaintiff alleges Mr. Cartagena concealed contractually owed payments from 2005 through 2020. (Compl. ¶ 426.) It is inconceivable that Plaintiff "reasonably relied" on statements that financial matters were being "handled" for 15 years, and then for four more years after his work with Mr. Cartagena ended, and thus conducted no reasonable diligence for *19 years*. (*Id.*) Plaintiff's other allegations, if true (Roc Nation does not believe they are), indicate significant storm warnings long before he learned of Roc Nation's purported "oversight"—he alleges payments were "systematically" in cash and undocumented, that "Defendants deliberately withheld access" to his contracts, and that he was forced to "cover expenses out of pocket" and to "routinely endure severe financial hardship and substandard living conditions." (*Id.* ¶¶ 112-15.) Any of these events would indicate something was seriously wrong. *Levy v. Aaron Faber, Inc.*,

7

148 F.R.D. 114, 119-20 (S.D.N.Y. 1993) ("[A] wronged party is held to 'discover' a wrong…not upon actual discovery of the other party's wrong, but 'at the point where the facts could have been ascertained by using reasonable diligence.'" (citation omitted)).

Plaintiff's claim that Roc Nation "active[ly] conceal[ed]" his injury (Opp. 11) is meaningless in the face of these other allegations. Even if he had sufficiently pled Roc Nation "knew in real time" he was entitled to $30,000 for a tour, he has not alleged Roc Nation "knew" he was unaware of that purported $30,000 entitlement or that Mr. Cartegana paid him only $1,000. (*Id.* at 10; *see* Compl. ¶¶ 105-20, 361(3), 426, 616 (payments were contingent on "Mr. Cartagena's approval").) And even if Roc Nation had a "role in misclassifying [Plaintiff] and diverting revenues" (Opp. 11)—it did not—Plaintiff's "discovery" in 2024 of that purported involvement does not excuse his lack of diligence in the face of red flags he alleges persisted from 2005. As to Roc Nation, any RICO claim accrued in 2017 and expired in 2021.

### B. Plaintiff fails to state a RICO claim.

#### 1. Plaintiff fails to plead actionable predicate acts.

The opposition merely reiterates Plaintiff's *ipse dixit* assertions that Roc Nation committed predicate acts unmoored to any factual support.

***First***, Plaintiff alleges BDO (not Roc Nation) issued falsified W-2s. (Compl. ¶ 739(1) (**Predicate Act 22**).) Though he claims BDO was "acting under Roc Nation's financial authority" (*id.* ¶¶ 739(1), 754), he elsewhere admits BDO acted "under Cartagena's direction." (*Id.* ¶¶ 315, 618.) The Court need not credit these contradictory allegations. *See supra* Section I. Either way, the notion that, having retained a third-party accountant to handle the accounting, Roc Nation would be involved in the day-to-day minutia of Plaintiff's tax status is farfetched, and Plaintiff identifies nothing other than conjecture to support that implausible inference. Nor does Plaintiff's belated claim in his opposition that there were "email communications to Plaintiff regarding

8

phantom contracts" bridge the gap. (Opp. 12.) Of course, Plaintiff cannot rely on claims such as this that he did not allege in his Complaint. *Harbus v. Manhattan Inst. for Pol'y Rsch., Inc.*, 2020 WL 1990866, *7 (S.D.N.Y. Apr. 27, 2020). But even if he could, he provides no explanation of the relevance of these emails, how they "regard[ed] phantom contracts," or what connection they have to wire fraud.

*Second*, Plaintiff contends that accounts maintained by the "Cartagena Enterprise" at Sabadell Bank were used to "launder proceeds from forced labor and fraud" (Compl. ¶¶ 315, 744 (**Predicate Act 23**)), and that Roc Nation "had access to and oversight over these financial accounts" (*id.* ¶ 747). But Plaintiff concedes that whatever "access" and "oversight" Roc Nation supposedly had, it was Mr. Cartagena, not Roc Nation, who had to approve transactions in the account. (*Id.* ¶ 616.) Plaintiff never explains how Roc Nation's undefined quantum of "access" and "oversight" renders it complicit in money laundering.

*Finally*, for the same reasons described above, Plaintiff's claims that Roc Nation "implemented and oversaw a payroll fraud and tax misclassification scheme" (*id.* ¶ 753 (**Predicate Act 24**)) and "launder[ed] payments through shell entities and Sabadell accounts" (*id.* ¶ 315) are internally inconsistent or contain no factual support (or both).

