**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Terrance Dixon, a/k/a "TA,"

       *Plaintiff*,

    v.

Joseph Antonio Cartagena p/k/a "Fat Joe,"
Peter "Pistol Pete" Torres,
Richard "Rich Player" Jospitre,
Erica Juliana Moreira,
Sneaker Addict Touring LLC,
Slate, Inc.,
Roc Nation, LLC,
John Does 1–10, and Jane Does 1–10, and
ABC Corporations 1–10,

       *Defendants*.

No. 1:25-cv-05144 (JLR)


**DEFENDANT ROC NATION, LLC'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF ITS MOTION FOR SANCTIONS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ...................................................................................3

    A.    Mr. Blackburn's Prefiling Threats and Filing of the Complaint............................3

    B.    Mr. Blackburn's History of Vexatious Litigation Conduct .................................6

    C.    Mr. Blackburn's Concession in His Unsolicited Email ...............................8

LEGAL STANDARD ...................................................................................9

    A.    Rule 11 ...................................................................................9

    B.    28 U.S.C. § 1927 ...................................................................10

    C.    The Court's Inherent Power to Sanction ...............................................11

ARGUMENT ...................................................................................12

I.    MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER RULE 11 ...............12

    A.    Mr. Blackburn violated Rule 11(b)(1) by filing this lawsuit for an improper purpose. ...................................................................12

    B.    Mr. Blackburn violated Rule 11(b)(2) and (b)(3) by filing a knowingly false Complaint against Roc Nation and failing to conduct a reasonable inquiry into the law. ...............................................................15

II.    MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER SECTION 1927 AND THE COURT'S INHERENT AUTHORITY .................................18

    A.    Mr. Blackburn's conduct amounts to bad faith...................................18

    B.    Sanctions are required to deter Mr. Blackburn's pattern of abusing the judicial system. ...............................................................19

III.    THE COURT SHOULD AWARD ROC NATION ITS COSTS AND ATTORNEYS' FEES AND DISMISS THE COMPLAINT WITH PREJUDICE ..........20

CONCLUSION...................................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re 60 E. 80th St. Equities, Inc.*,
218 F.3d 109 (2d Cir. 2000) ....................................................................................... 11

*Baiul v. NBC Sports*,
708 F. App'x 710 (2d Cir. 2017) ................................................................................ 19

*Broidy v. Glob. Risk Advisors LLC*,
2023 WL 5447267 (S.D.N.Y. Aug. 24, 2023) .......................................................... 18

*Bryant v. Brookyln Barbecue Corp.*,
932 F.2d 698 (8th Cir. 1991) ...................................................................................... 21

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) .................................................................................................... 10

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) ........................................................................... 14, 15

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................................ 11, 22

*China AI Cap. Ltd. v. DLA Piper LLP (US)*,
2023 WL 5016492 (S.D.N.Y. July 28, 2023) ..................................................... 10, 15

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...................................................................................................... 9

*Craig v. UMG Recordings, Inc.*,
380 F. Supp. 3d 324 (S.D.N.Y. 2019) ................................................................. 18, 19

*Fox v. Boucher*,
794 F.2d 34 (2d Cir. 1986) .......................................................................................... 15

*Gambello v. Time Warner Commc'ns, Inc.*,
186 F. Supp. 2d 209 (E.D.N.Y. 2002) ........................................................................ 17

*Gissendaner v. Credit Corp Sols., Inc.*,
358 F. Supp. 3d 213 (W.D.N.Y. 2019) ............................................................... 11, 18

*Goldman v. Barrett*,
825 F. App'x 35 (2d Cir. 2020) .................................................................................. 17

*Johnson v. 27th Avenue Caraf, Inc.*,
    9 F.4th 1300 (11th Cir. 2021) ......................................................................21

*Jones v. Combs*,
    2025 WL 896829 (S.D.N.Y. Mar. 24, 2025) ...............................................7

*Jones v. Combs*,
    759 F. Supp. 3d 534 (S.D.N.Y. 2024).....................................2, 6, 7, 11

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ..................................................................21

*Keister v. PPL Corp.*,
    318 F.R.D. 247 (M.D. Pa. 2015).................................................................15

*LCS Grp., LLC v. Shire LLC*,
    2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ...........................................17

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993).............................................................................16

*Levy v. Aaron Faber, Inc.*,
    148 F.R.D. 114 (S.D.N.Y. 1993) ................................................................17

*Luscier v. Risinger Bros. Transfer, Inc.*,
    2015 WL 5638063 (S.D.N.Y. Sept. 17, 2015)..........................................17

*Mueller v. Deutsche Bank Aktiengesellschaft*,
    2025 WL 1019201 (S.D.N.Y. Apr. 4, 2025)..............................................16

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986).......................................................................11

*Related Cos., L.P. v. Ruthling*,
    2019 WL 10947100 (S.D.N.Y. July 23, 2019) ........................................16

*Revson v. Cinque & Cinque, P.C.*,
    221 F.3d 71 (2d Cir. 2000)...........................................................................10

*Rossbach v. Montefiore Med. Ctr.*,
    81 F.4th 124 (2d Cir. 2023) ..................................................................11, 22

*United States v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991).........................................................................9

*Usherson v. Bandshell Artist Mgmt.*,
    2020 WL 3483661 (S.D.N.Y. June 26, 2020) ....................................10, 20

*Vista Acquisitions, LLC v. W. Shore Walden LLC,*
   2023 WL 2145515 (N.D. Ga. Feb. 21, 2023) ........................................................21

*Wager v. G4S Secure Integration, LLC,*
   2021 WL 4311373 (S.D.N.Y. Sept. 21, 2021)........................................................22

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage,*
   564 F.3d 110 (2d Cir. 2009)....................................................................................11

*Zunzurovski v. Fisher,*
   2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024)........................................................2, 6

## Case Filings

Amended Complaint, *Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 1,
   2025), Dkt. No. 14 ..........................................................................................3, 4, 12

Decl. of T. Blackburn, *Jones v. Combs*, No. 24-cv-01457 (S.D.N.Y. May 14,
   2024), Dkt. No. 49-1 ...............................................................................................7

Letter, *Jones v. Combs*, No. 24-cv-01457 (S.D.N.Y. Mar. 28, 2024), Dkt. No. 28........................7

Mem. Order, *Jakes v. Youngblood*, No. 2:24-cv-01608 (W.D. Pa. June 26, 2025),
   Dkt. No. 53......................................................................................................8, 20

Plaintiff's Opp. to Defendant's Motion to Dismiss, *Jakes v. Youngblood*,
   No. 2:24-cv-01608 (W.D. Pa. May 27, 2025), Dkt. No. 45...............................3, 7, 8

## Rules/Statutes

28 U.S.C. § 1927.......................................................................................... *passim*

Fed. R. Civ. P. 8 .................................................................................................13

