

# T. A. Blackburn Law

TYRONE A. BLACKBURN

MEMBER OF
NY & NJ BAR

FEDERAL DISTRICT COURT MEMBERSHIP
EDNY, NDNY, SDNY & DNJ

FEDERAL APPELLATE COURT MEMBERSHIP
SECOND CIRCUIT

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

December 29, 2025

VIA ECF
The Honorable Jennifer L. Rochon, USDJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

**Re:** *Joseph Cartagena v. Terrance Dixon, et al.,*
Case No. 1:25-cv-03552 (JLR)

Dear Judge Rochon:

Defendants respectfully submit this response to Plaintiff's December 22, 2025, pre-motion discovery conference request. Plaintiff's request **must be denied** because Plaintiff failed to satisfy this Court's mandatory Rule 2.E meet-and-confer requirement, because the motion is a transparent attempt to distract from Defendants' pending Rule 11 sanctions motion, and because Plaintiff has unclean hands—having served discovery responses identical to those he now attacks while producing zero documents in three months.

**I.  PLAINTIFF VIOLATED RULE 2.E's MEET-AND-CONFER REQUIREMENT**
This Court's Individual Rule 2.E provides:

*"The parties must follow SDNY Local Civil Rule 37.2 with the following modifications. Any party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute.* ***The Court enforces this requirement in both counseled and pro se cases (except where not feasible, such as when the pro se litigant is incarcerated) and will not consider any discovery dispute where the moving party has not satisfied the good-faith conference requirement.*** *The moving party should note that **"good-faith conference" does not mean that it has merely sent its adversary a letter or email, to which the adversary has not yet responded. The Court expects that, at a minimum, the moving party will have called its adversary and made efforts to engage in a meaningful dialogue, in an attempt to resolve any discovery issues.** If this meet-and-confer process does not resolve the dispute, the party must submit a letter motion to the Court on ECF, no longer than three pages (excluding exhibits), explaining the nature of the dispute, the legal standards governing the issue, and*






*case law, if any, supporting the party's position.* **Such a letter must include a representation that the meet-and-confer process occurred and was unsuccessful.** *If the opposing party wishes to respond to the letter, it must inform the Court within one business day that a responsive letter is forthcoming and file the letter within three business days. The same page limits and filing instructions apply. Reply letters are not permitted."*

The Honorable Jennifer L. Rochon Individual Rules of Practice in Civil Cases (Rule 2.E).

Plaintiff's letter motion violates each of these requirements. On December 4, 2025, Plaintiff sent an email proposing a meet-and-confer call "tomorrow at 4:00pm." Defendants responded the same day. Plaintiff never followed up to schedule or conduct the proposed telephone conference. After Plaintiff received and reviewed Defendants' discovery responses, Plaintiff did not contact Defendants' counsel to meet and confer concerning the same. Instead, Plaintiff waited 18 days before filing this motion.

Plaintiff's December 22, 2025, letter contains no representation that the parties engaged in any telephone dialogue, much less the "meaningful dialogue" Rule 2.E requires. Compare ECF 108 at 1-3 (no mention of telephone conference or meet-and-confer) with Rule 2.E (requiring letter motion to "include a representation that the meet-and-confer process occurred and was unsuccessful").

This is precisely the conduct Rule 2.E prohibits: sending "merely... a letter or email" without "call[ing] its adversary and ma[king] efforts to engage in a meaningful dialogue, in an attempt to resolve any discovery issues." The Court's rule is unambiguous: it "will not consider any discovery dispute where the moving party has not satisfied the good-faith conference requirement." Plaintiff's motion **must be denied** on this basis alone.

II. **PLAINTIFF'S MOTION IS A TRANSPARENT ATTEMPT TO DISTRACT FROM DEFENDANTS' PENDING RULE 11 SANCTIONS MOTION**

The timing of Plaintiff's motion confirms its improper purpose:

- December 4, 2025: Defendants file Rule 11 sanctions motion (ECF 98-100).
- December 18, 2025: Plaintiff files opposition (ECF 107).
- December 22, 2025: Plaintiff files this 3-page letter with 8 exhibits (over 50 pages in total) (ECF 108).
- December 29, 2025: Defendants' Rule 11 reply brief due.

