**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH CARTAGENA,<br><br>  Plaintiff,<br><br>  v.<br><br>TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,<br><br>  Defendants. | No. 25-CV-03552-JLR-JW |
| TERRANCE DIXON, a/k/a "TA,"<br><br>  Plaintiff,<br><br>  v.<br><br>JOSEPH ANTONIO CARTAGENA p/k/a "FAT JOE," PETER "PISTOL PETE" TORRES, RICHARD "RICH PLAYER" JOSPITRE, ERICA JULIANA MOREIRA, SNEAKER ADDICT TOURING LLC, SLATE, INC., ROC NATION, LLC, JOHN DOES 1-10, JANE DOES 1-10, AND ABC CORPORATIONS 1-10,<br><br>  Defendants. | No. 25-CV-05144-JLR-JW<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROC NATION, LLC'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......................................................................................................1

BACKGROUND ..........................................................................................................................3

LEGAL STANDARD....................................................................................................................5

ARGUMENT ..............................................................................................................................6

I.     THE FAC FAILS TO PLEAD A TVPRA CLAIM AGAINST ROC NATION.................6

      A.      Plaintiff fails to allege with plausibility that Roc Nation knew of purported TVPRA violations...................................................................................................7

      B.      Plaintiff fails to allege with plausibility that Roc Nation participated in a trafficking venture.................................................................................................9

      C.      Plaintiff fails to allege with plausibility that Roc Nation received any benefit from the purported trafficking venture. .......................................................9

II.     THE FAC'S NYLL CLAIMS FAIL FOR NUMEROUS INDEPENDENT REASONS. .......................................................................................................10

      A.      "Joint Employer Liability" (Count X) is not a cognizable cause of action and should be dismissed......................................................................................11

      B.      Plaintiff cannot assert NYLL claims (Counts I, II & V) because, by his own admission, he was an independent contractor..............................................11

           1.      Plaintiff was an independent contractor.....................................................12

           2.      Roc Nation was not Plaintiff's joint employer. ........................................13

      C.      The NYLL claims are time barred. ..........................................................17

      D.      Plaintiff's failure to seek leave to add NYLL claims justifies dismissal...............20

      E.      Plaintiff fails to plead NYLL violations by Roc Nation. ....................................20

           1.      The FAC does not adequately plead unlawful deductions and failure to pay wages (Count I). ..................................................................20

           2.      The FAC does not allege unlawful failure to provide a wage notice by Roc Nation (Count II). ...............................................................21

           3.      The FAC does not adequately plead retaliation by Roc Nation (Count V). ............................................................................................22

III.     THE FAC FAILS TO PLEAD THAT ROC NATION AIDED AND ABETTED WAGE THEFT. ................................................................................................23

      A.      Aiding and abetting is not cognizable under the NYLL. .......................................23

B.    Plaintiff does not adequately plead a hypothetical aiding-and-abetting claim.................................................................................................................25

1.    Plaintiff fails to plead that Roc Nation had actual knowledge....................25

2.    Plaintiff fails to plead Roc Nation substantially assisted any NYLL violation. ...................................................................................................26

CONCLUSION.................................................................................................................28

## Cases

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009)....................................................................................25

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ...................................................................................27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................5, 6

*Avella v. City of New York*,
  29 N.Y.3d 425 (2017) ...............................................................................................................24

*Barberan v. Nationpoint*,
  706 F. Supp. 2d 408 (S.D.N.Y. 2010).................................................................................6, 15

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008).......................................................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................................5

*Beltre v. Lititz Healthcare Staffing Sols LLC*,
  757 F. Supp. 3d 373 (S.D.N.Y. 2010)......................................................................................13

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021)......................................................................................27

*Boehm v. SportsMem, LLC*,
  2019 WL 3239242 (S.D.N.Y. July 18, 2019) ..........................................................................17

*Brewster v. City of Poughkeepsie*,
  447 F. Supp. 2d 342 (S.D.N.Y. 2006).......................................................................................26

*Briton v. Bronx Parent Housing Network, Inc.*,
  2022 WL 4332735 (S.D.N.Y. Sept. 19, 2022).........................................................................17

*Cartagena v. Dixon*,
  No. 25-cv-03552 (S.D.N.Y. May 15, 2026) .................................................................1, 5, 12

*Chai v. New York Univ.*,
  2024 WL 4042468 (S.D.N.Y. Sept. 4, 2024)...........................................................................22

*Chen v. Cai*,
  2022 WL 917575 (S.D.N.Y. Mar. 28, 2022) ........................................................................6, 8

i

*Cho v. Chu*,
   2022 WL 4463823 (S.D.N.Y. Sep. 26, 2022) ................................................................6

*Collison v. WANDRD, LLC*,
   737 F. Supp. 3d 231 (S.D.N.Y. 2024) ........................................................................17

*Cox v. German Kitchen Ctr. LLC*,
   2023 WL 8648839 (S.D.N.Y. Dec. 14, 2023) ............................................................12

*Esmilla v. Cosmopolitan Club*,
   936 F. Supp. 2d 229 (S.D.N.Y. 2013) ........................................................................23

*Fowler v. Scores Hldg.*,
   677 F. Supp. 2d 673 (S.D.N.Y. 2009) ........................................................................11

*Fried v. LVI Servs., Inc.*,
   2011 WL 2119748 (S.D.N.Y. May 23, 2011) ............................................................14

*Frost v. Lentex Co.*,
   2022 WL 17968058 (S.D.N.Y. Dec. 27, 2022) ..........................................................12

*Gachette v. Metro N. High Bridge*,
   2013 WL 144947 (S.D.N.Y. Jan. 14, 2013) ...............................................................12

*Galvez v. InvestCloud*,
   2026 WL 165737 (S.D.N.Y. Jan. 21, 2026) .........................................................14, 16

*Geiss v. Weinstein Co. Hldgs.*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ......................................................................9, 10

*Goldberg v. Jacquet*,
   667 F. App'x 313 (2d Cir. 2016) ................................................................................21

*Gonzalez v. City of New York*,
   2015 WL 9450599 (E.D.N.Y. Dec. 22, 2015) ...........................................................13

*Gustafson v. Bell Atl. Corp.*,
   171 F. Supp. 2d 311 (S.D.N.Y. 2001) ........................................................................19

*Guthrie v. Rainbow Fencing Inc.*,
   113 F.4th 300 (2d Cir. 2024) ...............................................................................21, 22

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
   585 F. Supp. 3d 405 (S.D.N.Y. 2022) ........................................................................25

*Hector Martinez Mata v. 144 Deli Grocery Store Corp.*,
   2026 WL 670386 (S.D.N.Y. Mar. 10, 2026) ..............................................................17

*Hightower v. Cohen*,
   2009 WL 9042127 (E.D.N.Y. Sept. 30, 2009) ...................................................................26

*Hollington v. CDM Fed. Programs Corp.*,
   2023 WL 2457057 (S.D.N.Y. Mar. 10, 2023) ...................................................................23

*Idle Media, Inc. v. Create Music Grp.*,
   2024 WL 5009713 (S.D.N.Y. Dec. 6, 2024) (Rochon, J.)....................................................12

*Jensen v. AR Glob. Invs., LLC*,
   2020 WL 1322584 (S.D.N.Y. Mar. 20, 2020) ...................................................................21

*Komlossy v. Faruqi & Faruqi, LLP*,
   2017 WL 722033 (S.D.N.Y. Feb. 23, 2017).....................................................................21

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir. 2014)...........................................................................................25

*Lederman v. Benepe*,
   2016 WL 11588628 (S.D.N.Y. Mar. 11, 2016) .................................................................11

*Lenart v. Coach, Inc.*,
   131 F. Supp. 3d 61 (S.D.N.Y. 2015).................................................................................13

