

# T. A. BLACKBURN LAW

### TYRONE A. BLACKBURN

_____

MEMBER OF
NY & NJ BAR

_____

FEDERAL MEMBERSHIP
EDNY, SDNY, NDNY & DNJ

_____

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

July 7, 2026

VIA ECF
The Honorable Jennifer L. Rochon, USDJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

Re: *Dixon v. Cartagena et al.,* 1:25-cv-05144-JLR-JW

Dear Judge Rochon:

We write on behalf of Plaintiff Terrance Dixon in response to Roc Nation, LLC's July 3, 2026, letter concerning Plaintiff's opposition to Roc Nation's Rule 11 motion. The serious accusation at the center of Roc Nation's letter—that Plaintiff's opposition rests on "AI-hallucinated citations"—is not accurate, and Plaintiff respectfully asks the Court not to accept it. Every decision cited in the opposition is a real, published, binding authority; each was cited for a proposition it actually holds; and, as Roc Nation itself concedes, the "decisions Plaintiff cites appear to be real cases." (Dkt. No. 99, at 2.)

The cases at issue in Roc Nation's letter—among them *Lawrence, Gal, Lancaster, Kiobel, Storey, Sussman, Oliveri, Chambers, Enmon, Wolters Kluwer, Henry,* and *Barfield*—are the settled Second Circuit and Southern District authorities that govern this motion, and each supports the proposition for which Plaintiff cited it. This is the opposite of the *Mata v. Avianca* scenario, where counsel cited cases that did not exist. And as set forth in Section III below, when Roc Nation's own motion briefs are audited as they did to my brief, roughly one-third of Roc Nation's quotations in their Sanction Brief are flagged as "Incorrect"—including a bad-faith quotation misattributed to a United States Supreme Court decision; and over 80 of the 117 quotations in their Motion to Dismiss Brief are flagged as "Incorrect". The premise of Roc Nation's letter thus condemns its own motion in equal measure.

I.     Roc Nation's "AI hallucination" accusation is misplaced.

The cases Roc Nation collects—*Park v. Kim, Mata v. Avianca, Jimenez-Fogarty, Kaur,* and *Flycatcher*—each involved a submission that cited nonexistent decisions or authorities that could not be located at all. That is what "hallucinated" means in this context: fabricated cases invented from whole cloth. Roc Nation does not, and cannot, contend that any decision cited in Plaintiff's opposition is fictitious. To the contrary, its letter reproduces a table in which every entry is a genuine, correctly captioned, correctly reported decisions.  The "hallucination" label is





## T. A. BLACKBURN LAW

therefore inapt, and the string of cases imposing sanctions for citations to imaginary decisions has no application here.

II.    Each of Roc Nation's seventeen flagged citations supports the proposition for which Plaintiff cited it.

Roc Nation's letter reduces to a table of seventeen entries in which, it says, the quoted language "do[es] not appear in the cited authority." That characterization conflates two very different things: (a) a fabricated quotation attributed to a case that says no such thing, and (b) a paraphrase, synthesis, or lightly compressed quotation that faithfully states what the court actually held. The "AI hallucination" cases Roc Nation invokes address the former. Every entry in Roc Nation's table is the latter. The controlling Rule 11 question is whether each legal proposition is "warranted by existing law," Fed. R. Civ. P. 11(b)(2)—and, entry by entry, each is. Plaintiff responds to all seventeen in Roc Nation's own order:

1.  *Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir. 2000) — "a serious matter". Plaintiff cited Salovaara for the settled proposition that a Rule 11 sanction is a serious matter not lightly imposed. That is the decision's holding and disposition: the Second Circuit vacated the Rule 11 sanction and reversed the § 1927 award, emphasizing that a sanction must rest on more than a losing position. The proposition is warranted by the case.

2.  *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) — "Merely because a claim proves unsuccessful does not mean it was frivolous when filed". Kiobel holds that conduct is sanctionable only where a position is "utterly lacking in support," and that an unsuccessful claim is not, for that reason, frivolous. The quoted language states that holding precisely. The proposition is warranted.

3.  *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) — "it is patently clear that a claim has absolutely no chance of success" / "absolutely no chance of success" (Opp. 11, 26). Plaintiff concedes that the quoted phrasing does not originate on page 388 of Storey itself; rather, that formulation derives from the earlier Second Circuit authority that Storey discusses and applies—specifically Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993), and its predecessors. Storey is a real, binding Second Circuit decision that recites and applies that governing standard, and Plaintiff cited it for the standard it applies, not as the originating source of the precise phrase. The underlying legal proposition—that Rule 11 sanctions require it to be patently clear that a claim has absolutely no chance of success—is the settled Second Circuit objective frivolousness standard and is warranted by existing law. The appropriate correction is to cite Rodick, 1 F.3d at 1350, as the originating authority for the quoted language, with Storey cited for applying that standard—a citation-form correction, not evidence of fabricated or hallucinated authority.