2.  Plaintiff fails to plead a RICO enterprise.

Plaintiff halfheartedly argues that he alleged an association-in-fact enterprise because Roc Nation "provided financial oversight, coordinated tax filings, facilitated the fraudulent misclassification of the Plaintiff's labor, and managed revenue flows tied to the Plaintiff's performances and songwriting." (Opp. 12.) But Plaintiff's allegations do not support these conclusions. His only Roc Nation-related facts do not extend beyond its "*own* affairs" as an entertainment company, which do not suffice. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022) (rejecting RICO claim for

9

absence of joint corrupt intent all defendants shared), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). He has not alleged any plausible basis to infer that Roc Nation worked "collectively" with the other defendants "to make money…by fraud," as opposed to just making money. *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 374 (S.D.N.Y. 2022) (citation omitted), *aff'd*, *In re Wade Park Holdings, LLC*, 2024 WL 3024648 (2d Cir. June 17, 2024).

Plaintiff's reliance on *United States v. Applins* (Opp. 12) is misplaced inasmuch as that decision concerned Section 1962(d), not Section 1962(c). Moreover, as *Applins* recognized, an "association-in-fact enterprise" requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," which Plaintiff's allegations do not show. 637 F.3d 59, 73 (2d Cir. 2011) (citation omitted).

### 3. Plaintiff fails to plead causation.

Plaintiff likewise fails to identify facts (Opp. 13) demonstrating that Roc Nation proximately caused his purported economic losses, reputational harm, and physical and psychological harm. Plaintiff seeks relief for "deprivation of fair market compensation," "concealment of royalty and tour payments," "reputational destruction due to credit stripping," and "structural exclusion from industry opportunities through blackballing and intimidation." (*Id.*) The Complaint, however, attributes all of that to defendants other than Roc Nation. That makes sense, given that most of it predated Roc Nation's artist management relationship with Mr. Cartagena. (*See* Compl. ¶¶ 88-90 (Mr. Cartagena and others received credits); 349(1) (Plaintiff paid by Mr. Cartagena); 351 & 506 (asserting Mr. Cartagena threatened blacklisting).) Plaintiff's failure to assert a "direct causal link" between his alleged harm and Roc Nation's alleged conduct is fatal to this claim. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 17-18 (2010).

## IV.  THE COURT SHOULD NOT GRANT LEAVE TO AMEND

This is not a case where the complaint falls short on one or two elements.  Every single element of every single cause of action is bereft of factual support.  In such circumstances, courts should not indulge efforts to replead.  *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 626180, at *3 (S.D.N.Y. Mar. 30, 2004) (leave to amend properly denied where amendment would be futile).  Moreover, Plaintiff identifies no facts he would allege if he were afforded leave to amend.  That weighs heavily in favor of dismissing with prejudice.  *See Capers v. Kirby Forensic Psychiatric Ctr.*, 2016 WL 817452, *2 (S.D.N.Y. Feb. 25, 2016) (denying leave to amend while noting "a court may consider new allegations in an opposition brief in determining whether to grant" leave to amend); *Wen v. N.Y.C. Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 550 n.20 (S.D.N.Y. 2023) (dismissing with prejudice where "[p]laintiffs d[id] not request leave to replead" or "identify [any] additional facts or legal theories" they might assert if given opportunity to replead).

## V.  PLAINTIFF'S CROSS-MOTION TO STRIKE IS IMPROPER AND UNPERSUASIVE

The basis for Plaintiff's motion to strike is that his counsel's well-documented history of sanctionably vexatious litigation tactics, including suing deep-pocketed, high-profile defendants while orchestrating coordinated media campaigns, is irrelevant to whether the deep-pocketed, high-profile defendant in this case should have to answer his frivolously weak allegations.  Rule 12(f), however, permits courts to strike material from "pleadings."  The Federal Rules of Civil Procedure recognize seven categories of pleadings—none of which is a motion.  *See* Fed. R. Civ. P. 7(a).  "Thus, motions, affidavits, briefs, and other documents outside the pleadings are not subject to Rule 12(f)."  *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 5447267, *2 (S.D.N.Y. Aug. 24, 2023) (citation omitted).  The Court should deny Plaintiff's motion to strike on that basis alone.  In any event, the Court can take whatever notice it wishes of Plaintiff's counsel's well-publicized

11

history of attempting to shake down companies like Roc Nation before filing sanctionably frivolous, yet salacious, claims against them.

## CONCLUSION

For the reasons set forth above and in the opening brief, Roc Nation respectfully requests that the Court grant its Motion and dismiss each claim against it with prejudice.

DATED: July 14, 2025
       New York, New York

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: _____

Alex Spiro
Joanna Menillo
295 5th Avenue, 9th Floor
New York, New York 10016
Phone: (212) 849-7000
alexspiro@quinnemanuel.com
joannamenillo@quinnemanuel.com

*Attorneys for Defendant Roc Nation, LLC*

12

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(C) of Hon. Jennifer L. Rochon Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,499 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(C) of Judge Rochon's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 14th day of July, 2025 in New York, New York.

*/s/ Alex Spiro*
Alex Spiro