Fed. R. Civ. P. 11 ........................................................................................ *passim*

Fed. R. Civ. P. 11(b)(1)........................................................................10, 12, 14

Fed. R. Civ. P. 11(b)(2) .......................................................................10, 15, 17

Fed. R. Civ. P. 11(b)(3)....................................................................10, 15, 16, 17

Fed. R. Civ. P. 12(b)(6)........................................................................................13

Fed. R. Civ. P. 12(f)........................................................................................9, 18

Racketeer Influenced and Corrupt Organizations Act ....................................... *passim*

iv

Trafficking Victims Protection Reauthorization Act ............................................................. *passim*

### Other Authorities

Anna Kaufman, *Fat Joe Faces Explosive Sex Trafficking Lawsuit from Former Hype Man*, USA Today (last updated June 20, 2025, at 1:38 PM), https://www.usatoday.com/story/entertainment/celebrities/2025/06/20/fat-joe-terrence-dixon-lawsuit/84284003007/ ........................................................................5

Christie D'Zurilla, *Fat Joe Accused of Coercion, Intimidation, Sex with Minors in Ex-Hype Man's Lawsuit*, L.A. Times (June 20, 2025), https://www.latimes.com/entertainment-arts/story/2025-06-20/fat-joe-hypeman-rico-lawsuit-statutory-rape-allegations ........................................................5

Fisher Jack, *Fat Joe Hit with Explosive $20 Million Lawsuit from Former Hypeman*, Eurweb (June 19, 2025), https://eurweb.com/2025/fat-joe-sued-in-20m-lawsuit-by-ex-hypeman-terrance-dixon/ ........................................................5

Katie Scott, *Rapper Fat Joe Accused of Sex with Minors in $20M Lawsuit by Ex-Employee*, Global News (June 20, 2025, at 1:04 PM), https://globalnews.ca/news/11251388/fat-joe-accused-sex-with-minors-lawsuit-terrance-dixon/ ........................................................................4

Nolan Strong, *EXCLUSIVE: Fat Joe Accused of Using Former Hypeman's Per Diem to Pay Off Taxes*, All HipHop (July 10, 2025), https://allhiphop.com/news/fat-joe-accused-of-using-former-hypemans-per-diem-to-pay-off-taxes/ ........................................................................5

Nolan Strong, *Fat Joe Hit With $20M Civil RICO Lawsuit Alleging Money Laundering, Recording Sex Acts, PPP Scam*, All HipHop (June 19, 2025), https://allhiphop.com/news/fat-joe-20-million-rico-lawsuit-pp-scam-money-laundering-tax-evasion/ ........................................................................4

Rachel Scharf, *Fat Joe Lawsuit: Roc Nation Wants Out of Case, Says It Has 'Nothing to Do With Any of This,'* Billboard (June 23, 2025), https://www.billboard.com/pro/fat-joe-lawsuit-roc-nation-dismissed-defendant-case/ ................................................................4, 5, 6, 13

*Roc Nation Fights to Exit "Nonsensical" Fat Joe Lawsuit over Alarming Claims*, All HipHop (June 24, 2025), https://allhiphop.com/news/roc-nation-fat-joe-lawsuit-2025/ ........................................................................5

Rovelyn Barba, *Fat Joe's Former Hypeman Accuses Rapper of Stealing Tour Pay to Cover $700 Tax Debts*, Music Times (July 11, 2025, at 6:16 AM), https://www.musictimes.com/articles/109355/20250711/fat-joes-former-hypeman-accuses-rapper-stealing-tour-pay-cover-700-tax-debts.htm ........................................6

Tatiana Siegel, *Fat Joe Sued for $20 Million by Former Hypeman in Explosive Complaint: Alleges Rapper Engaged in Sex Acts With Minors and Coerced Him into 'More Than 4,000 Sexual Acts to Maintain His Standing,'* Variety (June 19, 2025), https://variety.com/2025/music/news/fat-joe-sued-former-hypeman-t-a-dixon-1236436310/ .............................................................5

Defendant Roc Nation, LLC respectfully submits this memorandum of law in support of its motion for sanctions against Plaintiff Terrance Dixon and his counsel, T.A. Blackburn Law, PLLC and Tyrone Blackburn, pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority.  Roc Nation requests dismissal of Plaintiff's claims against Roc Nation with prejudice and attorneys' fees and costs.

## PRELIMINARY STATEMENT

The Complaint in this case accuses Roc Nation, one of the most significant entertainment companies in the world, of being complicit in human trafficking, forced labor, sex abuse, money laundering, and all manner of racketeering—all serious allegations.  But the basis for these claims is anything but serious.  Instead—and in Plaintiff's counsel's own words—"it is evident from the evidence that your client may have been defrauded by Fat Joe as well."  Roc Nation has described the baselessness of Plaintiff's claims in its pending motion to dismiss briefing (*see* Dkt. Nos. 10, 13) and will not belabor those points here.  But the fact that Plaintiff's counsel confirmed that core premise warrants special consideration.  His startling concession, made just days after he signed a complaint accusing Roc Nation of shocking and reprehensible crimes, lays bare what the case against Roc Nation is all about:  character assassination, media attention, and the cynical pursuit of a deep-pocketed defendant.

The ugly history of this dispute reflects Plaintiff's and his counsel's increasingly desperate attempts to coerce a settlement from Plaintiff's onetime stage partner and current enemy, Joseph "Fat Joe" Cartagena.  In the years leading up to Mr. Cartagena's suit against Plaintiff and Plaintiff's retaliatory suit against Mr. Cartagena, Plaintiff waged a sustained social media campaign against Mr. Cartagena and repeatedly threatened a lawsuit unless Mr. Cartagena paid him off.  Roc Nation had nothing to do with that.  Plaintiff was a hype-man for *Mr. Cartagena*.  He was paid by *Mr. Cartagena*.  He worked closely with *Mr. Cartagena*.  When that relationship ended, he spent two

years making disparaging social media posts about *Mr. Cartagena*. After that, he retained Mr. Blackburn, who sent threatening demand letters to *Mr. Cartagena*. Roc Nation never figured into the discussions because Roc Nation never figured into the relationship or the dispute between the two. It was only after Mr. Cartagena stood up to Plaintiff's blackmail and filed a defamation suit that Plaintiff and his counsel sought to turn the screws by dragging Roc Nation into the dispute. Out of the blue, Mr. Blackburn commenced an entirely new action against Mr. Cartagena and included Roc Nation as a defendant. Unsurprisingly, Roc Nation ended up in numerous headlines over Plaintiff's "explosive" allegations purporting to tie the company to such abhorrent conduct as sex trafficking and racketeering.