Days before Defendants' reply brief is due, Plaintiff files a motion with inflammatory accusations about AI-generated responses, discovery violations, and defense counsel's fitness to



practice. This is classic docket-flooding designed to: (1) overwhelm the Court with collateral disputes; (2) distract from Defendants' substantive Rule 11 arguments; and (3) prejudice the Court against defense counsel before the Rule 11 reply is filed.

Rather than adequately address Defendants' Rule 11 arguments—including that the SAC targets pre-litigation protected advocacy, lacks non-conclusory actual malice allegations, and was filed as part of a coordinated harassment campaign—Plaintiff attempts to shift focus to discovery disputes that he never attempted to resolve through the mandatory meet-and-confer process. This tactical maneuver should not be rewarded. The Court must deny Plaintiff's motion and should address the threshold Rule 11 question first: *whether Plaintiff's action should remain pending at all*.

### III. PLAINTIFF'S SUBSTANTIVE ARGUMENTS ARE BASED ON MATERIAL MISREPRESENTATIONS

A. <u>Defendants' Responses Were Timely; Plaintiff Controlled the Upload Timeline</u>.

Even assuming arguendo that Defendants' responses were transmitted after the deadline, the record establishes that Defendants acted in good faith and were prevented from timely completion solely due to technical limitations and Plaintiff's delay in providing upload capability, and the parties were in consistent communication considering the same. Plaintiff's motion omits these critical facts.

First, Defendant Dixon prepared complete written responses to Plaintiff's interrogatories and document requests and attempted to transmit them to Plaintiff's counsel on December 8, 2025. However, Defendants' production included an audio recording that was too large to transmit via email. Defendants informed Plaintiff's counsel of this technical limitation the same day. (**See Exhibit A**).

Second, despite this December 8 communication, Plaintiff's counsel did not provide Defendants with a secure file-sharing link or other means to upload large files until December 9, 2025—more than 29 hours after Defendants requested upload capability. Defendants uploaded the complete discovery responses—including the audio recording—on December 10, 2025, the same day after Plaintiff finally provided the upload link.

Third, Plaintiff cannot manufacture a "delay" by withholding the technical means to transmit responsive documents and then attacking Defendants for not transmitting them sooner.



The December 10 upload date reflects the timeframe in which Plaintiff enabled Defendants to transmit the complete response, not any lack of diligence on Defendants' part. The record demonstrates that Defendants acted in good faith to provide complete responses and were prevented from earlier transmission solely due to technical limitations that Plaintiff's counsel took more than 29 hours to resolve.

Moreover, even assuming responses were served after the deadline (which Defendants dispute for the reasons stated above), objections based on privilege are substantive defenses that survive late assertion.

Plaintiff's December 22 motion omits these critical facts entirely.

B. <u>Defendants' Objections Are Well-Founded</u>.
Plaintiff characterizes Defendants' objections as "baseless," but each is supported by established privilege doctrine:

- <u>Attorney-Client Privilege</u>: Communications between Dixon and counsel regarding allegations and litigation strategy are privileged.
- <u>Work Product Doctrine</u>: Witness selection, interview notes, and trial preparation materials are protected under Fed. R. Civ. P. 26(b)(3).
- <u>Privacy/Third-Party Rights</u>: Identifying alleged victims (including potential minors) implicates serious privacy and safety concerns.
- <u>Proportionality</u>: Fed. R. Civ. P. 26(b)(1) requires proportionality balancing. Plaintiff's requests span twenty years (2005-present), use vague compound definitions, and seek privileged materials, justifying the objections Defendants lodged.

Even assuming arguendo that responses were served after the deadline (which Defendants dispute for the reasons stated above), objections based on privilege are substantive defenses that survive late assertion.