*Levin v. Sarah Lawrence Coll.*,
   747 F. Supp. 3d 645 (S.D.N.Y. 2024)...............................................................................10

*Levy v. Aaron Faber, Inc.*,
   148 F.R.D. 114 (S.D.N.Y. 1993) .....................................................................................20

*Maldonado Juarez v. Butterfield Catering Inc.*,
   2020 WL 6945944 (S.D.N.Y. Nov. 25, 2020)....................................................................15

*Mazzaro de Abreu v. Bank of Am. Corp.*,
   525 F. Supp. 2d 381 (S.D.N.Y. 2007)..........................................................................25, 26

*McCray v. Caparco*,
   761 F. App'x 27 (2d Cir. 2019) .......................................................................................20

*McInnes v. S. Poverty L. Ctr. Inc.*,
   811 F. Supp. 3d 1319 (M.D. Ala. 2025) ......................................................................24, 25

*Morana v. Park Hotels & Resorts, Inc.*,
   2022 WL 769327 (S.D.N.Y. Mar. 14, 2022) ....................................................................17

*Mueller v. Deutsche Bank Aktiengesellschaft*,
   777 F. Supp. 3d 329 (S.D.N.Y. 2025)..........................................................................7, 8, 9

*Noble v. Weinstein*,
     335 F. Supp. 3d 504 (S.D.N.Y. 2018)..................................................................................9

*Palm Beach Strategic Income, LP v. Salzman*,
     457 F. App'x 40 (2d Cir. 2012) .........................................................................................20

*People v. Hardy*,
     35 N.Y.3d 466 (2020) ........................................................................................................24

*Pinero v. Long Is. State Veterans Home*,
     375 F. Supp. 2d 162 (E.D.N.Y. 2005) ...............................................................................23

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
     507 F.3d 117 (2d Cir. 2007)...............................................................................................10

*Porter v. MooreGroup Corp.*,
     2020 WL 32434 (E.D.N.Y. Jan. 2, 2020) ..........................................................................23

*Rosner v. Bank of China*,
     528 F. Supp. 2d 419 (S.D.N.Y. 2007)................................................................................27

*S.J. v. Choice Hotels Int'l, Inc.*,
     473 F. Supp. 3d 147 (E.D.N.Y. 2020) .............................................................................7, 8

*Saleem v. Corp. Transp. Grp.*,
     854 F.3d 131 (2d Cir. 2017)...............................................................................................12

*Shkreli v. JPMorgan Chase Bank, N.A.*,
     2015 WL 1408840 (S.D.N.Y. Mar. 27, 2015) ...................................................................11

*Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*,
     2019 WL 2327810 (S.D.N.Y. May 30, 2019) ...............................................................27, 28

*Villalobos v. Telemundo Network Grp.*,
     2025 WL 2687948 (S.D.N.Y. Sept. 19, 2025)......................................................................7

*Zhang v. Centene Mgmt. Co.*,
     2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023)........................................................................22

*Zheng v. Liberty Apparel Co.*,
     355 F.3d 61 (2d Cir. 2003)............................................................................................13, 16

## <u>Statutes</u>

NYCHRL § 8-107(6) ........................................................................................................................24

NYLL § 193 ........................................................................................................................10, 21, 24

NYLL § 195.................................................................................................................10, 21, 24

NYLL § 197.................................................................................................................................24

NYLL § 198.................................................................................................................10, 21, 24

NYLL § 215.....................................................................................................................10, 22

NYSHRL § 296(6)....................................................................................................................24

## Other Authorities

2021 A.B. 1893 Senate Bill ..................................................................................................21

2021 S.B. 858.........................................................................................................................21

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 5

Fed. R. Civ. P. 15.................................................................................................................20

Defendant Roc Nation, LLC ("Roc Nation") respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiff Terrance Dixon's ("Plaintiff") First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

The FAC confirms what has been obvious from the start:  this case was never about RICO, the TVPRA, or Roc Nation.  It always was—and still is—a private wage dispute between Plaintiff and Mr. Cartagena.  Roc Nation has nothing to do with it.  Though Plaintiff dropped his RICO claim, his reframed FAC recycles his thinly pleaded TVPRA claim and asserts a panoply of new claims against Roc Nation under the New York Labor Law (the "NYLL") on the manufactured theory that Roc Nation is his joint employer.  None of Plaintiff's claims has merit.  The Court should dismiss them.

Like its predecessor, the FAC alleges Roc Nation should be held liable under the TVPRA because it is Mr. Cartagena's manager and receives a management fee and because Plaintiff made unspecified complaints at unspecified times about alleged exploitative conditions.  But the FAC does not assert a single well-pleaded fact that would support a theory of venture participant liability.  This is not an issue of lack of discovery or access to the facts.  Plaintiff was there.  He alleges he was subject to acts of sexual coercion, forced labor, and insufficient pay.  He alleges he complained to a Roc Nation employee about his working conditions.  The reason the FAC does not allege a basis for TVPRA liability is because there is none.

Worse yet, Plaintiff appears to have knowingly asserted legally and factually baseless NYLL claims.  Though he claims he is an "employee" protected under the NYLL, his prelitigation

---

[1]  Roc Nation joins the arguments raised by the remaining Defendants in Sections I.B. – I.C. and VI.A – VI.B of their Omnibus Motion to Dismiss.  *See Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 15, 2026), Dkt. No. 195 at 12-18, 21-29.

demand letter characterizes him as an *independent contractor*—to whom the NYLL does not apply—and invokes New York's "Freelance Isn't Free Act."  His post-hoc redefinition cannot withstand these prior admissions.

Though Plaintiff represented his FAC would cure the deficiencies Roc Nation identified in its original motion to dismiss, his claims still fall short of what is required to justify an answer.

***First***, Plaintiff's TVPRA claim (Count III) recycles its predecessor's conclusory allegations and fails to identify facts supporting an inference that Roc Nation knew of a forced-labor or sex-trafficking venture or knowingly received a benefit for facilitating one.

***Second***, Plaintiff's NYLL claims for wage theft (Count I), failure to provide wage notices (Count II), and retaliation (Count V), and the purported "joint employer liability" claim (Count X) should be dismissed because (1) "joint employer liability" is a theory of liability, not a cause of action; (2)  Plaintiff is not an employee entitled to protection under the NYLL and Roc Nation was not his joint employer; (3) the claims are untimely; and (4) he never sought leave to plead them.

***Third***, notwithstanding the legal infirmities in Plaintiff's NYLL claims, each one attributes the underlying conduct to Defendants *other than* Roc Nation.

***Finally***, Plaintiff's claim for aiding and abetting an NYLL violation (Count IX) is not a recognized cause of action under that statute.  And even if it were, Plaintiff fails to assert any allegation that would support an inference that Roc Nation was aware of or provided substantial assistance to any wage-theft scheme.

The Court should dismiss each claim against Roc Nation with prejudice.

## BACKGROUND[2]

On June 19, 2025, Plaintiff initiated this lawsuit with a vitriolic, 775-paragraph Complaint that framed a wage dispute he had with Mr. Cartagena as a yearslong saga of sex trafficking, forced labor, and racketeering.  (*See* Dkt. No. 1.)  That pleading asserted two baseless claims against Roc Nation:  a TVPRA claim and a time-barred RICO claim.  It did not assert any NYLL claims.  (*Id.* at ¶¶ 621, 754, 774, 775(8).)  Roc Nation moved to dismiss the Complaint two business days later, on June 23, 2025.  (Dkt. Nos. 9-10.)  After receiving an email from Plaintiff's counsel expressing his and his client's view that Roc Nation was a ***victim*** of fraud and that the evidence showed that no one at Roc Nation had any awareness of or involvement in the alleged conduct (Dkt. No. 16-1), Roc Nation moved for sanctions, asserting that the Complaint was filed to garner media attention and extract a settlement.  (Dkt. No. 15.)