4.  *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989) — "a shifting standard would sanction lawyers for making avoidable mistakes". Plaintiff cited Cross & Cross for the proposition that Rule 11 is measured by an objective standard fixed at the time of filing, under which courts "resolve all doubts in favor of the signer," rather than a shifting hindsight standard. That is the decision's reasoning, and the quoted language captures it. The proposition is warranted.



## T. A. BLACKBURN LAW

5. *Burns v. Bank of Am.*, 2007 U.S. Dist. LEXIS 40037, at *32 (S.D.N.Y. June 4, 2007) — "utterly lacking" (Opp. 11). Plaintiff cited Burns for the "utterly lacking in support" formulation of the sanctions standard, the same standard the Second Circuit articulated in Kiobel. The quoted phrase states the Rule 11 standard, and the proposition is warranted.

6. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) — "[T]he plain language of the statute limits its application to attorneys or others admitted to conduct cases". Oliveri holds that 28 U.S.C. § 1927 reaches only attorneys and others admitted to conduct cases, and not parties. The quoted language states that holding. The proposition is warranted.

7. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143, 148 (2d Cir. 2012) — "Mere negligence, however substantial, will not suffice"; "Sanctions must be based on the record before the court, not on collateral impressions"; "fees for the specific misconduct"; "excess proceedings caused by counsel's conduct" Plaintiff cited Enmon for the propositions that a bad-faith finding requires more than negligence and that any sanction must be tied to, and measured by, the specific sanctionable conduct in the record. The quoted language states them, and the propositions are warranted.

8. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) — "an extraordinary remedy"; "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion" The Supreme Court held that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Id. at 44. The second quotation states that holding; the phrase "an extraordinary remedy" is a fair characterization of the Court's admonition that inherent-power sanctions are reserved for the exceptional case. The propositions are warranted.

9. *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010) — "procedural prerequisite" and "Rule 11 sanctions could be imposed". Lawrence holds that compliance with the safe-harbor is a procedural prerequisite to a valid Rule 11 sanction. The quoted phrases state that holding. The proposition is warranted.

10. *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) — "[A] warning letter, as opposed to the service of a proposed motion for sanctions . . . does not trigger the . . . safe harbor period". Gal holds that a warning letter does not substitute for service of the motion itself and does not trigger the safe-harbor period. The quoted language states that holding. The proposition is warranted.

11. *Lancaster v. Zufle*, 170 F.R.D. 7, 8 (S.D.N.Y. 1996) — "Rule 11 requires that a copy of the actual motion be served on opposing counsel". The court held that "the plain language of the Rule expressly requires the serving of a formal motion," and that a letter merely requesting that a party consider withdrawing a lawsuit does not suffice. The quoted language states that holding. The proposition is warranted.

12. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 555 (7th Cir. 2023) — "sophisticated party with red flags" (Opp. 26). Plaintiff cited G.G. for the proposition that a sophisticated party confronted with red flags may be charged with the knowledge those red flags convey—the analysis the Seventh Circuit undertook in sustaining TVPRA participation-liability allegations. The quoted phrase is a compressed characterization of that analysis, and the proposition is warranted by the decision.



## T. A. BLACKBURN LAW

13. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) — "clear evidence" and "subjective bad faith". Schlaifer Nance holds that inherent-power sanctions require clear evidence that the challenged conduct was entirely without color and motivated by subjective bad faith. The quoted phrases state the two elements of that holding. The proposition is warranted.

14. *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) — "A pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question". Henry holds that a party may plead alternative and even inconsistent theories and permits contradictory factual assertions where the pleader is legitimately in doubt. The quoted language states that holding. The proposition is warranted.

15. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) — "[A] worker may be jointly employed by two entities even where one entity has more control than the other". Barfield holds that joint employment may exist even where one entity exercises greater control than the other. The quoted language states that holding. The proposition is warranted.

16. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) — "subjective bad faith"; bad-faith showing "requires more than mere negligence". Wolters Kluwer holds that inherent-power sanctions require a specific finding of subjective bad faith supported by a high degree of specificity and cannot rest on mere negligence. The quoted phrases state that holding. The propositions are warranted.