This is a sadly common—albeit wildly improper—tactic that Mr. Blackburn deploys. In 2024, the Honorable Denise Cote referred Mr. Blackburn to this district's Grievance Committee for "improperly fil[ing] cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly." *Zunzurovski v. Fisher*, 2024 WL 1434076, *5 (S.D.N.Y. Apr. 3, 2024). Mr. Blackburn had no defense to that accusation. He even admitted to opposing counsel that he had "filed th[e] case in federal court" to "make the press more likely to pick up on it." *Id.* Last year he brought a different case involving TVPRA and RICO claims (against Sean Combs) and included the record label Universal Music Group ("UMG") as a defendant on the basis that it had a licensing agreement with Mr. Combs—a theory reminiscent of the basis for his claims against Roc Nation. *Jones v. Combs*, 759 F. Supp. 3d 534, 541-42 (S.D.N.Y. 2024). When confronted with the prospect of sanctions, however, Mr. Blackburn immediately reversed course and voluntarily dismissed as to UMG. *Id.* at 539. And in the Western District of Pennsylvania, in a case with a history strikingly similar to this one, Mr. Blackburn was "dispatched" to demand a settlement from a respected bishop after his client took to social media

to allege sexual abuse by the bishop, and filed suit when his extortionate practices did not bear fruit.  Plaintiff's Opp. to Defendant's Motion to Dismiss at 11, *Jakes v. Youngblood*, No. 2:24-cv-01608 (W.D. Pa. May 27, 2025), Dkt. No. 45.  Mr. Blackburn's goal here is exactly the same: exert settlement pressure by naming an innocent third party with a reputation to protect and the financial wherewithal to pay to make the dispute go away.  This case thus is a continuation of Mr. Blackburn's deplorable pattern of vexatious litigation tactics.  Whatever the veracity of Plaintiff's claims against Mr. Cartagena—Roc Nation believes there is none—Roc Nation has nothing to do with this dispute.  And it should not have to pay attorneys' fees or suffer the distraction and diversion of resources to defend against Plaintiff's cynical, fabricated claims against it.

Rule 11, Section 1927, and the Court's inherent authority provide the tools to remedy the harm that Plaintiff and Mr. Blackburn have caused, and to deter Mr. Blackburn from continuing to engage in his improper conduct in the future.  There is no good-faith basis for the claims against Roc Nation.  None.  In light of the history of this case and Mr. Blackburn's history, the Court should impose sanctions, dismiss the Complaint, and award Roc Nation its attorneys' fees and costs in defending itself and prosecuting this motion.

## FACTUAL BACKGROUND

Plaintiff was Mr. Cartagena's hype-man for approximately 15 years, from 2005 through 2020.  (Dkt. No. 3 ("Compl.") ¶ 48.)  Though they had not worked together for some time, in June 2023, Mr. Dixon began regularly making negative posts on social media about Mr. Cartagena that continued for approximately two years.  Amended Complaint ¶¶ 32-54, *Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 1, 2025), Dkt. No. 14.

### A.    Mr. Blackburn's Prefiling Threats and Filing of the Complaint

Following a two-year social media campaign against Mr. Cartagena, Mr. Dixon retained Tyrone Blackburn.  On March 23, 2025, Mr. Blackburn sent Mr. Cartagena a letter demanding

compensation for unpaid wages to Plaintiff.  *Id.* ¶ 8.  But what started as a wage dispute quickly grew.  On April 21, 2025, Mr. Blackburn sent another demand letter threatening to file suit for not only unpaid wages, but also for statutory rape, forced labor, sex trafficking, and fraud.  *Id.* ¶ 9. When that didn't work, Mr. Blackburn asserted that the "case has just expanded into a Civil RICO case," *id.* ¶ 11, and threatened to file an even broader lawsuit against Mr. Cartagena if he did not concede to a $20 million settlement.  *Id.* ¶¶ 61-69.  By the end of April, Mr. Blackburn had promised to include additional defendants if Mr. Cartagena did not pay.  *Id.*  Mr. Cartagena chose instead to sue Mr. Dixon for defamation, filing a complaint on April 29, 2025.  Roc Nation is not a party to that suit.

Six weeks later, on June 19, 2025, Plaintiff commenced this action and delivered on the threats he made earlier in the spring.  In his Complaint, Plaintiff alleges that numerous defendants, including Roc Nation, violated the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (*See* Compl.)

Numerous media outlets have reported on the lawsuit, including the *Los Angeles Times*, *USA Today*, *NBC News*, *Variety*, *Billboard*, *All HipHop*, and others, calling it "explosive" and a "bombshell racketeering case."[1]  Each article prominently retells the sordid allegations and

---

[1]  Rachel Scharf, *Fat Joe Lawsuit: Roc Nation Wants Out of Case, Says It Has 'Nothing to Do With Any of This*,*'* Billboard (June 23, 2025), https://www.billboard.com/pro/fat-joe-lawsuit-roc-nation-dismissed-defendant-case/ (describing "explosive new lawsuit" "framed as a racketeering enterprise abetted by Roc Nation"); *see also, e.g.*, Nolan Strong, *Fat Joe Hit With $20M Civil RICO Lawsuit Alleging Money Laundering, Recording Sex Acts, PPP Scam*, All HipHop (June 19, 2025), https://allhiphop.com/news/fat-joe-20-million-rico-lawsuit-pp-scam-money-laundering-tax-evasion/ (lawsuit targets Roc Nation, "which Dixon says played a role in concealing his work and facilitating the alleged misconduct"); Katie Scott, *Rapper Fat Joe Accused of Sex with Minors in $20M Lawsuit by Ex-Employee*, Global News (June 20, 2025, at 1:04 PM), https://globalnews.ca/news/11251388/fat-joe-accused-sex-with-minors-lawsuit-terrance-dixon/ (suit claims Roc Nation "knowingly participated in 'concealing, transferring, and manipulating' Dixon's authorship rights and royalty interests and sought to intimidate, harass and

Plaintiff's assertion that Roc Nation facilitated such depraved conduct.  Mr. Blackburn has fanned the flames of this media firestorm, providing comments (or at least, iterations of the same comments) to seemingly every outlet running a story.  For example, as to Mr. Cartagena, Mr. Blackburn has said "Fat Joe is Sean Combs minus the Tusi" (a variety of cocaine), that "[h]e learned nothing from his 2013 federal conviction,"[2] that "[t]his is the right way to fight Joe – through the system. You can't fight him no other way," and that Mr. Cartagena purportedly "think he's a god.  Joe thinks he's untouchable."[3]  Mr. Blackburn also publicly professed to having "three additional pages of predicated acts which we are itching to disclose if the defendants call our bluff."[4]  And with respect to Roc Nation, Mr. Blackburn has stated he is "happy to see that Roc Nation was smart enough to distance itself from Fat Joe and **his** RICO enterprise," and his client "has no personal animosity towards Roc Nation or its leadership."[5]

---

obstruct Dixon's claims"); Fisher Jack, *Fat Joe Hit with Explosive $20 Million Lawsuit from Former Hypeman*, Eurweb (June 19, 2025), https://eurweb.com/2025/fat-joe-sued-in-20m-lawsuit-by-ex-hypeman-terrance-dixon/ ("Roc Nation Named in the Lawsuit for Alleged Complicity" for "helping to conceal Dixon's rights and pressuring him to stay silent" and "enabling the culture of abuse").