C. <u>Plaintiff's Attack on Defendants' Organizational Summaries Is Meritless</u>.
Plaintiff devotes substantial space to attacking Defendants' use of abbreviated subject-matter descriptions in their interrogatory responses. This attack is meritless for multiple reasons.

First, Plaintiff's discovery requests are extraordinarily verbose and compound. Many requests span multiple paragraphs and include numerous sub-parts designated by letters and Roman numerals. For example, Request for Production No. 1 contains six lettered sub-parts (a-f) and spans more than half a page. Requests No. 2 and 3 similarly include three sub-parts. Request No. 4 similarly includes 26 sub-parts. This verbose drafting makes the requests difficult to parse and respond to efficiently.



Second, Defendants employed a standard organizational technique: providing a brief subject-matter heading followed by complete substantive objections and responses addressing the actual content and scope of each request. This approach enhances clarity and readability—particularly when responding to multi-part, multi-page requests—and is widely used in federal litigation.

Third, Plaintiff's Exhibit G is deliberately misleading. It presents Defendants' organizational headings in isolation, divorced from the substantive responses that immediately follow each heading. By stripping away this context, Plaintiff creates the false impression that Defendants "misquoted" or "changed" his requests. Plaintiff's own exhibit refutes this claim: the right-hand column shows Defendants' complete responses, including substantive objections that directly address the actual scope and content of Plaintiff's requests.

Fourth, Plaintiff's accusation that Defendants used artificial intelligence to generate these summaries is both false and inflammatory. Defense counsel personally reviewed each of Plaintiff's lengthy, compound requests and drafted concise organizational headings to facilitate efficient responses. Each response raised the necessary objections, which, if not raised, would have been waived by the defendants. Whether Defendant summarizes the requests or just provides a response to the numbered request is immaterial under the Federal Rules—what matters is whether the substantive responses adequately address the actual requests. They do.

Fifth, Plaintiff offers no evidence that any summary materially mischaracterizes the corresponding request or that any substantive response fails to address the request as written. Plaintiff's entire argument consists of pointing to organizational headings and claiming they are "different" from the full-text requests, which is necessarily true, because they are summaries designed for organizational clarity, not verbatim reproductions. There is no requirement for the Defendant to retype an overly verbose discovery demand document and then type out his responses. Defendant was only obligated to provide responses to each of the numbered demands.

Sixth, Plaintiff's attack is hypocritical. Plaintiff's own pleadings employ similar summarization techniques, condensing Defendants' statements into shorthand characterizations rather than reproducing them verbatim. This is standard practice, not misconduct.



If the Plaintiff had an issue with Defendants' answers to their discovery demands, they were required to MEET and CONFER with Defendants to address the deficiencies. December 22, 2025, is the first time that Defendants learned of these deficiencies or complaints concerning their answer to Plaintiffs' discovery demands. Courts impose sanctions for misleading submissions that omit material context. By presenting organizational headings out of context while falsely accusing defense counsel of using AI and being unfit to practice, Plaintiff violates counsel's duty of candor and exemplifies the bad faith that pervades this litigation and supports Defendants' pending Rule 11 motion.

D. <u>The Attack on Counsel's Fitness Is Irrelevant and Improper</u>.

Plaintiff references supposed statements by defense counsel in an unrelated New Jersey matter, claiming counsel represented an inability to continue practice. These allegations are: (1) taken out of context from proceedings in a different case; (2) irrelevant to whether Plaintiff complied with Rule 2.E or whether discovery responses were timely; and (3) designed solely to prejudice the Court against defense counsel in advance of the Rule 11 reply brief.

Counsel has continuously and competently represented Defendants throughout this litigation, including preparing and filing comprehensive written discovery responses, responding to this Court's orders, and briefing dispositive motions. The attack on counsel's fitness has no place in a discovery dispute and confirms the improper tactical purpose of Plaintiff's motion.