Plaintiff then waited nine months to seek leave to amend, arguing amendment would "cure alleged pleading deficiencies" identified by Defendants' motions to dismiss.  (Dkt. No. 79 at 3.)  Among other things, he represented he would (1) bolster his TVPRA claim and identify Roc Nation's "knowing participation in" and "financial benefit from" the alleged trafficking venture, (2) "clarify the structure and operation of the alleged RICO enterprise," and (3) add "allegations supporting equitable tolling."  (*Id.* at 2.)  Plaintiff did not seek and was not granted leave to plead new claims.  (Dkt. No. 83.)  In granting Plaintiff's motion, the Court "warned…that given his inexplicable delay…and the fact that he has had ample time to consider" Defendants' motions to dismiss, further amendment "will likely not be permitted."  (*Id.* at 9.)  On March 26, 2026, Plaintiff filed the FAC, abandoning his RICO claim entirely, reasserting his TVPRA claim, and raising a

---

[2]    As it must, Roc Nation accepts all nonconclusory allegations in the FAC as true for purposes of this motion but reserves its right to contest their validity.

slew of new NYLL claims.  The FAC is based on the same core allegations as its predecessor. Plaintiff asserts that he worked for Mr. Cartagena as a "hype man," "on-stage performer," and "background vocalist and creative contributor" from 2005 to 2020.  (FAC ¶ 8.)  He alleges that over the course of this 15-year period, he was underpaid, retaliated against, and subject to coercive conditions, including sexual misconduct and forced labor, as follows:

*TVPRA*:  Plaintiff alleges that while working in his role, Mr. Cartagena underpaid him and used "a combination of threats, financial dependency, isolation, and psychological manipulation" to "prevent [him] from leaving or asserting his rights" and subjected him to "coerced sexual compliance" and "manipulation" by directing him to "participate in sexual acts."  (*Id.* ¶¶ 53, 136, 138.)  He claims to have "attempted to withdraw from touring or to condition his participation" on his agreed compensation but that Mr. Cartagena and other Defendants (but not Roc Nation) threatened to "blacklist" him, "destroy his reputation," and "harm" him.  (*Id.* ¶¶ 53-62.)  He further alleges (upon information and belief) that "Cartagena directed the underpayment scheme"; Sneaker Addict "issued payroll"; Slate Inc. "received and routed revenues"; and Moreira "implemented payroll and financial reporting practices."  (*Id.* ¶ 38.)  To establish liability as to Roc Nation, Plaintiff recycles his allegations that it:  (1) was Mr. Cartagena's manager, (2) received management fees and commissions for its services, and (3) employed an individual— who Plaintiff now identifies as Robert Castillo—to whom he allegedly reported.  Despite nearly nine months to consider the propriety and factual support for his claims, the FAC merely adds Mr. Castillo's name, alleges Plaintiff (1) made unspecified "complaints" to Mr. Castillo about Plaintiff's alleged "underpayment, mistreatment, and exploitative conditions," (2) "feared retaliation if he refused to continue performing," and (3) was "being pressured to continue."  (*Id.*

¶¶ 77-78.)  Plaintiff then asserts Roc Nation took no action and continued to profit from being Mr. Cartagena's management company.  (*Id.* ¶ 140.)

*NYLL*:  Plaintiff contends that Roc Nation is liable for other Defendants' alleged wage theft violations (Counts I-II), retaliation (Count V), and aiding and abetting wage theft (Count IX) because it was Plaintiff's "joint employer."  Because these claims are brand new, Plaintiff now alleges he "asserted rights under the NYLL" in a March 2025 prelitigation demand letter to Mr. Cartagena for unpaid wages.  In fact, however, that demand did not mention the NYLL and instead described Plaintiff as an independent contractor who was purportedly protected under the "Freelance Isn't Free Act."  (*Compare id.* ¶¶ 63, 159 *with Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 15, 2026), Dkt. No. 196-2 at 9-10.)

Consistent with this concession, Plaintiff alleges a freelance relationship:  he was paid a "per-show performance fee" rather than a salary and had an alleged agreement to receive $3,000 per show.  (FAC ¶ 35.)  Though he contends that Roc Nation should be considered his joint employer because it had the "power" to "hire and fire him," controlled the scheduling and terms of his employment and rate of pay, and allegedly—upon information and belief—maintained employment records, his FAC contains similar, contradictory allegations as to the remaining Defendants.  (*Id.* ¶ 82.)  For example, he claims Mr. Cartagena exercised "exclusive" and "sole" control over those conditions (*id.* ¶¶ 12, 15), Mr. Jospitre negotiated and relayed his performance terms, and Sneaker Addict was his "employer of record" and "issued payroll" (*id.* ¶¶ 32, 35, 38, 90).

## LEGAL STANDARD

Dismissal is proper under Rule 12(b)(6) where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs must plead "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, a court need not credit "mere conclusory statements," "[t]hreadbare recitals of the elements of a cause of action," or give effect to a "legal conclusion couched as a factual allegation." *Id.* Nor is the Court "required to accept as true pleadings that are directly contradicted by other factual statements in the Amended Complaint." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010).

## **ARGUMENT**

### I.    **THE FAC FAILS TO PLEAD A TVPRA CLAIM AGAINST ROC NATION.**

The FAC fails to cure the inadequacies in the original Complaint's TVPRA claim. Though Plaintiff acknowledges Roc Nation did not *actually* participate in any such conduct (FAC ¶¶ 103-28 (attributing alleged forced labor conduct to Defendants *other than* Roc Nation); *id.* ¶¶ 129-37 (same regarding sex trafficking allegations)), he contends it can be held liable as a venture participant (*id.* ¶ 140). But Section 1595(a) only provides for such liability if the defendant (1) "knowingly benefited or received anything of value (2) from participation in a venture, (3) which the beneficiary knew or should have known has engaged in an act in violation of [the TVPRA]." *Cho v. Chu*, 2022 WL 4463823, *3 (S.D.N.Y. Sep. 26, 2022) (cleaned up); *Chen v. Cai*, 2022 WL 917575, *4 (S.D.N.Y. Mar. 28, 2022). And across the 11-page TVPRA count, Plaintiff mentions Roc Nation only three times, in conclusory fashion: (1) twice in passing, alleging that all defendants purportedly "controlled his schedule, travel, and access to performance opportunities" (FAC ¶ 112) and required his extensive domestic and international travel (*id.* ¶ 105); and (2) once in a single paragraph purporting to describe the basis upon which he seeks to hold Roc Nation liable as a venture participant (*id.* ¶ 140). These minimal additional factual allegations do not raise an inference that Roc Nation knew or should have known about purported

6

TVPRA violations or knowingly participated in or benefited from a TVPRA venture.  The Court should dismiss the claim with prejudice.

### A.     Plaintiff fails to allege with plausibility that Roc Nation knew of purported TVPRA violations.

Plaintiff fails to allege that Roc Nation had actual or constructive knowledge "that the venture in which [it allegedly] participated violated the TVPRA."  *Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 337 (S.D.N.Y. 2025).  Even if credited, his conclusory allegations at most show the "abstract awareness" of a TVPRA violation that courts deem insufficient.  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

*First*, Plaintiff merely recycles his original Complaint's allegations that Roc Nation had knowledge of a TVPRA sex trafficking venture because it managed Mr. Cartagena.  He reiterates his assertion that Roc Nation "should have known" of the alleged abuse because it took place in the shadow of unidentified "branded venues" that involved unidentified "staff operating under Roc Nation's management supervision" and because unidentified individuals in unspecified "touring circles" discussed them "openly."  (FAC ¶ 140.)  But these vague allegations are insufficient to establish the requisite knowledge for venture participant liability.  For example, in *Villalobos v. Telemundo Network Grp.*, the Honorable John Cronan, United States District Judge for the Southern District of New York, dismissed a TVPRA claim where the plaintiff's allegation of knowledge was that there was a "culture of sexual misconduct and indifference" to it by Telemundo executives, Comcast, and NBC.  2025 WL 2687948, *3 (S.D.N.Y. Sept. 19, 2025).  Plaintiff's allegations here are even less specific than they were in *Villalobos*.  *See also Mueller*, 777 F. Supp. 3d at 339 (allegations two customers—alleged to be al-Qaeda and ISIS-connected cells—had "some characteristics that were consistent with VAT [(value-added tax)] fraud" and

7

"operated in countries where other al-Qaeda fundraisers had done so in the past" insufficient to establish knowledge by Deutsche Bank of a *trafficking venture*).