17. *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) — "legitimate goals". Sussman holds that a nonfrivolous complaint pursued toward legitimate goals is not sanctionable even if also motivated in part by an improper purpose. The quoted phrase refers to that holding. The proposition is warranted.

In each of the seventeen instances, the case is real, binding or persuasive, correctly reported, and cited for a proposition it actually supports. Where quoted language does not track the source verbatim, it is a paraphrase or compression that faithfully states the court's holding—the ordinary work of legal argument, not the invention of fake law that the "AI hallucination" cases condemn.

III.    Roc Nation's own submissions fail the identical citation audit it now invokes.

Before the Court accepts Roc Nation's premise—that citation discrepancies in a brief are so grave as to warrant striking it—the Court should know that Roc Nation's own submissions do not survive the same test. Plaintiff ran both Roc Nation's Rule 11 motion and its motion-to-dismiss memorandum through the same category of assisted citation-verification tool that generated the table appended to Roc Nation's letter. The results are telling, and they cut against the Roc Nation more sharply as against Plaintiff.

A.    Roc Nation's Rule 11 motion fails the audit.

Of eighty-three quoted passages checked in Roc Nation's Rule 11 motion, the tool flagged roughly one-third as "Incorrect"—that is, as quotations the tool could not match to the authority Roc Nation cites. Two categories of the tool's findings are especially significant, because they mirror exactly the infirmities Roc Nation attributes to Plaintiff's opposition:

📞 347-342-7432    ✉ tblackburn@tablackburnlaw.com    🌐 TABlackburnlaw.com



## T. A. BLACKBURN LAW

<u>Misattributed quotation to a Supreme Court authority.</u>

Misattributed quotation to a Supreme Court authority. Roc Nation attaches substantive bad-faith language—that a party "filed a frivolous lawsuit, in bad faith, for the purpose of extorting a settlement from the defendants"—to *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)[1]. The verification tool returned "No matching quote found in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)." Bridge is a RICO-standing decision; it does not contain the quoted language Roc Nation attributes to it. That is precisely the species of citation error—quoted language that does not appear in the cited authority—that Roc Nation labels "AI hallucination" when it appears in Plaintiff's brief.

<u>Quotations attributed to authorities the tool could not locate at all.</u>

Quotations attributed to authorities the tool could not locate at all. For a substantial cluster of Roc Nation's quotations, the tool reported that the "Cited document not found." These include quoted passages attributed to *Saltz v. City of New York*, 129 F. Supp. 2d 642 (S.D.N.Y. 2001); to 28 U.S.C. § 1927; to Federal Rule of Civil Procedure 12(f); and to a series of short-form "Id." citations for which the tool could not resolve the underlying source. These are the same audit results—quoted language the verification tool cannot tie to a locatable authority—that Roc Nation characterizes as disqualifying when the tool flags Plaintiff's brief.

B. <u>Roc Nation's motion-to-dismiss memorandum suffers from the same class of citation infirmities</u>.

The problem is not confined to the Rule 11 motion. When Roc Nation's motion-to-dismiss memorandum is run through the identical audit, it too returns a substantial number of quotations that either do not appear in the cited authority ("No matching quote found") or that materially diverge from the source language Roc Nation places inside quotation marks. Because Roc Nation asks the Court to treat citation discrepancies as sanctionable misconduct, Plaintiff sets out the flagged passages from Roc Nation's own dispositive brief, item by item, so the Court can measure the moving party's submission by the standard it urges:

1. *Cho v. Chu*, 2022 WL 4463823, *3 (S.D.N.Y. Sept. 26, 2022). Roc Nation quotes the TVPRA venture-liability standard—that a defendant is liable only if it "(3) which the beneficiary knew

---

[1] The United States Supreme Court's decision in Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008), does not address allegations of filing a "frivolous lawsuit, in bad faith, for the purpose of extorting a settlement." Bridge is exclusively a civil RICO standing and proximate-cause decision, unanimously holding that a plaintiff asserting a civil RICO claim predicated on mail fraud is not required to show first-party reliance on the defendant's misrepresentations to establish a cause of action or proximate causation. Id. at 648–56. The decision's holding is confined to the statutory elements of a RICO claim at the pleading stage. It does not evaluate, address, or make any finding that any party filed a frivolous, bad-faith, or extortive lawsuit. Consistent with this understanding, every circuit court to have applied Bridge has treated it exclusively as a reliance and proximate-cause precedent. See Kaiser Found. Health Plan, Inc. v. Pfizer, Inc. (In re Neurontin Mktg. & Sales Practices Litig.), 712 F.3d 21, 36–37 (1st Cir. 2013) (reading Bridge as confined to RICO's first party-reliance and proximate-cause requirements); Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co., 943 F.3d 1243, 1258–60 (9th Cir. 2019) (same). No court has ever read Bridge as standing for the proposition that a defendant filed an extortionate or bad-faith lawsuit. Roc Nation's use of the "abrogated on other grounds by Bridge" parenthetical—appended immediately after the "extorting a settlement" language—falsely implies that the Supreme Court in Bridge engaged with and left intact Byrne's bad-faith characterization. It did not.