[2]  *See, e.g.*, Anna Kaufman, *Fat Joe Faces Explosive Sex Trafficking Lawsuit from Former Hype Man*, USA Today (last updated June 20, 2025, at 1:38 PM), https://www.usatoday.com/story/entertainment/celebrities/2025/06/20/fat-joe-terrence-dixon-lawsuit/84284003007/; Christie D'Zurilla, *Fat Joe Accused of Coercion, Intimidation, Sex with Minors in Ex-Hype Man's Lawsuit*, L.A. Times (June 20, 2025), https://www.latimes.com/entertainment-arts/story/2025-06-20/fat-joe-hypeman-rico-lawsuit-statutory-rape-allegations.

[3]  Tatiana Siegel, *Fat Joe Sued for $20 Million by Former Hypeman in Explosive Complaint: Alleges Rapper Engaged in Sex Acts With Minors and Coerced Him into 'More Than 4,000 Sexual Acts to Maintain His Standing,'* Variety (June 19, 2025), https://variety.com/2025/music/news/fat-joe-sued-former-hypeman-t-a-dixon-1236436310/.

[4]  *See* Kaufman, *supra* note 2.

[5]  *See* Scharf, *supra* note 1 (emphasis added); *Roc Nation Fights to Exit "Nonsensical" Fat Joe Lawsuit over Alarming Claims*, All HipHop (June 24, 2025), https://allhiphop.com/news/roc-nation-fat-joe-lawsuit-2025/; *see also, e.g.*, Nolan Strong, *EXCLUSIVE: Fat Joe Accused of Using Former Hypeman's Per Diem to Pay Off Taxes*, All

**B.**    <u>**Mr. Blackburn's History of Vexatious Litigation Conduct**</u>

Mr. Blackburn's conduct in this case is consistent with his well-documented history of bad-faith litigation tactics.  In December 2023, Mr. Blackburn initiated a legal malpractice action before the Honorable Denise Cote "without conducting a reasonable inquiry" to support his jurisdictional assertions.  *Zunzurovski*, 2024 WL 1434076, *1.  Judge Cote directed Mr. Blackburn to show cause why Rule 11 sanctions should not be imposed for his failure to conduct a reasonable inquiry.  *Id.*  Ultimately, Judge Cote determined Mr. Blackburn "failed to meet his Rule 11 obligations," conduct that appeared to be "part of a pattern" he had repeated in at least five other cases in this district, which she painstakingly reviewed.  *Id.* at *2-4.  Remarkably, Mr. Blackburn admitted he had "filed this case in federal court" to "make the press more likely to pick up on it." *Id.* at *5.  Judge Cote thus concluded that Mr. Blackburn has a pattern of "improperly fil[ing] cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly."  *Id.*  On that basis, Judge Cote referred Mr. Blackburn to the Grievance Committee.  *Id.*

Just two months after his referral to the Grievance Committee, Mr. Blackburn brought RICO and TVPRA claims against Sean Combs.  *Jones*, 759 F. Supp. 3d at 541-42.  He also named several defendants affiliated with UMG and asserted they were involved in a "partnership" with Mr. Combs's music record label due to a licensing agreement between them and Mr. Combs and alleged that certain UMG defendants attended "parties hosted by Combs and attended by

---

HipHop (July 10, 2025), https://allhiphop.com/news/fat-joe-accused-of-using-former-hypemans-per-diem-to-pay-off-taxes/ (discussing Plaintiff's opposition to motion to dismiss as "part of an effort to block Roc Nation's dismissal from the case" and detailing allegations against Roc Nation); Rovelyn Barba, *Fat Joe's Former Hypeman Accuses Rapper of Stealing Tour Pay to Cover $700 Tax Debts*, Music Times (July 11, 2025, at 6:16 AM), https://www.musictimes.com/articles/109355/20250711/fat-joes-former-hypeman-accuses-rapper-stealing-tour-pay-cover-700-tax-debts.htm (same).

[plaintiff]." *Id.* The UMG defendants immediately served Mr. Blackburn with a Rule 11 motion and filed a motion to dismiss. *Id.* at 538. In response, Mr. Blackburn claimed that the motion to dismiss was a "public relations stunt" filed in bad faith and (improperly) filed a second amended complaint, in which he withdrew the allegations of personal attendance at illicit parties without admitting their "factual basis…was fabricated." Letter, *Jones v. Combs*, No. 24-cv-01457 (S.D.N.Y. Mar. 28, 2024), Dkt. No. 28; *see also Jones*, 759 F. Supp. 3d at 541 n.7. Ultimately, just before the Rule 11 safe harbor period expired, Mr. Blackburn voluntarily dismissed the complaint, attesting he had "concluded that there is no legal basis for the claims and allegations that were made against the UMG Defendants." Decl. of T. Blackburn ¶ 3, *Jones*, No. 24-cv-01457 (S.D.N.Y. May 14, 2024), Dkt. No. 49-1. Although the court declined to sanction Mr. Blackburn (in light of his withdrawing his complaint against UMG, which he has not done against Roc Nation), the court just months later found it "necessary" to warn Mr. Blackburn that it would "not hesitate" to sanction him under its inherent authority for continued filings "replete with inaccurate statements of law, conclusory accusations, and inappropriate ad hominem attacks," and "irrelevant insults, misstatements, and exaggerations." *Jones v. Combs*, 2025 WL 896829, *3-4 (S.D.N.Y. Mar. 24, 2025).

Mr. Blackburn has deployed this strategy in other courts too. Just this month, the Honorable William S. Stickman, United States District Judge for the Western District of Pennsylvania, addressed a motion to dismiss that Mr. Blackburn filed in a defamation action against him. In that case, Mr. Blackburn's client waged a social media campaign in which he alleged sexual abuse by a respected clergyman and then "dispatched" Mr. Blackburn "to demand $6 million from Bishop Jakes or else he would sue for unspecified nonexistent tort claims arising from the tale." Plaintiff's Opp. to Defendant's Motion to Dismiss at 11, *Jakes*, No. 2:24-cv-01608

(W.D. Pa. May 27, 2025), Dkt. No. 45.  Judge Stickman *sua sponte* ordered Mr. Blackburn to show cause why he should not be sanctioned because (1) his motion papers contained "wholly fabricated quotations from caselaw—including fabricated quotations from the Court's own prior opinion"—and "repeatedly misrepresent[ed] case law," and (2) in his reply, Mr. Blackburn "double[d] down" and "brazenly attempted" to mount a meritless you-did-it-too defense.  Mem. Order at 1-2, *Jakes*, No. 2:24-cv-1608 (W.D. Pa. June 26, 2025), Dkt. No. 53.  The court scheduled a sanctions hearing for July 24, 2025, noting that, although Mr. Blackburn tried to withdraw as counsel, that attempt "does not insulate him from the repercussions of his actions."  *Id.* at 8.