E. <u>Plaintiff Has Unclean Hands: His Own Discovery Responses Are Identical to Those He Now Attacks</u>.

Plaintiff's attack on Defendants' discovery responses is not only meritless but brazenly hypocritical. Plaintiff served his own discovery responses on September 24, 2025—two months before Defendants' responses—and those responses are substantively identical to the responses Plaintiff now characterizes as "baseless" and "obstructive."

First, Plaintiff lodged the same general objections Defendants now assert, including:

- "Overbroad/Undue Burden/Proportionality" – objecting that requests spanning 2006-present are "overbroad, unduly burdensome, and not proportional".
- "Privilege/Protection" – objecting to requests seeking attorney-client privileged communications and work product.
- "Privacy/Confidentiality" – objecting to requests for confidential information absent a protective order; and





- "Premature Contentions/Expert Discovery" – objecting to requests seeking legal contentions before discovery concludes.

*See* Plaintiff's Responses to Dixon Interrogatories at 1-3; Plaintiff's Responses to Blackburn Interrogatories at 1-3; Plaintiff's Responses to Blackburn Law Interrogatories at 1-3 (Sept. 24, 2025). (**See Exhibit B**).

Second, Plaintiff provided virtually no substantive answers to Defendants' interrogatories. For example:

- <u>Interrogatory No. 1 (Dixon)</u>: "Identify with specificity each and every statement made by Defendant Terrance Dixon that you contend is false or defamatory..."
    - Plaintiff's Response: "Plaintiff objects... as premature... Plaintiff also objects... as overly broad... Plaintiff also objects... as vague and ambiguous..."
- <u>Interrogatory No. 2 (Dixon)</u>: "Describe in detail the factual basis for your contention that the statement is false..."
    - Plaintiff's Response: "Plaintiff objects... as premature..."
- <u>Interrogatory No. 3 (Dixon)</u>: "State with particularity all facts supporting your contention that Defendant Dixon made the alleged defamatory statements with actual malice..."
    - Plaintiff's Response: "Plaintiff objects... as premature..."

Plaintiff provided identical objection-only responses to all seven of Dixon's interrogatories, all seven of Blackburn's interrogatories, and all seven of Blackburn Law's interrogatories.

Third, Plaintiff produced zero documents in response to Defendants' requests for production. Every single document request received the same boilerplate response:

> *Subject to and without waiving the foregoing objections, Plaintiff will produce all non-privileged documents and communications responsive to this Request after a reasonable investigation and the entry of an appropriate protective order. Plaintiff reserves the right to correct, supplement, or amend this response, as discovery is still ongoing and additional information may be obtained.*

*See Plaintiff's* Responses to Dixon Document Requests; Plaintiff's Responses to Blackburn Document Requests; Plaintiff's Responses to Blackburn Law Document Requests (Sept. 24, 2025).

Fourth, Plaintiff invoked the exact same privileges Defendants now assert, including attorney-client privilege, work product, and privacy protections. For example, Plaintiff objected that Request No. 12 (concerning the process server incident) "seeks documents that are not relevant" and that production "is harassing and not proportional to the needs of the case." Plaintiff's Responses to Blackburn Document Requests at 11-12. Plaintiff further objected that Request No.

T. A. BLACKBURN LAW

8 seeks documents "protected from discovery" under New York Judiciary Law § 90-1 (bar grievance confidentiality).

These are the identical objections Defendants now assert.

Fifth, as of the date of this filing—more than three months after Plaintiff served his discovery responses—Plaintiff has not produced a single document or substantive interrogatory answer to Defendants. Plaintiff has provided only objections and promises to "produce after" various conditions are met.

Sixth, the Court entered a stipulated protective order on December 8, 2025. ECF 105. Yet Plaintiff—who conditioned his document production on "entry of an appropriate protective order"—still has not produced any documents. This directly contradicts Plaintiff's December 22 argument that Defendants' similar condition (protective order objection) is "baseless" because a protective order now exists.