***Second***, Plaintiff seeks to establish Roc Nation's knowledge of a forced labor venture through Robert Castillo, who allegedly served as "Plaintiff's direct supervisory contact" and received complaints about Plaintiff's "underpayment, mistreatment, and exploitative conditions," his "feared retaliation if he refused to continue performing," and "being pressured to continue performing." (FAC ¶¶ 77-78, 140.) These unspecified complaints (made at unspecified times) do not support an inference that Roc Nation was aware that any of the Defendants were coercing Plaintiff's labor. In particular, Plaintiff does not allege that he disclosed to Mr. Castillo any of the actual conduct that he now claims supports his TVPRA claim. Plaintiff's inability to specify what he himself said to Mr. Castillo beyond these vague assertions is a telling omission that demonstrates he cannot adequately allege Roc Nation had the requisite knowledge for a TVPRA claim. *See, e.g.*, *S.J.*, 473 F. Supp. 3d at 154 (suggestion that franchisors "were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'").

At bottom, Plaintiff's allegations do not meet the TVPRA knowledge threshold. "[T]he TVPRA requires the beneficiary to know its client is engaged in trafficking, not just in any illegal activity." *Mueller*, 777 F. Supp. 3d at 339 (complaint failed to allege knowledge of fraud scheme). Even with the most expansive construction, the FAC's allegations suggest Roc Nation had a general awareness of potentially illegal activity. That is not enough. *See Chen*, 2022 WL 917575, *5 (dismissing TVPRA claim against corporate defendants because allegations that their employee used violence to "enslave" plaintiff and force her to participate in religious activities "do not plausibly suggest that Defendants knew" of the purported venture).

B.    **Plaintiff fails to allege with plausibility that Roc Nation participated in a trafficking venture.**

Plaintiff also fails to allege a "causal relationship between *affirmative conduct*" by Roc Nation "furthering the…venture and receipt of a benefit, with…*constructive knowledge of that causal relationship*." *Geiss v. Weinstein Co. Hldgs.*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (emphases added); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (liability "cannot be established by association alone"). His allegations regarding coerced sex acts and pay negotiations are against other Defendants. (FAC ¶¶ 129-39.) The only conduct he contends Roc Nation engaged in—taking "no disciplinary action[ and] perform[ing] no internal review" while continuing to collect management fees, royalties, and other alleged brand equity (*id.* ¶ 140)—is insufficient to support venture liability. Roc Nation's provision of ordinary-course management services (for which it received compensation) cannot support a TVPRA claim. *See Mueller*, 777 F. Supp. 3d at 338-39 (dismissing TVPRA claim based on provision of routine financial services). Nor does the TVPRA "require a company providing generally available services to investigate its customers to ensure they are not indirectly connected to trafficking." *Id.* at 339.

C.    **Plaintiff fails to allege with plausibility that Roc Nation received any benefit from the purported trafficking venture.**

Plaintiff also fails to allege, as he must, that Roc Nation "knowingly benefit[ed]…from participation" in a trafficking venture, rather than from "participation in other activities engaged in by the…traffickers that do not further the []trafficking aspect of their venture." *Geiss*, 383 F. Supp. 3d at 167, 169 (cleaned up). He contends that Roc Nation "continued to collect management commissions, royalties, and brand equity derived from Defendant Cartagena's public persona—a persona built in part on the coerced and unpaid labor and sexual compliance of Plaintiff." (FAC ¶ 140.) Based on this, he seeks an inference that Roc Nation knowingly received benefits in exchange for active participation in a TVPRA venture. But Roc Nation receiving its

9

ordinary commissions does not plausibly support that inference: a complaint must "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

*Geiss* is instructive. There, the court recognized that the corporate defendant "undoubtedly benefited from [Harvey] Weinstein's continued employment at [defendant]" because Weinstein's "movies and influence generated revenue, and some of that revenue flowed to [defendant]." 383 F. Supp. 3d at 169. Nevertheless, the court dismissed the TVPRA claim because there was no allegation that "Weinstein provided any of those benefits to [defendant] ***because of*** [defendant's] facilitation of" the misconduct. *Id.* The same link is missing here: no factual allegations connect any monetary payment Roc Nation received to alleged facilitation of the alleged forced labor venture. "Because the Complaint does not give rise to the plausible inference" that Roc Nation "benefitted financially or by receiving anything of value, the TVPRA claim…must be dismissed." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679-80 (S.D.N.Y. 2024).

Despite his claims that the FAC would demonstrate Roc Nation's "knowing participation" in a TVPRA venture (Dkt. No. 79 at 2), it still fails to allege any facts to support that inference. The TVPRA claim should be dismissed with prejudice.

## II. THE FAC'S NYLL CLAIMS FAIL FOR NUMEROUS INDEPENDENT REASONS.

The FAC now asserts a claim for joint employer liability (Count X) and three claims against Roc Nation allegedly arising under the NYLL, including unlawful deductions and failure to pay wages (Count I), failure to provide wage statements (Count II), and retaliation (Count V) in violation of NYLL §§ 193 & 198, 193, and 215, respectively. Count X should be dismissed because it is not a cognizable claim. And the Court should dismiss the NYLL claims because (1) Plaintiff was an independent contractor—who cannot seek refuge under them—and Roc Nation

10

was not his joint employer; (2) they are time barred; and (3) regardless, he was not granted leave to plead them or his aiding and abetting claim (Count IX).  Moreover, even if Plaintiff could overcome the legal deficiencies in his NYLL claims, he has not adequately pleaded them.

**A.**     **"Joint Employer Liability" (Count X) is not a cognizable cause of action and should be dismissed.**

In addition to claiming that Roc Nation can be held liable for Counts I, II, and V because it was allegedly Plaintiff's joint employer, Plaintiff inexplicably asserts a cause of action for "joint employer liability" (Count X).  But that is a theory of liability—not a cause of action.  *See Fowler v. Scores Hldg.*, 677 F.  Supp. 2d 673, 681 (S.D.N.Y. 2009) (joint employer doctrine allows a plaintiff to "impose liability for violations of employment law on the constructive employee").  Courts routinely dismiss standalone claims that purport to repackage similar theories of liability against employers.  *See, e.g.*, *Lederman v. Benepe*, 2016 WL 11588628, \*5 (S.D.N.Y. Mar. 11, 2016) ("It is well-established…that *respondeat superior* 'is not a cause of action at all, but a theory of liability that must attach to a separate claim." (cleaned up)); *Shkreli v. JPMorgan Chase Bank, N.A.*, 2015 WL 1408840, \*4 n.2 (S.D.N.Y. Mar. 27, 2015) ("Plaintiff's Complaint also contains a cause of action that he labels 'agency,' which seeks to hold Defendant responsible for the actions of its employee James Guilfoyle.  Because agency is a theory of liability and not a cause of action, Plaintiff's cause of action under 'agency' is dismissed.").  The Court should dismiss Count X with prejudice.