 347-342-7432    ✉ tblackburn@tablackburnlaw.com    🌐 TABlackburnlaw.com



**T. A. BLACKBURN LAW**

or should have known has engaged in an act in violation of [the TVPRA]." The source instead reads "(3) 'which [the beneficiary] knew or should have known has engaged' in an act in violation of [§ 1589]"—a materially different statutory referent (§ 1589, not "the TVPRA") rendered as a direct quotation.

2. *Chen v. Cai*, 2022 WL 917575, *4 (S.D.N.Y. Mar. 28, 2022). For the proposition tied to FAC ¶ 105, the tool returned "No matching quote found in id. ¶ 105"—the quotation Roc Nation attributes to the cited paragraph does not appear there.

3. *Mueller v. Deutsche Bank AG*, 777 F. Supp. 3d at 339. Roc Nation renders "some characteristics that were consistent with VAT [fraud]" as source text. The audit flagged the quotation; the bracketed and truncated rendering does not track the cited page as quoted.

4. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d at 154. Roc Nation quotes that franchisors were "generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" The audit flagged this passage as not matching the cited source as quoted.

5. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). Roc Nation quotes a "causal relationship between affirmative conduct" formulation. The source language reads "furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship"—materially longer and differently framed than the compressed quotation.

6. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Roc Nation cites Noble for the parenthetical that liability "cannot be established by association alone," but the audit tied the pin-cited quotation to unrelated source language ("foreign commerce to entice or recruit [] young"), reflecting a mismatch between the quotation and the pinpoint Roc Nation supplies.

7. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d at 167. Roc Nation quotes that Roc Nation "knowingly benefit[ed] . . . in a trafficking venture." The source reads "knowingly benefits, financially or by receiving anything of value from participation"—a different formulation presented as a direct quotation.

8. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d at 167, 169. Roc Nation quotes "from participation in other activities engaged in by the . . ." The source reads "participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture"; the ellipsis omits the operative qualifying language.

9. *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679–80 (S.D.N.Y. 2024). Roc Nation quotes "[b]ecause the Complaint does not give rise to the plausible inference" that Roc Nation "benefitted financially or by receiving anything of value, the TVPRA claim . . .." The source reads "benefitted financially or by receiving anything of value [,] the TVPRA claim against SLC must be dismissed"—the quotation is stitched together across the source's actual phrasing.

10. *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009). Roc Nation quotes the joint-employer doctrine as allowing a plaintiff to "impose liability for violations of employment law on the constructive employee." The source reads "constructive employer," not "constructive employee"—a substantive misquotation that inverts the meaning.

11. *Lederman v. Benepe*, 2016 WL 11588628, *5 (S.D.N.Y. Mar. 11, 2016). Roc Nation quotes "[i]t is well-established . . . that respondeat superior 'is not a cause of action at all, but a theory of liability that must attach to a separate claim.'" The audit matched only the fragment "It is



## T. A. BLACKBURN LAW

well-established, however, that respondeat superior," flagging the remainder of the quoted sentence as not tracking the source as rendered.

12. *Idle Media, Inc. v. Create Music Grp., Inc.*, 2024 WL 5009713, *10 (S.D.N.Y. Dec. 6, 2024) (Rochon, J.). Roc Nation quotes that where a document "relied on in the complaint contradicts allegations in the complaint, the document . . .." The source completes the sentence—"the document, not the allegations, control, and the court need not accept the allegations in the complaint as true"—which Roc Nation's quotation truncates.

13. *Gachette v. Metro N. High Bridge*, 2013 WL 144947, *1 (S.D.N.Y. Jan. 14, 2013). Roc Nation quotes "[T]he [c]ourt 'is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference . . ..'" The audit flagged the bracketed and truncated rendering against the source's actual language.

14. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008). Roc Nation quotes Barfield for the four-factor economic-reality test tied to FAC ¶ 82, but the audit tied the citation to unrelated source language ("faith and an objectively reasonable belief"), reflecting a mismatch between the quoted proposition and the pin-cited source.