### C.    Mr. Blackburn's Concession in His Unsolicited Email

Two business days after Plaintiff filed the Complaint, Roc Nation moved to dismiss it, not least because it fails to allege any facts that even remotely suggest Roc Nation was complicit in TVPRA or RICO violations.  (*See* Dkt. No. 10.)  Just hours after Roc Nation filed its motion, Mr. Blackburn emailed counsel for Roc Nation and expressed his view that Roc Nation was a fellow victim of Mr. Cartagena's alleged misdeeds.  Specifically—and despite signing a complaint mere days earlier that accused Roc Nation of participating in human trafficking and racketeering schemes—Mr. Blackburn stated:

- "My client has no animosity towards" Roc Nation;

- "We think it is evident from the evidence that your client may have been defrauded by [Mr. Cartagena] as well";

- "I am certain your client may have been caught off guard by [Mr. Cartagena's] lack of transparency and honesty";

- "I am sure [Roc Nation] did not and would not have approved of [Mr. Cartagena] sending threats via Instagram";

- Mr. Cartagena "hid[] money from [Roc Nation] by accepting cash payments for performances, which I know is a direct violation of his contract with Roc Nation";

- There are other, unpleaded acts of violence that "I would assume your client knew nothing about"; and

- "I am happy to see that your client was smart enough to distance themselves from the remaining defendants."

(July 22, 2025 Declaration of Alex Spiro, Exhibit A ("Blackburn Email").)  Mr. Blackburn reiterated similar sentiments in the press, telling *Billboard* that he was pleased to see Roc Nation "distancing itself from [*Mr. Cartagena's*] enterprise."[6]

In light of Mr. Blackburn's statements that contradicted his client's allegations in the Complaint, on June 30, 2025, Roc Nation served a notice of motion for sanctions on Mr. Blackburn via email, requesting withdrawal of the Complaint's baseless claims by July 21, 2025.  Rather than withdraw his claims against Roc Nation, on July 7, 2025, Plaintiff filed an opposition to Roc Nation's motion insisting it was properly named as a defendant (*see* Dkt. No. 11) and simultaneously moved to strike portions of Roc Nation's motion under Rule 12(f).  (*See* Dkt. No. 12.)  Neither Plaintiff nor Mr. Blackburn has sought to withdraw the Complaint against Roc Nation within Rule 11's 21-day safe-harbor period.

## LEGAL STANDARD

The Court is empowered to issue sanctions under Rule 11, 28 U.S.C. § 1927, and its inherent authority.  These bases can all be raised in the same motion.  *E.g.*, *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1343 (2d Cir. 1991).

### A.    **Rule 11**

The "central purpose of Rule 11 is to deter baseless filings."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Thus, when an attorney presents a pleading, written motion, or other paper to the Court, Rule 11 requires that attorney to certify that, to the best of his or her

---

[6]  Scharf, *supra* note 1.

knowledge, information, and belief, formed after a reasonable inquiry, the paper (1) "is not being presented for any improper purpose, such as to harass"; (2) "the claims, defenses, and other legal contentions are warranted by existing law"; and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1)-(3).  An attorney's signature on a filing "denotes merit" and "sends a message to the district court that this document is to be taken seriously."  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 546 (1991).  Accordingly, an attorney who initiates a lawsuit solely for the purpose of harassing a defendant, leveraging litigation to extract settlements, or another improper purpose violates Rule 11(b)(1).  *See, e.g.*, *China AI Cap. Ltd. v. DLA Piper LLP (US)*, 2023 WL 5016492, *8 (S.D.N.Y. July 28, 2023) (sanctions appropriate where claim "can only be viewed as an attempt to harass Defendants and cause reputational harm"); *Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, *18 (S.D.N.Y. June 26, 2020) (sanctions warranted where counsel "maintain[ed] the lawsuit" without "any investigation" indicating "broad[] strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits"), *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. June 25, 2021), *aff'd*, 6 F.4th 287 (2d Cir.).

## B.   28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  To obtain sanctions there must be "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79

(2d Cir. 2000).[7]  Completely meritless actions give rise to an inference of bad faith.  *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose….").

## C.    The Court's Inherent Power to Sanction

"A federal court may [also] exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023).  The imposition of such sanctions serves the dual role of "vindicating judicial authority" and providing redress for litigants who bear the brunt of a party's bad-faith acts.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (Rule 11 does not "displace[] the inherent power to impose sanctions for…bad-faith conduct").

As with Section 1927, courts may impose sanctions pursuant to their inherent authority where "(1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  *Jones*, 759 F. Supp. 3d at 539; *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (affirming imposition of sanctions where claims were "entirely without color" and "motivated by improper purposes").  But the reach of the Court's inherent authority to sanction is broader than that under Section 1927:  "the inherent power extends to a full range of litigation abuses" and works "to fill in the interstices" left by existing rules and statutes.  *Chambers*, 501 U.S. at 46; *see also Gissendaner v. Credit Corp Sols., Inc.*, 358 F. Supp. 3d 213, 223-24 (W.D.N.Y. 2019) (noting that Section 1927 authorizes sanctions against

---

[7]    Unless otherwise indicated, this memorandum omits from quotations and citations all internal quotation marks, alterations, footnotes, and citations.

an attorney, while courts' inherent authority enables sanctions against "an attorney, a party, or both").

## ARGUMENT

### I.    MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER RULE 11

#### A.    Mr. Blackburn violated Rule 11(b)(1) by filing this lawsuit for an improper purpose.

The sequence of events leading to the filing of this lawsuit and Mr. Blackburn's statements since then make clear that the Complaint has been "presented for an[] improper purpose" in violation of Rule 11(b)(1).

The relevant history shows that Plaintiff did not even consider naming Roc Nation as a defendant until after he failed in his efforts to obtain a settlement from Mr. Cartagena.  Amended Complaint ¶¶ 8-10, 59-69, *Cartagena*, No. 25-cv-03552 (S.D.N.Y. May 1, 2025), Dkt. No. 14.  In the two years before Plaintiff retained Mr. Blackburn, he regularly made negative social media posts about Mr. Cartagena, not Roc Nation.  And Mr. Blackburn never sent Roc Nation (or its counsel) a demand letter concerning the claims he now alleges.  Nor did he contact Roc Nation (or its counsel) in the two-month period during which he was threatening Mr. Cartagena with an ever-growing lawsuit if Mr. Cartagena did not acquiesce to Plaintiff's demands.  That makes sense.  Roc Nation has no direct relationship with Plaintiff, nothing to do with his work, and nothing to do with his wage dispute.  But after Mr. Cartagena rebuffed Plaintiff's multiple demands, Mr. Blackburn and his client sought to expand the scope of their threatened suit and ultimately filed the Complaint, including Roc Nation as a defendant.  (Compl.)