Plaintiff cannot come to this Court with unclean hands, attack Defendants for serving responses identical to his own, and demand that the Court compel production when Plaintiff himself has produced nothing. The doctrine of unclean hands bars relief when "the party seeking relief has violated conscience, good faith or other equitable principle in his prior conduct." Here, Plaintiff seeks to compel Defendants to do what he himself refuses to do: provide substantive responses and produce documents. This violates basic principles of fairness and good faith discovery.

Moreover, Plaintiff's hypocrisy confirms that his December 22 motion is not a good-faith discovery dispute but rather a tactical maneuver designed to: (1) distract from Defendants' pending Rule 11 motion; (2) overwhelm the Court with collateral disputes; and (3) create the false appearance that Defendants are obstructing discovery when in fact both parties are engaged in standard—if adversarial—discovery conduct.

If the Court were to grant Plaintiff's motion and compel Defendants to produce documents, basic fairness requires that the Court impose the identical obligations on Plaintiff, who has produced nothing in three months despite a protective order being in place.

### IV. IF THE COURT SCHEDULES A CONFERENCE, IT SHOULD OCCUR AFTER RESOLUTION OF THE RULE 11 MOTION

If the Court is inclined to schedule a pre-motion discovery conference notwithstanding Plaintiff's Rule 2.E violation, Defendants respectfully request that it occur after the Court rules on the pending Rule 11 motion.

The Rule 11 motion addresses threshold questions that may resolve or substantially narrow this case:

- Whether the SAC violates Rule 11 by targeting pre-litigation protected advocacy foreclosed by absolute and qualified privilege.
- Whether the SAC fails to plead non-conclusory actual malice allegations as required for defamation claims by public figures; and
- Whether sanctions are warranted for Plaintiff's coordinated civil and bar grievance strategy.

Resolution of these issues will provide necessary context for any discovery disputes. Conversely, addressing discovery disputes before resolving the Rule 11 motion would waste judicial and party resources if the case is dismissed or substantially narrowed.

### V. CONCLUSION

Plaintiff's pre-motion conference request should be denied for four independent reasons:

1. Plaintiff failed to comply with Rule 2.E's mandatory meet-and-confer requirement. Plaintiff sent one letter proposing a call, never followed up to conduct the call, and filed this motion eighteen days later. Rule 2.E prohibits precisely this conduct.
2. The motion is a transparent attempt to distract from Defendants' pending Rule 11 motion. Filed days before Defendants' reply brief is due, the motion floods the docket with inflammatory accusations designed to prejudice the Court against defense counsel.
3. Plaintiff's substantive arguments are meritless. Plaintiff controlled the discovery response timeline by withholding upload capability for more than 29 hours; Defendants' organizational summaries are standard practice; and Defendants' privilege objections are well-founded.
4. Plaintiff has unclean hands. Plaintiff's own September 24 discovery responses are substantively identical to those he now attacks. Plaintiff has produced zero documents in ninety-five days, asserted identical objections, and continues to withhold production despite a protective order being in place. Plaintiff cannot seek to compel conduct he himself refuses to perform.

Plaintiff's motion exemplifies the maxim that "people who live in glass houses should not throw stones." Plaintiff attacks Defendants for serving discovery responses identical to those Plaintiff himself served three months earlier. Plaintiff attacks the delayed transmission, yet he has produced nothing in 95 days. Plaintiff attacks objections he himself asserted. Plaintiff seeks to



compel Defendants to produce documents when they have produced zero documents despite a protective order being in place since December 8.

This hypocrisy confirms that Plaintiff's motion is not a legitimate discovery dispute but rather a bad-faith tactical maneuver designed to distract the Court from Defendants' pending Rule 11 sanctions motion. The motion should be denied.

If the Court schedules a conference, it should occur after resolution of the pending Rule 11 motion, and any production obligations should apply equally to Plaintiff, who has produced nothing despite serving objection-laden responses three months ago.

<div style="text-align: right;">Respectfully,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.</div>

CC: All attorneys of record via ECF.