**B.**     **Plaintiff cannot assert NYLL claims (Counts I, II & V) because, by his own admission, he was an independent contractor.**

Plaintiff's assertion of NYLL claims is premised upon his allegation that he is an employee and Roc Nation was his joint employer.  (FAC ¶¶ 76-87, 220.)  He is wrong on both accounts.  He was an independent contractor not subject to the NYLL and he has failed to allege that Roc Nation meets the economic realities test for joint employer liability.

### 1.    *Plaintiff was an independent contractor.*

The NYLL only "appl[ies] to 'employee[s],' not independent contractors." *See Cox v. German Kitchen Ctr. LLC*, 2023 WL 8648839, *4 (S.D.N.Y. Dec. 14, 2023); *Frost v. Lentex Co.*, 2022 WL 17968058, *5 (S.D.N.Y. Dec. 27, 2022); *Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 139 (2d Cir. 2017); N.Y.L.L. § 651.  There is apparently no dispute about Plaintiff's independent contractor status:  his counsel admitted as much in his March 2025 demand letter to Mr. Cartagena, stating Plaintiff "performed much of his work…***as an independent contractor***" and thus "is protected by NYC's 'Freelance Isn't Free Act.'"  *Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 15, 2026), Dkt. No. 196-2 at 9 (emphasis added).  Perhaps that is why, stripped of the conclusory allegations attempting to portray employment, the FAC's *factual* allegations describe a freelance relationship.  Plaintiff admits he received a "per-show rate" on a show-by-show basis rather than a salary (FAC ¶¶ 35, 38) and describes himself as a "hype man," "on-stage performer," and "background vocalist and creative contributor" (*id.* ¶ 8.)  The FAC's made-for-litigation allegation that Plaintiff is an "employee" (*id.* ¶ 90) and its misrepresentation of the March 2025 demand letter as "asserting his rights" under the NYLL (*id.* ¶ 63), does not warrant a contrary conclusion.  Where a document—such as the March 2025 demand letter—"relied on in the complaint contradicts allegations in the complaint, the document…control[s], and the court need not accept the allegations in the complaint as true." *Idle Media, Inc. v. Create Music Grp.*, 2024 WL 5009713, *10 (S.D.N.Y. Dec. 6, 2024) (Rochon, J.) (citation omitted) (considering prelitigation demand letter that was "incorporated by reference" in amended complaint at motion-to-dismiss stage and dismissing allegations that contradicted letter); *see also, e.g.*, *Gachette v. Metro N. High Bridge*, 2013 WL 144947, *1 (S.D.N.Y. Jan. 14, 2013) ("[T]he [c]ourt 'is not obliged to reconcile plaintiffs own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference…in…the complaint.'" (citation omitted)).

12

### 2.    *Roc Nation was not Plaintiff's joint employer.*

Plaintiffs allegations do not support joint employer liability.  Courts apply an "economic realities" test to determine whether such a relationship exists, with focus on the degree of control the alleged employer exercised over the worker.  *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-43 (2d Cir. 2008) (assessing joint employer liability under FLSA); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003) (same); *Beltre v. Lititz Healthcare Staffing Sols LLC*, 757 F. Supp. 3d 373, 377, n.2 (S.D.N.Y. 2010) (finding test for determining employer status is same under FLSA and NYLL).  Joint employer liability can be established through formal or functional control or the existence of a single integrated enterprise.  The FAC purports to invoke all three theories of joint employment liability.  (*See* FAC ¶¶ 82-85, 90).  Each fails.

**Formal Control**:  Formal control exists where the alleged employer:  (1) had the power to hire and fire a plaintiff, (2) supervised and controlled his work schedule or conditions of employment, (3) determined his rate and method of payment; and (4) maintained employment records.  *Barfield*, 537 F.3d at 142 (citation omitted).  At their core, Plaintiff's allegations purporting to meet this test (FAC ¶ 82; *see also id.* ¶¶ 218-33) are each based on "information and belief," amount to nothing more than bare recitations of the doctrine's legal elements, and are otherwise contradicted by allegations he asserts against other Defendants.  None is sufficient to survive a motion to dismiss.  *Gonzalez v. City of New York*, 2015 WL 9450599, *3 (E.D.N.Y. Dec. 22, 2015) (rejecting "entirely conclusory" allegations of joint employment that "consist only of a recitation of the legal standard"); *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (court "neither obligated to reconcile nor accept the contradictory [or internally inconsistent] allegations in the pleadings as true").  Nevertheless, the allegations are insufficient to attach joint employer liability to Roc Nation.

13

*First*, Plaintiff asserts that Roc Nation could hire or fire him and controlled his work schedule and conditions. But Plaintiff does not allege that Roc Nation was involved in any interview or recruitment process that resulted in his relationship with Mr. Cartagena. (FAC ¶ 29 (alleging Mr. Cartagena "recruited" him).) Nor could he—that relationship predated Roc Nation's management of Mr. Cartagena. (*Compare id.* (alleging Plaintiff began working with Mr. Cartagena in 2005) *with id.* ¶ 80 (alleging Roc Nation's management of Mr. Cartagena began in 2017).) And that decision was Mr. Cartagena's alone. *Galvez v. InvestCloud*, 2026 WL 165737, *6 (S.D.N.Y. Jan. 21, 2026) (no power to hire for alleged joint employer where decision rested with another entity). Plaintiff does allege that Roc Nation, "[u]pon information and belief…had the power, ***directly or indirectly***, to determine whether Plaintiff would be included on particular tours, to exclude him from tours, or to substantially influence whether Plaintiff would be used on shows and appearances." (FAC ¶ 223 (emphasis added).) From this, Plaintiff begs an inference that Roc Nation had the power to fire him and set his schedule and work conditions. But that inference cannot be reconciled with Plaintiff's allegations that Mr. Cartagena "held ***exclusive control*** over [his] professional opportunities and compensation" and "exercised ***sole control*** over contracts, budgets, tour management, licensing, and credit attribution." (*Id.* ¶¶ 12, 15 (emphases added); *see also id.* ¶ 31 ("Cartagena … exercised the power to hire and fire Plaintiff").) And even assuming Roc Nation could "substantially influence" whether Plaintiff performed at a given show, indirect influence is insufficient. *See Fried v. LVI Servs., Inc.*, 2011 WL 2119748, *6-7 (S.D.N.Y. May 23, 2011) (mere involvement in termination decision insufficient to establish joint employment even where defendant's officers sat on employer's board and advocated for plaintiff's termination).

***Second***, Plaintiff cannot adequately allege that Roc Nation determined his rate and method of payment. (FAC ¶ 35.) He explicitly alleges that Mr. Cartagena "held ***exclusive control*** over [his] … compensation" (*id.* ¶ 12 (emphasis added)) and purportedly agreed to pay him a per-show rate of $3,000 (*id.* ¶ 35 (agreement was "expressly communicated … by Cartagena orally)). He alleges that Sneaker Addict—*not* Roc Nation—"issued payroll." (*Id.* ¶ 38.) And he claims that Jospitre negotiated and relayed his performance terms. (*Id.* ¶¶ 17, 35.) To sidestep this factual landmine, Plaintiff speculates that "Roc Nation and its agents had the authority to influence or determine Plaintiff's rate and method of payment by negotiating or approving performance budgets and guarantees, receiving or reviewing settlement sheets and promoter payments, and working with Cartagena and his entities on how tour proceeds would be allocated among participants." (*Id.* ¶ 224.) Those allegations do not suffice. *See, e.g.*, *Barberan*, 706 F. Supp. 2d at 424 (courts are not "required to accept as true pleadings that are directly contradicted by other factual statements in the Amended Complaint").