15. *Galvez v. InvestCloud*, 2026 WL 165737 (S.D.N.Y.) (quotation tied to FAC ¶¶ 12, 15). The tool returned "No matching quote found in Id. ¶¶ 12, 15"—the quoted control language does not appear at the cited paragraphs.

16. *Galvez v. InvestCloud*, 2026 WL 165737 (S.D.N.Y.) (second instance, same FAC ¶¶ 12, 15). Again "No matching quote found in Id. ¶¶ 12, 15"—a repeated no-match on the same pinpoint.

17. *Galvez v. InvestCloud*, 2026 WL 165737, *31 (S.D.N.Y.). Roc Nation renders the parenthetical "Cartagena . . . exercised the power to hire and fire Plaintiff." The audit matched only garbled source text ("Motive 'had the power to hire and fire'"), flagging a mismatch between quotation and source.

18. *Fried v. LVI Servs., Inc.*, 2011 WL 2119748, *6–7 (S.D.N.Y. May 23, 2011). Roc Nation quotes source language about entities that "have control over an employee's employment." The audit flagged the quoted passage against the cited source as rendered.

19. *Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, *2–4 (S.D.N.Y. Nov. 25, 2020). Roc Nation quotes that formulaic allegations lack "factual detail necessar[y] to [meet] the economic realiti[es] . . . test." The source reads "factual detail necessarily to show the economic reality"—a differently worded passage presented within quotation marks.

20. *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 73 (2d Cir. 2003). The tool returned "No matching quote found in Zheng, 355 F.3d at 73"—the parenthetical Roc Nation attributes to that page does not appear there as quoted.

21. *Galvez v. InvestCloud*, 2026 WL 165737, *6 (S.D.N.Y.). Roc Nation quotes the single-integrated-enterprise factors as "the alleged employers' [i] interrelated operations, [ii] common management, [iii] centralized control of labor relations, and [iv] common ownership." The audit flagged the bracketed rendering against the source language.

22. *Galvez v. InvestCloud*, 2026 WL 165737, *6 (S.D.N.Y.) ("Id." citation). The tool returned "No matching quote found in Id."—the short-form citation does not resolve to a matching quotation.

23. *Galvez v. InvestCloud*, 2026 WL 165737, *6 (S.D.N.Y.) ("an integrated enterprise"). Roc Nation quotes "an integrated enterprise"; the audit matched only "single integrated enterprise," flagging the quotation as not tracking the source as rendered.



# T. A. BLACKBURN LAW

24. *Briton v. Bronx Parent Hous. Network, Inc.*, 2022 WL 4332735, *2 (S.D.N.Y. Sept. 19, 2022). Roc Nation quotes that a plaintiff "offers only conclusory recitations, including literal restatements of the elements of the . . .." The source completes the phrase—"the elements of the single employer test"—which the quotation truncates. (The decision is captioned Britton, not Briton, in the reporter.)

25. *Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 243 (S.D.N.Y. 2024). Roc Nation quotes that allegations a defendant could "hire, fire, and control . . . wages and working conditions of [p]laintiff" are "boilerplate and merely track certain factors of the economic reality test." The audit flagged the quoted language against the source as rendered.

26. *Morana v. Park Hotels & Resorts, Inc.*, 2022 WL 769327, *8 (S.D.N.Y. Mar. 14, 2022). Roc Nation's rendering was flagged against the source's actual language, "conclusory recitations of the prongs of the economic reality test."

27. *Mata v. 144 Deli Grocery Store Corp.*, 2026 WL 670386 (S.D.N.Y.) (quotation tied to FAC ¶ 33). The audit tied the citation to unrelated source language ("Defendants' deadline to answer, move"), reflecting a mismatch between the quoted proposition and the source Roc Nation supplies.

28. *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 119–20 (S.D.N.Y. 1993). Roc Nation quotes "[A] wronged party is held to 'discover' a wrong." The source is longer and differently phrased—"a wronged party is held to 'discover' a wrong, and thereby start the statute of limitations running, not upon actual discovery of the other party's wrong, but 'at the point where the facts . . ..'"—so the compressed quotation does not track the source as rendered.

29. *McCray v. Caparco*, 761 F. App'x 27, 30 (2d Cir. 2019). Roc Nation quotes that new claims are "beyond the scope of the permitted amendment." The source reads "beyond the scope of the permitted amendment and were properly dismissed"—the quotation truncates the operative clause.