The Complaint itself reflects the improper underlying purpose.  The gravamen of Plaintiff's claim against Roc Nation is that because Roc Nation provided artist management services to Mr. Cartagena and, in exchange, received a commission on Mr. Cartagena's revenue, Roc Nation

therefore knew about, participated in, and otherwise bears legal liability for every bad thing that Mr. Cartagena allegedly did on tour.  (*See generally* Dkt. Nos. 10, 13.)  That kind of reasoning is not just run-of-the-mill bad lawyering that Rules 8 and 12(b)(6) are designed to police.  It is so devoid of any semblance of logic or common sense that it suggests Plaintiff must have an ulterior motive in suing Roc Nation, especially given the heinous nature of the allegations at issue.

Mr. Blackburn's post-filing statements dispel any doubt about the true purpose for suing Roc Nation.  In his unprompted email to counsel, sent hours after Roc Nation filed its motion to dismiss and mere days after he filed the Complaint, Mr. Blackburn conceded:  (1) *he* believed Roc Nation was a victim of Mr. Cartagena; (2) *he* believed that Mr. Cartagena was less than "transparen[t] and honest[]" with Roc Nation; and (3) *he* was "***sure***" Roc Nation "would not have approved of" the type of conduct Plaintiff alleges in the Complaint, including "sending threats via Instagram."  (Blackburn Email.)  Mr. Blackburn made similar comments to the media, noting that he was glad to see Roc Nation was "distancing itself from [*Mr. Cartagena's*] enterprise" and that his client had no "animosity toward Roc Nation or its leadership."[8]  These statements cannot be reconciled with the Complaint's allegations that Roc Nation knowingly participated in human trafficking and racketeering.  Mr. Blackburn also admitted he did not believe Roc Nation knew of or would have approved some of the acts alleged in the Complaint, including "sending threats via Instagram."  And he referenced new, violent predicate acts that he "assume[s] [Roc Nation] knew nothing about."  (Blackburn Email.)  This assumption about Roc Nation's apparent lack of knowledge of serious allegations of violence must apply equally to the other violent acts alleged in the Complaint, including sex trafficking, statutory rape, death threats, physical assault, and

---

[8]  Scharf, *supra* note 1.

attempted murder.  (Compl. ¶¶ 149-313.).  Mr. Blackburn's email shows that both he and Plaintiff know their claims against Roc Nation are false.

The email also shows *why* they made these false claims.  Mr. Blackburn did not reach out to Roc Nation's counsel just to pass along pleasantries—he wanted to make further threats. Specifically, he stated that he intended to make additional allegations against Mr. Cartagena of a nature that made Mr. Blackburn "certain [Roc Nation] will probably need to further distance themselves before the disclosure." (Blackburn Email.) Mr. Blackburn's message is clear: he and Plaintiff will continue to defame and bring embarrassment to Roc Nation unless and until Roc Nation relents.

Plaintiff's and Mr. Blackburn's failure to move this case along also demonstrates that what they really sought was a media spectacle.  Mr. Blackburn filed this action on his client's behalf on June 19.  (Compl.)  Though he initially sought the issuance of a summons that day, the Clerk of Court denied the request due to various deficiencies.  (Dkt. No. 2.)  Mr. Blackburn has yet to correct it.  As a result, the Complaint has been on file for over a month, yet he has not served a single defendant, let alone obtained a summons.  If Mr. Blackburn spent half as much time prosecuting this case as he does speaking to the press, it might be credible that he believes Plaintiff's claims have merit.

The cumulative history leads to the unmistakable conclusion that Plaintiff and his counsel sued Roc Nation to garner media attention and extort a quick settlement—Mr. Blackburn's signature litigation strategy.  *See supra* Factual Background, Sections A, B.  This is a textbook violation of Rule 11(b)(1).  For example, in *Byrne v. Nezhat*, where a plaintiff had "expanded her case" from "a garden variety medical malpractice claim" into a suit including a "RICO charge and…other baseless claims," the Court of Appeals found no abuse of discretion in the district

court's imposition of sanctions under Rule 11, Section 1927, and the court's inherent power, on the basis that the plaintiff had "filed a frivolous lawsuit, in bad faith, for the purpose of extorting a settlement from the defendants." 261 F.3d 1075, 1115-17 (11th Cir. 2001). Similarly, in *Keister v. PPL Corporation*, the court imposed Rule 11 sanctions where it was "clear that the purpose of this litigation was to extort a settlement from Defendants on meritless facts." 318 F.R.D. 247, 269 (M.D. Pa. 2015). In so doing, the court noted sanctions were "necessary" to forestall "continuously vexatious litigation tactics" because the defects in the filings and "underlying weakness" of the substantive claims was "reflective of [the attorney's] larger pattern of litigation." *Id.* at 270-71.[9]

**B.    Mr. Blackburn violated Rule 11(b)(2) and (b)(3) by filing a knowingly false Complaint against Roc Nation and failing to conduct a reasonable inquiry into the law.**

In addition to filing this case for an improper purpose, Mr. Blackburn either knowingly filed a false Complaint against Roc Nation or failed to conduct an adequate prefiling inquiry into the facts and the law. A diligent investigation would have revealed that Roc Nation has nothing to do with the wage dispute between Plaintiff and Mr. Cartagena, as Mr. Blackburn has now admitted. Pursuing baseless claims against Roc Nation, without sufficient prior inquiry, violates Rule 11(b)(2) and (b)(3).

***Rule 11(b)(3)***. As described more fully in Roc Nation's motion to dismiss, the Complaint fails to allege any facts that even remotely suggest Roc Nation had knowledge of, participated in, or knowingly profited from any TVPRA venture or RICO enterprise. The *only* facts contained in the Complaint concerning Roc Nation are that: (1) it is Mr. Cartagena's manager; (2) it received

---

[9]    *See also, e.g.*, *China AI Cap. Ltd.*, 2023 WL 5016492, *8 (granting Rule 11 sanctions against plaintiff and its counsel where neither "could have reasonably believed that the allegations in the Complaint…had [any] evidentiary support"); *Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986) (affirming sanctions order where "complaint was entirely frivolous" and "a conscious effort to harass" defendant).

a 10% management fee; and (3) its purported accounting agent was BDO. These allegations reflect nothing more than an ordinary-course business relationship and do not support an inference of human trafficking. *See Mueller v. Deutsche Bank Aktiengesellschaft*, 2025 WL 1019201, \*5 (S.D.N.Y. Apr. 4, 2025) (dismissing TVPRA claim based on similar allegations of routine financial services). Nor do they support an inference of racketeering. *See Related Cos., L.P. v. Ruthling*, 2019 WL 10947100, \*5 (S.D.N.Y. July 23, 2019) ("mere receipt," even knowingly, of fraudulently obtained assets is insufficient "to constitute participation in the operation or management of an alleged RICO enterprise").