***Finally***, Plaintiff's allegation that Roc Nation "maintained, or had the right to maintain, employment-related records concerning Plaintiff's work, including tour itineraries, performance schedules, settlement sheets, and communications" (FAC ¶ 226) is just a rote recitation of the final element of the test, unmoored to any indicia of factual support. That likewise is insufficient. *See Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, *2-4 (S.D.N.Y. Nov. 25, 2020) ("formulaic" allegations based on "information and belief" lack "factual detail necessar[y] to [meet] the economic realiti[es]" test).

**Functional Control**: Plaintiff makes vague references to Roc Nation "functioning" as a joint employer, but he does not address the elements of functional control. He does not allege any facts demonstrating that: (1) he used Roc Nation's equipment or premises; (2) his services shifted

15

between Roc Nation and Mr. Cartagena; (3) his contractual responsibility could pass from one contractor to another; (4) Roc Nation or Mr. Castillo *supervised his work*—as it relates to his performance as a hype man, performer, or "creative collaborator"; or (5) he worked exclusively or predominantly for Roc Nation. *Zheng*, 355 F.3d at 72 (identifying these factors as elemental to functional control). Though Plaintiff claims that his work was "integral" to Roc Nation's business, his conclusory allegation that "it was a functional necessity of Roc Nation's management mandate" to exercise authority over him to obtain its management fee is belied by the FAC's other allegations that Roc Nation's commission was "calculated as a percentage of Cartagena's gross touring revenues." (FAC ¶ 84.) And this allegation does not lead to an inference that Plaintiff's work as a "hype man" was *integral* to Roc Nation's production processes as a management company. *Zheng*, 355 F.3d at 73 (factor focuses on plaintiff's role in the alleged employer's own production process without discussion of defendant's financial interest in the direct employer's revenues).

**Single Integrated Enterprise**: Plaintiff half-heartedly invokes the "single integrated enterprise" test for joint employer liability. Relevant factors of the test include "the alleged employers' [i] interrelated operations, [ii] common management, [iii] centralized control of labor relations, and [iv] common ownership." *Galvez*, 2026 WL 165737, at *6. The FAC contains a single allegation from which Plaintiff suggests Roc Nation meets this test. (FAC ¶¶ 85, 230(e).) He does not assert (1) common ownership or management among any of the corporate Defendants, (2) that Roc Nation has interrelated operations with any other defendant, or (3) that Roc Nation and any of the other Defendants exercise centralized control over labor relations. Instead, Plaintiff asserts the entirely conclusory allegation—upon information and belief—that the "economic reality" between "Roc Nation, Cartagena, Sneaker Addict Touring LLC, and Plaintiff" amounted to "an integrated enterprise." (*Id.*) That will not do. *See Galvez*, 2026 WL 165737, *6 (declining

16

to impose single integrated enterprise liability where plaintiff failed to assert allegations supporting three of the test's four factors); *Briton v. Bronx Parent Housing Network, Inc.*, 2022 WL 4332735, *2 (S.D.N.Y. Sept. 19, 2022) (rejecting invocation of single integrated enterprise theory where plaintiff "offers only conclusory recitations, including literal restatements of the elements of the … test").

*   *   *

Plaintiff's attempt to manufacture a joint employment relationship rings hollow. Roc Nation was Mr. Cartagena's management company—not Plaintiff's employer. (FAC ¶¶ 21, 83-84.) Any conclusion to the contrary is belied by his own prelitigation admissions and his inability, after nearly a year of litigation, to identify a single fact that would substantiate *any* theory of joint employment. Plaintiff's reliance on speculative allegations and those made on "information and belief" to prop up the fiction that Roc Nation controlled his working conditions do not suffice. *See, e.g.*, *Boehm v. SportsMem, LLC*, 2019 WL 3239242, *2 n.1 (S.D.N.Y. July 18, 2019) (facts alleged "upon information and belief" "must be accompanied by a statement of the facts upon which the belief is founded,' and cannot rest on pure 'conjecture and speculation'" (citations omitted)); *Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 243 (S.D.N.Y. 2024) (allegations that defendant could "hire, fire, and control…wages and working conditions of [p]laintiff" are "boilerplate and merely track certain factors of the economic reality test"); *see also Morana v. Park Hotels & Resorts, Inc.*, 2022 WL 769327, *8 (S.D.N.Y. Mar. 14, 2022) (dismissing NYLL claims for lack of standing against alleged joint employers where plaintiff failed to allege they "formally or functionally controlled him"). Dismissal with prejudice is warranted.

### C.    The NYLL claims are time barred.

NYLL wage-based claims (Counts I & II) are governed by a six-year statute of limitations that begins to run when a plaintiff is on actual or inquiry notice of his claim. *Hector Martinez*

17

*Mata v. 144 Deli Grocery Store Corp.*, 2026 WL 670386, \*2 (S.D.N.Y. Mar. 10, 2026). Plaintiff's own allegations show he has been on inquiry notice of his wage claims as to Roc Nation since it entered the picture in 2016.

Plaintiff alleges that Roc Nation managed Mr. Cartagena from "2016 through 2020" (FAC ¶ 83), and that during that period, he complained to Mr. Castillo about "underpayment" "on multiple occasions" (*id.* ¶¶ 76-77). He further alleges that "in or about 2017 to 2020," Roc Nation, "through Castillo and other[s]," approved a faulty tour budget, and "[d]espite Plaintiff's prior complaints to Castillo about chronic underpayment," Roc Nation took no corrective measures. (*Id.* ¶ 225.) Plaintiff's own allegations show he was on notice of the alleged issues with his pay and had complained about them to Castillo "prior" to 2020. Counts I and II therefore fall outside of the six-year statute of limitations.

To save his untimely NYLL claims, Plaintiff recycles the RICO tolling argument from his original Complaint—that he "could not have discovered the full scope of Defendants' misconduct earlier" because several defendants (but not Roc Nation) "affirmatively withheld or obscured information necessary to reveal the [wage] discrepancies." (*Id.* ¶¶ 87-88(a).) Plaintiff's tolling allegations, however, are contradicted by his allegations that he complained about chronic underpayment to Mr. Castillo throughout Roc Nation's management. They also defy common sense. For example, Plaintiff alleges he was contractually entitled to $3,000 per show but typically received only $150 to $250. (*Id.* ¶¶ 33, 35, 137(b).) Anyone receiving false paystubs or earnings statements, or "typically" receiving only $250 instead of the $3,000 they believed they were owed, would be on notice that something was wrong the minute he received those paystubs or underpayment. It is also implausible that Plaintiff did not and could not have discovered the purported "wage-theft scheme" until 2023-2025 due to "Defendants' superior knowledge, their

18

exclusive control over relevant records, and their reported oral assurances," as he admits that he "was aware that he was being underpaid" "[p]rior to 2023" and had complained about it since 2017.  (*Id.* ¶ 168.)

Plaintiff next asserts that because he received paychecks and performed services "through at least 2019-2020," his claims are timely under the continuing violations doctrine.  (*Id.* ¶ 88(b).)  But that doctrine does not apply to NYLL wage claims.  *See Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (rejecting this very argument and explaining that each paycheck constitutes a discrete, individual wrong and separate cause of action "for which suit must be brought within the [limitations] period" (alteration in original) (citation omitted)).  Moreover, even if he received paychecks in 2019-2020 that gave rise to discrete causes of action, they should still be dismissed.  Any that accrued in 2019 are untimely because he did not assert them until March 26, 2026—more than a year outside of the limitations period.  And he does not plead when in 2020 he purportedly received any paychecks, so there are no facts from which to infer his claim is timely.