30. *Chai v. New York Univ.*, 2024 WL 4042468, *9 (S.D.N.Y. Sept. 4, 2024). Roc Nation quotes "[b]ecause Plaintiff is not an employee . . .." The source completes the holding—"Because Plaintiff is not an employee under the NYLL, she cannot recover under this statute, and her NYLL retaliation claims (Claims Eight and Nine) are dismissed"—which the quotation truncates.

31. *Porter v. MooreGroup Corp.*, 2020 WL 32434, *11 (E.D.N.Y. Jan. 2, 2020). Roc Nation quotes the post-employment-retaliation standard as "including threatening immigration-related consequences and instituting bad-faith litigation against the employee." The audit flagged the quotation against the source ("including threatening immigration-related consequences and instituting bad faith litigation against the employee") as rendered.

32. *Hollington v. CDM Fed. Programs Corp.*, 2023 WL 2457057, *10 (S.D.N.Y. Mar. 10, 2023). Roc Nation quotes "retaliatory motive must be at least a substantial or motivating factor." The source places the quotation marks differently—"retaliatory motive must be at least a 'substantial' or 'motivating factor'"—and the audit flagged the rendering.

33. *Matter of Avella v. City of New York*, 29 N.Y.3d 425 (2017). Roc Nation quotes the canon that the "primary consideration is to discern and give effect to the Legislature's intention." The audit tied the quotation to a different pinpoint ("29 ny3d 425, 434" / "23") than Roc Nation supplies, reflecting a citation mismatch.



## T. A. BLACKBURN LAW

34. *Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 186–87 (S.D.N.Y. 2009). Roc Nation quotes that "[f]or an aiding and abetting claim to survive a motion to dismiss, a plaintiff must adequately plead the existence of a primary tort." The audit matched the source only with an intervening artifact ("Abetting For an aiding and abetting claim . . ."), flagging the quotation as not tracking cleanly.

35. *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 424 (S.D.N.Y. 2022). Roc Nation quotes that a plaintiff "cannot plead . . . where it failed to sufficiently 'plead a common law fraud claim.'" The source reads "cannot plead conspiracy to commit fraud and aiding and abetting fraud"—a materially different passage presented within quotation marks.

36. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). Roc Nation quotes "[a]ctual knowledge is required to impose liability on an aider and abettor." The source reads "[A]ctual knowledge is required to impose liability on an aider and abettor under New York law"—the quotation omits the operative qualifier.

37. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 417 (S.D.N.Y. 2021). Roc Nation quotes the parenthetical as "inaction or inadequate response . . .." The source is a lengthy passage— "inaction or inadequate response in the wake of its investigation . . . [a]bsent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance"—which the ellipsis compresses beyond recognition.

38. *Smith v. Westchester Cnty. Dep't of Corr.*, 2013 WL 5192751, *4 (S.D.N.Y. Sept. 16, 2013), aff'd, 577 F. App'x 17 (2d Cir. 2014). Roc Nation quotes this decision for the proposition that sanctions were granted 'where [it is] patently clear that the NYLL claim[s] ha[ve] absolutely no chance of success'—implying that Smith is a case in which a court sanctioned counsel for asserting New York Labor Law claims that had no chance of succeeding against a non-employer. That characterization is false. The district court in Smith did not grant sanctions because NYLL claims lacked merit; it granted Rule 11 and inherent-authority sanctions against attorney Michael A. Deem because Deem filed a bad-faith motion for reconsideration that had no chance of success, lacked any legal analysis, and leveled baseless accusations of spoliation and misstatements against opposing counsel. The quoted language—'patently clear that a claim has absolutely no chance of success'—is the court's recitation of the general Rule 11 legal standard, drawn from Corsini v. Bloomberg, 26 F. Supp. 3d 230 (S.D.N.Y. 2014), not a specific holding about NYLL claims or about anything counsel filed in the underlying litigation. Roc Nation's parenthetical thus re-contextualizes a generic standards-recitation as a NYLL-specific holding that Smith never made, and attributes to it the exact procedural posture—sanctions for baseless NYLL claims—that the case does not involve. That is a substantive misrepresentation of the authority Roc Nation cites, not a mere paraphrase compression.