If the allegations in the Complaint left any doubt, Mr. Blackburn's email did not. Neither he nor his client has a credible basis to include Roc Nation in this case. Mr. Blackburn's words speak for themselves: "We [Mr. Blackburn and Plaintiff] think it is evident from the evidence [Roc Nation] may have been defrauded by Fat Joe as well." (Blackburn Email.) This concession demonstrates that neither Mr. Blackburn nor Plaintiff believes what they alleged against Roc Nation in the Complaint. That violates Rule 11(b)(3). *Levine* is instructive. There, the Second Circuit affirmed the imposition of sanctions on plaintiff's counsel where he filed an amended complaint adding a new defendant even though counsel was aware of deposition testimony (including from the plaintiff) that contradicted any theory of jurisdiction over the defendant. *Levine v. F.D.I.C.*, 2 F.3d 476, 477 (2d Cir. 1993). In finding that the imposition of sanctions was "amply warranted," the court noted counsel's "blatant disregard of the[se] facts" and held that the "creativity of an attorney may not transcend the facts of a given case." *Id.* at 479. So too here, Mr. Blackburn's "creativity" of concocting claims against Roc Nation in this lawsuit "transcends" the facts. He has now admitted that. Continuing to press claims against Roc Nation

notwithstanding his awareness that they are baseless violates Rule 11(b)(3).  *Id.*[10]  This is especially true as it concerns the RICO claim—which is the backbone of the Complaint—because the "consequences to anyone of being accused of racketeering are dire" and the "commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants." *LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, *15 (S.D.N.Y. Mar. 8, 2019) (noting Rule 11 is "particularly significant" in civil RICO context because that claim is "often referred to as the litigation equivalent of a thermonuclear device"), *aff'd*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022).

  ***Rule 11(b)(2)***.  The Complaint's RICO claim also violates Rule 11(b)(2), because there is no nonfrivolous argument that it is timely.  As detailed in Roc Nation's motion to dismiss (Dkt. Nos. 10, 12), the Complaint alleges Mr. Cartagena began failing to pay Plaintiff *two decades* ago, long before Roc Nation began providing management services to Mr. Cartagena in 2017.  Nor does Plaintiff plead any conduct by Roc Nation whatsoever that could justify tolling the statute of limitations.  At the latest, any of the claims Plaintiff has brought against Roc Nation expired in 2021.  Mr. Blackburn's assertion of claims that are "barred by the relevant statutes of limitations" is grounds for sanctions under Rule 11(b)(2).  *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 122-23 (S.D.N.Y. 1993) (imposing Rule 11 sanctions where investigation would have revealed RICO claim was time barred).

---

[10] *See, e.g.*, *Luscier v. Risinger Bros. Transfer, Inc.*, 2015 WL 5638063, *10 (S.D.N.Y. Sept. 17, 2015) (Rule 11 sanctions appropriate for signing and submitting affidavit with knowledge of its falsity); *see also Goldman v. Barrett*, 825 F. App'x 35, 38-40 (2d Cir. 2020) (an attorney may not base an allegation solely on a client's representation if it is objectively unreasonable to believe that the representation could support the allegation"); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (imposing sanctions where counsel "ma[de] arguments about what plaintiff 'thought' and 'believed,' which [were] completely contradicted by his sworn deposition testimony").

## II.    MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER SECTION 1927 AND THE COURT'S INHERENT AUTHORITY

Mr. Blackburn's pattern of bad-faith litigation equally warrants sanctions under Section 1927 and the Court's inherent authority.  As a finding of "bad faith" is the touchstone of the analysis for either type of sanction, they can be assessed together.  *See Gissendaner*, 35 F. Supp. 3d at 224 ("requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry").  Mr. Blackburn not only filed a meritless complaint against Roc Nation, he doubled down and vexatiously multiplied these proceedings through an equally meritless opposition and Rule 12(f) motion and by forcing this sanctions motion.

### A.    Mr. Blackburn's conduct amounts to bad faith.

Mr. Blackburn's bad faith extends beyond filing a meritless complaint.  Mere hours after Roc Nation's motion to dismiss hit the docket, the Blackburn Email confirmed what Roc Nation already knew—the Complaint's allegations are unmoored to *any* factual basis whatsoever, because they are not true.  Rather than withdraw the claims against Roc Nation, however, Mr. Blackburn opposed Roc Nation's motion to dismiss with a submission that (1) failed to identify even a single act or omission by anyone at Roc Nation that relates in any way to human trafficking or racketeering, (2) made no proffer of relevant additional facts Plaintiff could allege against Roc Nation, and (3) contained a frivolous Rule 12(f) motion to strike, when even a cursory review of the Rule would have shown that it applies to pleadings, not motion papers.  *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 5447267, *2 (S.D.N.Y. Aug. 24, 2023) ("[M]otions,…briefs, and other documents outside the pleadings are not subject to Rule 12(f).").  Collectively, this conduct amounts to bad faith and is sanctionable.  For example, in *Craig v. UMG Recordings, Inc.*, the Honorable J. Paul Oetken imposed sanctions under Section 1927 and its inherent authority based, in part, on a finding that the motion was "made vexatiously and in bad faith."  380 F. Supp. 3d

324, 339 (S.D.N.Y. 2019). Judge Oetken inferred bad faith based on the motion's obvious lack of merit and counsel's omission of critical details that were fatal to the motion "under a basic understanding of the applicable law." *Id.* Counsel's conduct thus improperly "forced [d]efendants to prepare papers opposing [the] motion" and "required the [c]ourt to hold a wasteful evidentiary hearing." *Id.* The same is true here: Plaintiff's false complaint has forced the Court to expend scarce judicial resources to resolve an additional motion to dismiss, a motion to strike, and a motion for sanctions, which Roc Nation has had to expend substantial resources to brief. Under these circumstances, the Court should sanction Plaintiff and his counsel. *See id.*[11]