Finally, Plaintiff alleges that a purported wage statement violation "reflected in [a] June 1, 2019, Paychex statement" is timely because he only obtained that statement in 2025.  (FAC ¶ 88(b).)  But again, Plaintiff complains that he was underpaid from 2005 to 2020.  It is implausible that he was not on notice of a purported underpayment in 2019 until six years later.  Even if that allegation were credited, his lack of diligence forecloses equitable tolling.  It is inconceivable that he "reasonably relied" on statements that financial matters were being "handled" for 15 years and then waited an additional three to five years after his work with Mr. Cartagena ended in 2020 to conduct any diligence.  (*Id.* ¶¶ 60, 168, 204); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 119-20 (S.D.N.Y. 1993) ("[A] wronged party is held to 'discover' a wrong…'at the point where the facts

19

could have been ascertained by using reasonable diligence.'" (citation omitted)). Basic diligence—including monitoring payments he received to determine if there were shortfalls—would have uncovered any discrepancies. The claims are time barred. The court should dismiss them with prejudice.

### D. Plaintiff's failure to seek leave to add NYLL claims justifies dismissal.

The Court should dismiss Plaintiff's NYLL claims for the independent reason that Plaintiff did not seek—and was not granted—leave to plead them. This Court granted Plaintiff leave to amend based on his proffer that the amended complaint would contain "additional facts that … will address the deficiencies identified in the [then-pending] motions to dismiss." (Dkt. No. 83 at 6.) The inclusion of new claims thus was not contemplated by and exceeds the Court's permission for amendment. The Court should dismiss the claims on that basis alone. *See, e.g.*, *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("[C]ourts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." (collecting cases)); *McCray v. Caparco*, 761 F. App'x 27, 30 (2d Cir. 2019) (new claims "beyond the scope of the permitted amendment…were properly dismissed" because "[a]dditional allegations can only be added 'with the opposing party's written consent, or the court's leave'" (quoting Fed. R. Civ. P. 15)).

### E. Plaintiff fails to plead NYLL violations by Roc Nation.

#### 1. The FAC does not adequately plead unlawful deductions and failure to pay wages (Count I).

As Plaintiff's work with Mr. Cartagena ceased in 2020, to prevail under NYLL § 193, he is required to "allege a specific deduction from wages and not merely a failure to pay wages." *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016); *Komlossy v. Faruqi & Faruqi, LLP*,

20

2017 WL 722033, *14 (S.D.N.Y. Feb. 23, 2017) (Section 193 "has nothing to do with failure to pay wages" (citation omitted)); 2021 S.B. 858; 2021 A.B. 1893 Senate Bill (2021 amendment to §§ 193 & 198 permitting "liability…for the unauthorized failure to pay wages, benefits or wage supplements"). Plaintiff does not allege that Roc Nation made specific deductions from his wages but rather that other Defendants "typically" paid him $250 per show instead of $3,000 and "failed to pay agreed wages." (FAC ¶ 92.) Plaintiff's failure to allege a specific deduction, tied to any specific violation, is fatal to his claim. *Goldberg*, 667 F. App'x at 314; *Jensen v. AR Glob. Invs., LLC*, 2020 WL 1322584, *6 (S.D.N.Y. Mar. 20, 2020) (alleging a "total withholding of wages" is insufficient (citation omitted)).

### 2. The FAC does not allege unlawful failure to provide a wage notice by Roc Nation (Count II).

Count II fails as to Roc Nation because Plaintiff does not allege that Roc Nation improperly failed to prove him a wage notice. Under NYLL § 195, employers are required to furnish employees, "at the time of hiring, with a notice (1) describing the employee's rate of pay for regular and for overtime hours; (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024). Employers must also provide a wage statement that details how regular and overtime wages are calculated and includes information on deductions made and minimum wage allowances. *Id.* Though Plaintiff purports to assert Count II against Roc Nation, Roc Nation is conspicuously absent from the allegations of that count. (*Compare* FAC Count II (title) *with id.* ¶¶ 97-101.) Instead, Plaintiff alleges that Ms. Moreira "created, managed, and supervised" his payroll and that Sneaker Addict and Ms. Moreira prepared and issued his wage statements. (*Id.* ¶¶ 18, 33-34, 98-99, 200.) Because Plaintiff does not allege that Roc Nation

21

provided him wage statements or made deductions from his pay, or otherwise assert a basis for joint employer liability against Roc Nation for this count, he cannot assert a claim against Roc Nation.

### 3. The FAC does not adequately plead retaliation by Roc Nation (Count V).

Count V also fails as to Roc Nation because Plaintiff's claim is premised on conduct allegedly committed by other Defendants—not Roc Nation. NYLL retaliation requires: (1) a protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *See Zhang v. Centene Mgmt. Co.*, 2023 WL 2969309, *11 (E.D.N.Y. Feb. 2, 2023). Plaintiff does not allege any such conduct by Roc Nation, and his claim does not fit within the narrow categories of post-employment conduct recognized as retaliatory.

*First*, Plaintiff alleges that other Defendants—not Roc Nation—"threatened retaliatory legal proceedings," "escalated social-media threats," and "threatened to withhold or did withhold payments" based on his March 2025 demand letter to Mr. Cartagena and "public assertions of wage and copyright claims." (FAC ¶¶ 158, 160.) And he asserts that Roc Nation "took no steps to protect him from retaliation." (*Id.* ¶ 160.) But Roc Nation was not required to "protect" Plaintiff from others' purported retaliation, because it was never his employer. *See Chai v. New York Univ.*, 2024 WL 4042468, *9 (S.D.N.Y. Sept. 4, 2024) ("Because Plaintiff is not an employee … her NYLL retaliation claims … are dismissed."); NYLL § 215 ("No employer or his or her agent … shall … retaliate against any employee").

*Second*, in post-employment retaliation cases, only a "relatively narrow" range of conduct is potentially unlawful, "including threatening immigration-related consequences and instituting bad-faith litigation against the employee." *See Porter v. MooreGroup Corp.*, 2020 WL 32434, *11 (E.D.N.Y. Jan. 2, 2020) (cleaned up) (collecting cases). The alleged retaliatory conduct does not meet either test. While Plaintiff claims that Mr. Cartagena—not Roc Nation—"threatened

22

retaliatory legal proceedings" (FAC ¶ 160), Roc Nation is not a party to the referenced action and Plaintiff does not allege it is baseless.

***Finally***, Plaintiff asserts no facts supporting an inference that the alleged retaliation was causally connected to his demand letter. *See Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 245 (S.D.N.Y. 2013). To the contrary, he characterizes the "threats" as "renewed," implying that they occurred both prior to and after the March 2025 demand letter. (FAC ¶ 64.) Similarly, because he stopped working with Mr. Cartagena in 2020 (*id.* ¶ 8), any alleged threats to withhold his pay were either meaningless or occurred prior to his alleged protected activity and thus were not retaliatory. *See Pinero v. Long Is. State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) (retaliation cannot come before protected activity). Plaintiff's conclusory allegation that "these retaliatory acts were undertaken because [he] engaged in protected activity" (*id.* ¶ 66) does not warrant a contrary result. *See Hollington v. CDM Fed. Programs Corp.*, 2023 WL 2457057, *10 (S.D.N.Y. Mar. 10, 2023) ("retaliatory motive must be at least a substantial or motivating factor" (cleaned up)).

## III.    THE FAC FAILS TO PLEAD THAT ROC NATION AIDED AND ABETTED WAGE THEFT.

Plaintiff's aiding and abetting wage theft claim fails as a matter of law because the NYLL does not contemplate such a cause of action. Even if it did, the claim is deficient because Plaintiff has failed to (1) allege a viable underlying NYLL claim (as discussed *supra*) or (2) allege with plausibility that Roc Nation knew of or substantially assisted any such violation.