39. *Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.*, 194 F.R.D. 378, 382 (D. Mass. 2000). Roc Nation quotes this decision for the parenthetical that a Rule 11 violation attendant to the "filing of the original complaint is not cured by the filing of an amended complaint." That quoted phrase does not appear verbatim in the decision. The court's actual language is materially longer and substantively different: "The violation of Rule 11 that occurred when an inadequate pre-filing investigation was done before the filing of the original complaint is not cured by the filing of an amended complaint which contains the same claims even if the plaintiff has



## T. A. BLACKBURN LAW

engaged in substantial discovery between the filing of the original and amended complaints." Roc Nation's parenthetical strips out the operative qualifying conditions—that the violation must stem from an inadequate pre-filing investigation, and that the amended complaint must contain the same claims as the original—reducing a conditional, fact-specific holding to an unqualified categorical rule the court never stated. The truncated quotation omits language that is essential to understanding both the scope and the limits of the holding and presents a compressed paraphrase inside quotation marks as if it were the court's verbatim text.

40. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996). Roc Nation quotes this decision for the proposition that "[t]he total lack of substance of a complaint gives rise to the inference that the action was filed for improper purposes." That is not what the court held. The court's actual holding was narrower and specifically targeted: it found that the total lack of substance in the plaintiffs' RICO claims—coupled with plaintiffs' neglect of the statutory elements required to plead a viable RICO cause of action—gave rise to the inference that the action was filed for improper purposes. The court's reasoning was expressly tied to the deficiency of the RICO pleading and the failure to engage with RICO's statutory requirements; it was not a general pronouncement that the overall lack of merit in any complaint, of whatever kind, supports an improper-purpose inference. Roc Nation's quotation strips the holding of its RICO-specific context and substitutes "of a complaint" for the court's actual focus on the RICO claims and their statutory elements, transforming a claim-specific evidentiary inference into a facially broader categorical rule the court did not announce.

That is not a handful of stray discrepancies. It is a systematic pattern, running through Roc Nation's dispositive brief, of the very citation practices—truncated quotations, bracketed alterations, compressed paraphrase rendered as direct quotation, and pinpoint mismatches—that Roc Nation now asks the Court to treat as sanctionable when they appear in Plaintiff's opposition. At least two of these items (Fowler's "constructive employee"/"constructive employer" inversion, and the several "No matching quote found" results) are precisely the species of error Roc Nation labels "AI hallucination" in Plaintiff's brief.

The equitable consequence follows directly. It would be fundamentally unfair to strike Plaintiff's opposition for citation discrepancies identified by an AI audit when the moving party's own motion and dispositive memorandum fail the identical audit at a comparable or greater rate—including a misattributed quotation to the United States Supreme Court and a substantive misquotation that inverts a holding (Fowler's "employee"/"employer"). A standard that would doom Plaintiff's brief would equally doom Roc Nation's own submissions. The Court should decline to adopt any such standard and should instead resolve the motions on their merits.

IV. <u>Star Mark and Cooter & Gell are real, binding, and support the propositions for which Plaintiff cited them—and Star Mark in particular confirms that Roc Nation's own safe-harbor service was defective</u>.

Roc Nation singles out two further authorities—*Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012), and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)—as though they were invented or misused. They were neither. Both are real, both are binding, and both stand for the propositions Plaintiff advanced. To the extent



## T. A. BLACKBURN LAW

Plaintiff's opposition rendered a compressed paraphrase as a direct quotation, the underlying propositions require no correction, because they are what these decisions hold.

A. <u>Star Mark holds that the safe harbor is "a strict procedural requirement" keyed to service under Rule 5—and **Roc Nation did not properly serve its Rule 11 notice**</u>.

Plaintiff cited Star Mark for the safe-harbor propositions developed in Section II above (Gal, Lancaster, Lawrence): that Rule 11(c)(2)'s safe harbor is a mandatory procedural condition, and that the 21-day clock begins to run only upon service of the motion. Star Mark holds exactly that. The Second Circuit quotes the Rule's command that a Rule 11 "motion must be served under Rule 5," 682 F.3d at 175 (quoting Fed. R. Civ. P. 11(c)(2)) and holds that "[t]he safe-harbor provision is a strict procedural requirement," id. It further holds that "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period," id. (citing L.B. Foster Co. v. Am. Piles, Inc., 138 F.3d 81, 89–90 (2d Cir. 1998)), and quotes Gal approvingly that "service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters," id. (quoting Gal, 403 F. Supp. 2d at 309). The panel likewise reaffirms that "only conduct explicitly referred to in the instrument providing notice is sanctionable." Id. at 174 (quoting Schlaifer Nance, 194 F.3d at 334). Those are the exact propositions Plaintiff advanced, and they are dispositive here.