**B.    Sanctions are required to deter Mr. Blackburn's pattern of abusing the judicial system.**

Roc Nation does not make its request for sanctions lightly. Mr. Blackburn's long and recent history of engaging in sanctionable conduct in this district and elsewhere, and the efforts that Judge Cote and others have taken to deter similar misconduct, obviously have not been sufficient. This case combines the worst elements of Mr. Blackburn's vexatious litigation playbook: (1) extortionate settlement demands followed by expanded, meritless suits designed to generate publicity by portraying an innocent third party in a bad light, which Judge Cote described at length in *Zunzurovski* and which Mr. Blackburn also did in *Jakes*; (2) naming irrelevant defendants based on mere managerial relationships, as he did in *Jones*; and (3) doubling down on meritless claims and improper conduct when it is brought to light, as he did in *Jakes*. Mr. Blackburn's pattern of misconduct is, at this point, undeniable. The timeline speaks for itself and reflects an inexcusable disregard for his ethical obligations and prior warnings. Those warnings,

---

[11] *See also, e.g.*, *Baiul v. NBC Sports*, 708 F. App'x 710, 715 (2d Cir. 2017) (bad faith established by court's determination that counsel "was aware of the meritless nature of [plaintiff's] claims, yet continued to pursue litigation in New York anyway").

and even his referral to the Grievance Committee—an act Judge Cote did not undertake hastily—have not sufficed. As Judge Stickman correctly observed just last month, Mr. Blackburn should not be allowed to escape the "repercussions of his actions": he must be held accountable. Mem. Order at 8, *Jakes*, No. 2:24-cv-1608 (W.D. Pa. June 26, 2025), Dkt. No. 53.

*Usherson*, referenced above, is instructive. There, the Honorable Jesse M. Furman issued sanctions based on the attorney's misconduct against the backdrop of his history of misconduct. 2020 WL 3483661, *19. Judge Furman recounted that in "scores of cases," the attorney had been "repeatedly chastised, warned, ordered to complete ethics courses, fined, and even referred to the Grievance Committee," yet he continually evaded the worst consequences of his actions by voluntarily dismissing cases upon the first sign of opposition from his opponents. *Id.* at 1. The attorney's pattern of "frequently drop[ping] his cases when the going gets tough and sanctions are on the horizon" had previously succeeded only because he "was never held to account." *Id.* at 19. In light of "the scope of [his] misconduct," overall record, and a case "fatally flawed…from its inception," Judge Furman imposed sanctions "to deter future misconduct." *Id.* at 21 (imposing sanctions pursuant to "Rule 16, Section 1927, and the Court's inherent authority" because "these sanctions are no more severe than reasonably necessary to deter repetition of the misconduct or comparable conduct by similarly situated persons"). This Court should do the same with Mr. Blackburn.

## III.    THE COURT SHOULD AWARD ROC NATION ITS COSTS AND ATTORNEYS' FEES AND DISMISS THE COMPLAINT WITH PREJUDICE

Roc Nation respectfully requests terminating sanctions, along with attorneys' fees and costs. Such sanctions are appropriate here. Mr. Blackburn has admitted that neither he nor his client have a valid basis to include Roc Nation in this litigation. Yet by doing so, they needlessly and baselessly have subjected it to intense public scrutiny, embarrassment, and reputational harm.

And Roc Nation has been forced to expend considerable resources in attorneys' fees and costs to defend itself against these meritless claims. The appropriate remedy is dismissal of those claims with prejudice and the attorneys' fees and costs Roc Nation has incurred to defend against them.

Courts routinely dismiss meritless complaints and award fees and costs under these circumstances. For example, in *Katzman v. Victoria's Secret Catalogue*, the court found that "[t]he total lack of substance in Plaintiff's RICO claims…gives rise to the inference that the action was filed for improper purposes." 167 F.R.D. 649, 661 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). Because the defendants were "made to respond to a patently meritless complaint and to suffer unwarranted adverse publicity," the court ordered plaintiff's counsel to pay legal fees. *Id.* (collecting cases where "[c]ourts in this Circuit have…imposed Rule 11 sanctions based upon the filing of a frivolous RICO action"). Similarly, in *Bryant v. Brooklyn Barbecue Corp.*, the Court of Appeals for the Eighth Circuit affirmed the district court's grant of defendants' motion to dismiss and its award of attorneys' fees and costs pursuant to Rule 11 where "plaintiff's counsel effectively admitted he had conducted the 'reasonable inquiry' required by Rule 11 only *after* the original complaint had been filed" and that the "original complaint had been filed to coincide with [a] criminal sentencing of one of the defendants," showing it was filed for the improper purpose of "attract[ing] publicity and to harass the defendants." 932 F.2d 698 (8th Cir. 1991).[12]  Although

---

[12]    *See also Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1315-16 (11th Cir. 2021) (affirming dismissal of complaint with prejudice and imposition of monetary sanctions where plaintiff and his counsel "continu[ed] to file claims seeking damages" they knew had not been properly administratively exhausted as required by statute); *Vista Acquisitions, LLC v. W. Shore Walden LLC*, 2023 WL 2145515, *17 (N.D. Ga. Feb. 21, 2023) (awarding attorney's fees where "no reasonable attorney could have thought Plaintiff's claims had any chance to succeed" and plaintiff threatened to "file a civil RICO suit only 11 days after an unsuccessful attempt at reaching an out-of-court resolution," which "ma[de] it clear Plaintiff intended only to force Defendants to spend money to defend this case and to pressure them to drop their challenge to the City's zoning decision").

severe, terminating sanctions are within the Court's discretion and appropriate here both because of the utter lack of merit for the claims against Roc Nation in this case and in light of Mr. Blackburn's outrageous history of deliberating flouting his ethical obligations.[13]

## **CONCLUSION**

For the reasons stated above, this Court should impose sanctions under Rule 11, 28 U.S.C. § 1927, or its inherent authority.  Should the Court conclude that an award of fees and costs is appropriate, Roc Nation respectfully requests that the Court direct the parties to confer regarding a briefing schedule for the calculation of that award.

DATED:  July 22, 2025
        New York, New York

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By:    _/s/ Alex Spiro_
       Alex Spiro
       Joanna Menillo
       295 5th Avenue, 9th Floor
       New York, New York 10016
       Phone:  (212) 849-7000
       alexspiro@quinnemanuel.com
       joannamenillo@quinnemanuel.com

       _Attorneys for Defendant Roc Nation, LLC_

---

[13]  _See, e.g._, _Chambers_, 501 U.S. at 44-45 ("outright dismissal of a lawsuit…is within the court's discretion"); _Rossbach_, 81 F.4th at 141-42 (affirming "case-terminating and monetary sanction[s]" for fabricating evidence and attempting to mislead the court); _Wager v. G4S Secure Integration, LLC_, 2021 WL 4311373, *2 (S.D.N.Y. Sept. 21, 2021) (sanctioning plaintiff and her counsel for "repeatedly contraven[ing]" applicable ethics rules "to prevent further abuses").

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(C) of Hon. Jennifer L. Rochon Individual Practices in Civil Cases (the "Individual Rules"**),** that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 7,086 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(C) of Judge Rochon's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on this 22 day of July, 2025 in New York, New York.

_/s/  Alex Spiro_
Alex Spiro