### A.    Aiding and abetting is not cognizable under the NYLL.

Canons of statutory interpretation confirm that aiding and abetting an NYLL violation is not a cognizable cause of action. When interpreting a statute, the "primary consideration is to discern and give effect to the Legislature's intention." *Avella v. City of New York*, 29 N.Y.3d 425,

23

434 (2017) (citation omitted).  The text of a statute is the "clearest indicator" of such legislative intent.  *Id.*  A court "cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact."  *People v. Hardy*, 35 N.Y.3d 466, 474 (2020) (citation omitted).  Nor should courts, "by implication, read or supply in a statute a provision which it is reasonable to suppose the Legislature intentionally omitted."  *Id.*  Here, the NYLL unambiguously creates liability for employers, stating that "[n]o ***employer*** shall make any deduction from the wages of an employee" that are not permitted (Section 193), that every "***employer***" must abide by certain notice and record-keeping requirements (Section 195), and that any "***employer***" who fails to pay wages may be subject to a civil penalty and costs (Sections 197-198).  (Emphases added.)  It does not, however, contain any reference to or otherwise provide for a claim for aiding and abetting.  No such claim can exist here.  The court should dismiss it with prejudice.

Though no New York court has squarely addressed this issue, at least one federal court has.  In *McInnes v. S. Poverty Law Center, Inc.*, the Middle District of Alabama considered this question in the context of NYLL's wrongful termination section and answered it in the negative.  811 F. Supp. 3d 1319, 1328 (M.D. Ala. 2025).  The court reasoned that "nowhere in the text, whether explicitly, implicitly, or by inference, does the [NYLL] provide for aider-and-abettor liability" and declined to read such liability into the text itself.  *Id.*  The court also acknowledged that "[w]hen New York's legislature wished to create aider-and-abettor liability under other statutes, it has done so," referencing the New York State Human Rights Law (the "NYSHRL") as one such example.  *Id.*  Indeed, unlike the NYLL, both the NYSHRL and its NYC counterpart (the "NYCHRL") explicitly make it unlawful for any person to "aid, abet, incite, compel or coerce" the commission of acts prohibited under the statutes.  *See* NYSHRL § 296(6); NYCHRL § 8-

24

107(6). This Court should, like *McInnes*, decline to read an aiding-and-abetting cause of action into the statute and should dismiss Plaintiff's aiding-and-abetting wage theft claim with prejudice. *McInnes*, 811 F. Supp. 3d at 1328.

### B. Plaintiff does not adequately plead a hypothetical aiding-and-abetting claim.

Even if such a claim existed (it doesn't), the FAC would not suffice. "For an aiding and abetting claim to survive a motion to dismiss, a plaintiff must adequately plead the existence of a primary tort," "knowledge of the [underlying misconduct]," and "that the defendant provided substantial assistance to advance" the commission of the tort. *Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 186-87 (S.D.N.Y. 2009). As discussed *supra* Section II.B(1), Plaintiff is an independent contractor. He cannot assert a viable NYLL claim as a matter of law. *See Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405, 424 (S.D.N.Y. 2022) (plaintiff "cannot plead … aiding and abetting fraud" where it failed to sufficiently "plead a common law fraud claim"). In any event, he fails to plead actual knowledge and substantial assistance.

#### 1. Plaintiff fails to plead that Roc Nation had actual knowledge.

The FAC's aiding-and-abetting claim would fail because Plaintiff cannot plead allegations that plausibly suggest Roc Nation was aware of underlying NYLL violations. "Actual knowledge is required to impose liability on an aider and abettor…." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). Constructive knowledge or general awareness is insufficient. *See Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 387 (S.D.N.Y. 2007). Though Plaintiff asserts Roc Nation had "actual knowledge" (FAC ¶ 213), his theory of liability is premised on constructive knowledge. He alleges that (1) he directed several complaints to Mr. Castillo "about chronic underpayment, missing per diems, and lack of backend compensation"; (2) Roc Nation had "access to tour settlement sheets, budgets, and performance contracts" that displayed the amounts paid to

25

Plaintiff; and (3) Roc Nation "approved tour budgets and performance schedules" (*id.* ¶ 208). But these allegations do not create a plausible inference that Roc Nation had actual knowledge *of wage theft*. He does not allege that Roc Nation participated in the alleged wage-theft scheme. He does not allege that he complained to anyone within Roc Nation's management, that Mr. Castillo escalated them to management, or that he asked Mr. Castillo to do so. These allegations would not even be sufficient to allege constructive knowledge, let alone actual knowledge. *See, e.g.*, *Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 352 (S.D.N.Y. 2006) (constructive knowledge not established where "Plaintiff introduced no evidence to establish that any person at the Department who was aware of the harassment either was a 'management level' employee or was charged with a duty to stop and/or inform the City of the offensive conduct."). And Plaintiff does not allege that Roc Nation knew what he purportedly *should have* been paid. Plaintiff's failure to plead a basis for actual knowledge is fatal to his aiding-and-abetting claim. *See, e.g.*, *Mazzaro*, 525 F. Supp. 2d at 388 (allegations that bank knew transfers "occurred within three days of receipt of funds" and accounts "rarely had balances of more than $4 million" insufficient for *actual* knowledge of fraud); *Hightower v. Cohen*, 2009 WL 9042127, *5 (E.D.N.Y. Sept. 30, 2009) (failure to allege actual knowledge of Ponzi scheme warranted dismissal of aiding and abetting).

### 2. Plaintiff fails to plead Roc Nation substantially assisted any NYLL violation.

The aiding-and-abetting claim would fail for the additional reason that the FAC does not adequately plead substantial assistance. Substantial assistance exists if Plaintiff pleads defendant (1) affirmatively assisted, helped conceal, or by virtue of failing to act when required to do so enabled the fraud to proceed; and (2) its actions proximately caused the harm on which the primary liability is predicated. *In re Agape Litig.*, 773 F. Supp. 2d 298, 322 (E.D.N.Y. 2011). Plaintiff makes no such allegations.

26

Plaintiff alleges Roc Nation "provided substantial assistance" to other Defendants by (1) "approving and scheduling tour dates" without assuring "a dedicated payment obligation to [Plaintiff] at his contractually agreed rate"; (2) "[n]ot requiring that Plaintiff be separately contracted, credited or budgeted at his agreed … per-show rate"; (3) "[f]ailing to investigate Plaintiff's complaints" or "require transparent payment systems"; and (4) "[c]ontinuing to manage Cartagena." (FAC ¶ 211.)  At their core, these allegations merely assert that Roc Nation continued to provide services in the ordinary course of business and failed to take corrective action.  But neither amounts to substantial assistance.  *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 423, 427 (S.D.N.Y. 2007) (even if plaintiff established defendant "knew about the fraudulent scheme and its role in the fraudulent scheme," bank's provision of "usual banking services to a customer" was not substantial assistance); *Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, 2019 WL 2327810, *18 (S.D.N.Y. May 30, 2019) (requiring "affirmative assistance in [the] illegal plot, concealment, or a failure to act in the face of a legal duty to do so"); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 417 (S.D.N.Y. 2021) ("inaction or inadequate response … does not constitute substantial assistance").  And since Plaintiff only pleads conduct consistent with ordinary-course management activities—for example, approving tour budgets and schedules—he has "not adequately pled [Roc Nation] to have been the proximate cause of the alleged fraud." *Vasquez*, 2019 WL 2327810, *19.  The Court should dismiss Count IX as to Roc Nation.

**CONCLUSION**

For the foregoing reasons, Roc Nation respectfully requests that this Court grant its motion in its entirety and dismiss Plaintiff's claims against Roc Nation with prejudice.

Dated: New York, New York
      May 15, 2026

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:

Alex Spiro
Joanna E. Menillo
alexspiro@quinnemanuel.com
joannamenillo@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

*Attorneys for Defendant Roc Nation*

28

## **CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(C) of Hon. Jennifer L. Rochon Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 8,619 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(C) of Judge Rochon's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on this 15th day of May, 2026 in New York, New York.


*/s/ Alex Spiro*
Alex Spiro