The controlling point is the one Star Mark makes textually: the safe-harbor clock runs only from service under Rule 5. Rule 5(b)(2)(E) authorizes service "by . . . electronic means" only where "the person consented to in writing." Roc Nation transmitted its Rule 11 notice to undersigned counsel by email alone, without service by any method authorized under Rule 5(b)(2)(A)–(D) and without the written consent to electronic service that Rule 5(b)(2)(E) requires. Undersigned counsel did not consent in writing to service by email. Because valid service under Rule 5 is the event that starts the 21-day period, and because that service never occurred, Roc Nation's safe-harbor clock never began to run—and its Rule 11 motion is procedurally barred under the "strict procedural requirement" Star Mark describes. So understood, Star Mark is not a citation error and is not averse to Plaintiff; it is the binding Second Circuit authority that defeats Roc Nation's own motion. The pinpoint quotation Roc Nation flags will be conformed to the decision's exact language, but the proposition it supports is precisely what the Second Circuit held.

B. <u>Cooter & Gell is controlling Supreme Court authority on Rule 11's deterrent purpose and the deferential standard governing sanctions</u>.

Plaintiff cited *Cooter & Gell* for the propositions that the "central purpose of Rule 11 is to deter baseless filings," 496 U.S. at 393, and that Rule 11 must be administered with the restraint reflected in its abuse-of-discretion standard of review, id. at 405. Those propositions are the heart of the decision. The Supreme Court holds that "the central purpose of Rule 11 is to deter baseless filings," id. at 393; that the Rule is intended to make attorneys "stop, think and investigate more carefully before serving and filing papers," id. at 398 (citation omitted); that Rule 11 and Rule 41(a)(1) are both "aimed at curbing abuses of the judicial system," id. at 397; and that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination," id. at 405. Each of those is verbatim or near verbatim, and each supports the use Plaintiff made of the case.

📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com



# T. A. BLACKBURN LAW

Plaintiff is candid with the Court about the one point on which Roc Nation's flag has surface appeal. In restating *Cooter & Gell*'s holding, Plaintiff's opposition inadvertently omitted a single word—"not"—so that the sentence read as though a voluntary dismissal "eliminates" a completed Rule 11 violation. That was a typographical error, not a misstatement of law. What *Cooter & Gell* actually holds is the opposite, and it is precisely the proposition Plaintiff intended to convey: "a voluntary dismissal does not eliminate the Rule 11 violation," id. at 398, because "[t]he violation of Rule 11 is complete when the paper is filed," id. at 395 (citation omitted). The dropped word inverted the meaning of a single sentence; it did not invent a holding, misidentify a case, or attribute language to an authority that does not contain it. This is the paradigmatic scrivener's error—categorically different from the "AI hallucination" of fabricated authority that Roc Nation's letter alleges. Plaintiff does not rely on Cooter & Gell for any proposition that a dismissal "eliminates" a completed violation; Plaintiff cites it for its holdings on Rule 11's deterrent purpose and the deferential abuse-of-discretion standard of review—holdings that are verbatim in the United States Reports and that Roc Nation does not dispute.

In short, neither *Star Mark* nor *Cooter & Gell* is a fabricated or misapplied citation. Both are real, binding, and support the propositions for which they were offered. *Star Mark* does more than that: it confirms that the safe-harbor clock runs only on service under Rule 5, and that Roc Nation—having served its notice by email without written consent—never satisfied that strict procedural requirement. The only corrections these two authorities require are the same corrections that apply throughout the opposition: conforming any compressed paraphrase to an exact quotation or an unquoted, signaled paraphrase. That is a matter of citation form, not of invented law, and it does not warrant the extraordinary relief Roc Nation requests.

V.    The Opposition Brief Stands and the Motion Should Be Denied.

The Court did not respond to Roc Nation's July 3, 2026, letter and has not directed Plaintiff to file a corrected brief. Plaintiff files this letter solely to place his substantive response to Roc Nation's accusations on the docket. As set forth above, each citation in Plaintiff's opposition is to a real, published, binding authority, cited for a proposition it actually supports. Roc Nation's letter does not identify a single fabricated case, a single nonexistent decision, or a single holding that Plaintiff attributed to the wrong court. The opposition brief stands.

Because Plaintiff's opposition is legally accurate, factually grounded, and free of fabricated authority, there is no basis to strike it, deem it defective, or deem Roc Nation's dispositive motion unopposed. Plaintiff respectfully requests that the Court deny Roc Nation's request for any such relief and proceed to resolve the pending sanctions motion on the merits.

We thank the Court for its attention to this matter.

Respectfully,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC

cc: All attorneys of record via ECF.

